NIELSEN MERKSAMER
    PARRINELLO GROSS & LEONI LLP
    Christopher E. Skinnell, Esq. (S.B. No. 227093)
    Hilary J. Gibson, Esq. (S.B. No. 287862)
2350 Kerner Boulevard, Suite 250
San Rafael, California 94941
Telephone: (415) 389-6800
Facsimile: (415) 388-6874
Email: cskinnell@nmgovlaw.com
Email: hgibson@nmgovlaw.com

*Attorneys for Plaintiff/Petitioners*
CALIFORNIA APARTMENT
ASSOCIATION, STEPHEN LIN,
RAKESH and TRIPTI JAIN, ALISON
MITCHELL, MICHAEL HAGERTY, &
H. ALEX and DANNIE ALVAREZ

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA APARTMENT ASSOCIATION, STEPHEN LIN, RAKESH and TRIPTI JAIN, ALISON MITCHELL, MICHAEL HAGERTY, & H. ALEX and DANNIE ALVAREZ, <br><br>    *Plaintiffs and Petitioners*, <br><br> vs. <br><br> COUNTY OF ALAMEDA, BOARD OF SUPERVISORS OF THE COUNTY OF ALAMEDA, and DOES 1-25, <br><br>    *Defendants and Respondents*. | Case No. <br><br> **COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF; PETITION FOR WRIT OF MANDATE** <br><br> **[42 U.S.C. § 1983; Cal. CCP § 1085]** <br><br> **DEMAND FOR JURY TRIAL** |

1.     Plaintiffs and Petitioners CALIFORNIA APARTMENT ASSOCIATION, STEPHEN LIN, RAKESH and TRIPTI JAIN, ALISON MITCHELL, MICHAEL HAGERTY, & H. ALEX and DANNIE ALVAREZ (collectively, "Plaintiffs"), hereby bring this complaint and petition for relief against Defendants and Respondents COUNTY OF ALAMEDA and the BOARD OF SUPERVISORS OF THE COUNTY OF ALAMEDA (collectively, "Defendants"), seeking damages caused by Defendants' residential eviction moratorium (the "Moratorium") and an order declaring said Moratorium invalid, illegal, and unenforceable. Plaintiffs also request an immediate stay, and injunction against the enforcement of the Moratorium.

## JURISDICTIONAL STATEMENT

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that the controversy arises under the United States Constitution and laws and under 42 U.S.C. § 1983, as hereinafter more fully appears. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367(a) in that the causes of action stated herein arise out of a common nucleus of operative fact, and thus form the same case or controversy under Article III of the United States Constitution.

## VENUE

3.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(a), because all Defendants/Respondents reside in this District and the events giving rise to the claims occurred in this District.

## DIVISIONAL ASSIGNMENT

4.     Pursuant to Local Rule 3-2(c), this action arose in Alameda County, California, and thus should be assigned to the Court's Oakland Division.

## PARTIES

5.     Defendant and Respondent COUNTY OF ALAMEDA (hereafter "COUNTY") is a local government entity organized under the Constitution and laws of the State of California.

6.     Defendant and Respondent BOARD OF SUPERVISORS OF THE

COUNTY OF ALAMEDA (hereafter "BOARD") is the main legislative and governing body of the COUNTY.

7.     Plaintiff CALIFORNIA APARTMENT ASSOCIATION ("CAA") is a § 501(c)(6) nonprofit corporation. CAA is the largest statewide rental housing trade association in the country, representing more than 50,000 rental property owners and operators who are responsible for nearly two million rental housing units throughout California. Many of its members are located in the COUNTY and are subject to, and adversely affected by, the Moratorium challenged herein. Those adverse effects include but are not limited to: refusing to pay rent for non-COVID-19 related reasons, refusing to relinquish possession, and creating nuisances and damage to members' properties. CAA's members have suffered lost rents, devalued properties, and some face impending foreclosures and bankruptcies, as a result of the Moratorium. CAA has standing because (i) individual members of CAA, by virtue of their rental property ownership, are subject to the Moratorium and could challenge it in their own right; (ii) the subject of this litigation is directly germane to CAA's organizational purpose, which is to advocate for, support, and protect the property and legal rights of CAA members and other rental property owners throughout the State of California; and (iii) neither the claims asserted, nor the equitable relief requested requires the participation of individual members in this lawsuit. CAA has a direct and substantial interest in ensuring that Defendants' decisions are in conformity with the requirements of law, that those requirements are properly executed, and that Defendants' duties are enforced.

8.     Plaintiff STEPHEN LIN is an individual over the age of 18 and is an owner of residential rental property in Fremont that is subject to the COUNTY's Moratorium.

9.     Plaintiffs RAKESH and TRIPTI JAIN are individuals over the age of 18 and are owners of residential rental property in Fremont that is subject to the COUNTY's Moratorium.

10.     Plaintiff ALISON MITCHELL is an individual over the age of 18 and is the co-owner, along with her husband, of residential rental property in Emeryville that is subject to the COUNTY's Moratorium.

11.     Plaintiff MICHAEL HAGERTY is an individual over the age of 18 and is also an owner of residential rental property in Emeryville that is subject to the COUNTY's Moratorium.

12.     Plaintiffs H. ALEX and DANNIE ALVAREZ are individuals over the age of 18 and owners of residential rental property in Pleasanton that is subject to the COUNTY's Moratorium.

13.     Plaintiffs are not aware of the identities of Defendants/Respondents DOES 1-25, who are responsible for the acts and omissions alleged herein and that caused damage to Plaintiffs; therefore, Plaintiffs will amend this Complaint when the true identities of DOES 1-25 are ascertained.

14.     Plaintiffs are informed and believe that, at all times mentioned in this Complaint, all Defendants/Respondents were the agents or employees of their co-Defendants/Respondents, and in doing the things alleged in this Complaint, were acting within the course and scope of that agency and employment.

## GENERAL FACTUAL ALLEGATIONS

**A.      Background: The California Governor's Order and the COVID-19 Tenant Relief Act.**

15.     On March 4, 2020, in response to the COVID-19 pandemic, Governor Newsom declared a State of Emergency in California, pursuant to the California Emergency Services Act (ESA), Govt. Code § 8550, *et seq*. On March 16, 2020, Governor Newsom issued an executive order, which, in relevant part, permitted local governments to temporarily limit landlords' ability to evict tenants for nonpayment of rent due to the COVID-19 crisis, to the extent the tenants' inability to pay was attributable to negative financial impacts caused by the COVID-19 pandemic. In pertinent part, that order provided:

> [T]he statutory cause of action for unlawful detainer, Code of Civil Procedure section 1161 et seq., and any other statutory cause of action that could be used to evict or otherwise eject a residential . . . renter . . . is suspended only as applied to any tenancy . . . to which a local government has imposed a limitation on eviction pursuant to this paragraph 2 [relating to inability to pay rent because of Covid-19 financial distress], and only to the extent of the limitation imposed by the local government. [¶] Nothing in this Order shall relieve a renter of the obligation to pay rent, nor restrict a housing provider's ability to recover rent due.

Executive Order ("EO") N-28-20, ¶ 2.

16.    Though California's State of Emergency is still in place, most of its remaining provisions are set to expire on June 30, 2022, *see* EO No. N-04-22, and the March 16, 2020 provision permitting local governments to temporarily limit COVID-19-related nonpayment evictions expired on September 30, 2020, *see* EO N-71-20, ¶ 3.

17.    Prior to the expiration of that provision, the California Legislature enacted the "COVID-19 Tenant Relief Act" and the "COVID-19 Small Housing Provider and Homeowner Relief Act of 2020" via Assembly Bill 3088 (2019-2020 Reg. Sess.), 2020 Cal. Stats., ch. 37 ("AB 3088"), effective August 31, 2020. CAA was directly involved in the legislative negotiations regarding AB 3088.

18.    AB 3088 in part amended the State's unlawful detainer (UD) statutes, Code of Civil Procedure § 1161 *et seq.*, and was aimed at "temporary emergency relief for financially distressed renters, homeowners, and small housing providers...." Among other things, AB 3088 provided statewide eviction protections during the "covered time period" (initially March 20, 2020, through January 31, 2021) for renters who could not pay their rent for COVID-19-related reasons. AB 3088 also directed state agencies to engage about potential strategies for relief for renters and landlords who suffered COVID-19-related financial hardship.

19.    Consistent with EO N-28-20, AB 3088's temporary moratorium on residential evictions was specifically limited to those based upon inability to pay for COVID-19-related financial distress. Cal. Code Civ. Proc. §§ 1161(2)-(3), 1179.01-

1179.07. Even during the temporary moratorium, property owners were still permitted to file actions for, and courts were still permitted to find renters guilty of, unlawful detainer for fault, and no-fault "just cause" reasons as defined under Civil Code § 1946.2.[1] Cal. Code Civ. Proc. § 1179.03.5(a)(3).

20.   AB 3088 also provided "this section addresses a matter of statewide concern rather than a municipal affair." The intent of the legislation "is to protect individuals negatively impacted by the COVID-19 pandemic," and "does not provide the Legislature's understanding of the legal validity on any specific ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID-19 pandemic to protect renters from eviction." Cal. Code Civ. Proc. § 1179.05, subds. (b), (e), (f). While AB 3088's amendments continued to recognize local government's authority to enact eviction protections, it did not give *carte blanche* authority to do so, nor does it immunize "emergency" municipal regulations from challenges based on state law preemption.

21.   The COVID-19-related nonpayment eviction protections of AB 3088 were extended twice thereafter, once to June 30, 2021 (through Senate Bill 91 (2021-2022 Reg. Sess.), 2021 Cal. Stats., ch. 2 ("SB 91")) and a second time to September 30, 2021 (through Assembly Bill 832 (2021-2022 Reg. Sess., 2021 Cal. Stats., ch. 27 ("AB 832")). SB 91 and AB 832 protected affected renters from eviction during this extended "covered time period," so long as they complied with the COVID-19-related financial distress requirements, including payment of a specified portion of the rent due. *See* Cal. Code Civ. Proc. § 1179.03(g)(1)(B).

22.   SB 91 and AB 832 further spelled out the State's rental assistance

---

[1] Civil Code § 1946.2, which delineates California's "just causes for eviction," does not apply to residential rental property subject to a local ordinance requiring just cause for termination. However, any local "just cause" provision enacted or amended after September 1, 2019, that is more "protective" than Civ. Code § 1946.2, must be consistent with that provision, and "not prohibited by any other area of law." Cal. Civ. Code § 1946.2(g)(1).

1    program. Starting October 1, 2021, and until March 31, 2022, for any COVID-19-

2    related hardship rental debt that came due between those dates, a property owner

3    could move forward with a UD action for nonpayment of rent if the landlord

4    submitted an application for rental assistance through the State or applicable local

5    program on behalf of the tenant and (1) it was denied, or (2) the tenant did not

6    cooperate in completing the application with specified time periods. AB 832, 2021 Cal.

7    Stats., ch. 27, § 20 (codifying former Cal. Code Civ. Proc. § 1179.11(a), (c)). In late-

8    March 2022 the Legislature enacted, and Lieutenant Governor Kounalakis signed,[2]

9    Assembly Bill 2179 (2021-2022 Reg. Sess.), 2022 Cal. Stats., ch. 13, which extended

10   the eviction moratorium to June 30, 2022, but only for tenants with a rent relief

11   application pending as of March 31, 2022. Landlords are no longer required to submit

12   an application on behalf of the tenant to pursue a UD action. Cal. Code Civ. Proc. §

13   1179.11(a), (c).

14   **B.      The COUNTY's Eviction Moratorium.**

15          23.     The COUNTY ratified its local emergency on March 10, 2020. (Res. No.

16   R-2020-91.) On April 21, 2020, the BOARD adopted Urgency Ordinance No. O-2020-

17   23, which purports to prohibit most evictions—for any reason. The language in the

18   urgency ordinance was then made a permanent part of the COUNTY's Code of

19   Ordinances on June 23, 2020. (Ordinance No. O-2020-32; ACCO, ch. 6.120 (Ex. 2).)

20   The COUNTY's moratorium applies to "all evictions from residential units in the

21   unincorporated and incorporated areas of the county" subject to very few exceptions.

22   (ACCO § 6.120.030.) These exceptions are (1) Ellis Act withdrawals; (2) government

23   orders requiring the unit to be vacated; or (3) "the resident poses an imminent threat

24   to health or safety." (ACCO § 6.120.030(F).) However, even these narrow exceptions

25   apparently do not apply when the tenant claims a financial hardship due to the

26   COVID-19 pandemic. (ACCO § 6.120.040.) The COUNTY'S Moratorium provides that

27

28

_____

[2] As Acting Governor, *see* Cal. Const. art. V, § 10.

it is an "absolute defense" to an unlawful detainer action brought during its term. (ACCO §§ 6.120.030(D), 6.120.040(D).) By its terms, the Moratorium applies countywide—in incorporated and unincorporated areas alike—except that cities are permitted to provide even more stringent protections for renters. (ACCO § 6.120.110.)

24.     Also, by its terms, the Moratorium expires sixty days "after the expiration of the local health emergency." (ACCO § 6.120.030.) Per the ratification of the local emergency, the local emergency "shall remain in effect until the [BOARD] determines that the emergency no longer exists." (Res. No. R-2020-91; *see also* Exec. Dept., State of Cal., "Proclamation of a State of Emergency" (Mar. 4, 2020), ¶¶ 7-8 [waiving requirement that local governments periodically renew state of emergency].) Plaintiffs are informed and believe, and on that basis allege, that the COUNTY's position is that the emergency still has not expired, and the blanket Moratorium on evictions therefore remains in effect. The Moratorium also provides that any rent a tenant fails to pay during the declared state of emergency can never be the basis of an eviction, even if the tenant refuses to pay after the state of emergency has ended. (ACCO § 6.120.090(B) & (D).)

25.     While Emeryville initially adopted its own eviction moratorium in 2020, that eviction expired by its own terms on September 30, 2020.[3] Property owners in Emeryville nevertheless remain subject to the COUNTY's Moratorium.

26.     Pleasanton never had its own separate eviction moratorium, but property owners in Pleasanton nevertheless remain subject to the COUNTY's Moratorium.

27.     On March 25, 2020, the Fremont City Council ratified an Executive Order establishing a temporary moratorium on evictions of residential tenants in Fremont. The CITY's Residential Eviction Moratorium provides that during the period of local emergency declared in response to COVID-19, no landlord shall

[3] *See* Emeryville Ord. No. 20-017, § 3.

endeavor to evict a residential tenant in either of the following situations: (1) for nonpayment of rent if the tenant demonstrates that the tenant is unable to pay rent due to financial impacts related to COVID-19, or (2) for a no-fault eviction unless immediately necessary because of the existence of a hazardous condition affecting tenants or neighbors. However, Fremont's website advises that Alameda "County's ordinance superseded the City of Fremont's emergency order establishing a moratorium on residential evictions during the COVID-19 crisis, so the County's ordinance provides that its regulation of residential evictions applies in the City of Fremont."[4]

**D.    The COUNTY and Various Cities' Rent Relief Assistance Programs.**

28.    State law requires local governments to develop mechanisms by which landlords and renters may file applications for, and receive if eligible, COVID-19-related rent relief.

29.    The COUNTY operates a rent relief assistance program called "Housing Secure."[5] The Housing Secure website currently states, "We are still accepting applications *even though we are oversubscribed*" (emphasis added) and "We have received more requests for funds than we have currently available." Moreover, many applications to the COUNTY's rent relief program have been held pending in limbo for months at a time without action.

30.    Emeryville likewise operates a rent relief assistance program called the Emeryville Emergency Rental Assistance Program ("ERAP"). Emeryville partnered with an organization called the Bay Area Community Service ("BACS") to administer the program on the City's behalf. The Emeryville ERAP website currently states, "As of November 12, 2020, BACS has stopped accepting applications for assistance, as all funds have been reserved under the Emergency Rental Assistance Program. If you

---

[4] *See* City of Fremont, "Understanding Residential Eviction Moratoriums During the COVID-19 Pandemic," *online at* https://www.fremont.gov/4023/Eviction-Moratorium-FAQs (last visited Apr. 4, 2022).
   [5] *See* https://www.ac-housingsecure.org/?locale=en (last visited Apr. 4, 2022).

have submitted an application and have not received notification regarding your application, please contact BACS at 510-759-4868."[6]

31.    Fremont operates a rent relief program called "Keep Fremont Housed." That program's website currently states, "Keep Fremont Housed will continue to accept applications after March 31, 2022 as long as funds remain. However, as of February 1, 2022, applications submitted for the Keep Fremont Housed Rental Assistance Program will be placed on a waitlist."[7]

32.    The Pleasanton website simply directs residents to the County's rent relief program.[8]

33.    Even to the extent the assistance programs operated as intended, any given tenant was limited to 18 months' rental assistance, *see* 15 U.S.C. § 9058c(d)(1)(A), though the "emergency" declared by the COUNTY has now dragged on for more than 24 months. Moreover, a tenant was only eligible for assistance under those programs if the tenant's "household income … is not more than 80 percent of the area median income," with priority given to those tenants with household incomes "not more than 50 percent of the area median income"—regardless of the income of the landlord. *See* Cal. Health & Saf. Code § 50897.1(b).

34.    Importantly, tenants in the COUNTY need not to participate in *any* rent relief program to avoid eviction; the Moratorium prohibits evictions even for those tenants who refuse to cooperate with a landlord's request that they seek relief under these programs. This directly contradicts the purpose, intent and procedures of state

---

[6] *See* City of Emeryville, "COVID-19 Housing Resources," *online at* https://www.ci.emeryville.ca.us/1364/COVID-19-Housing-Resources (last visited Apr. 4, 2022).
[7] *See* City of Fremont, "Keep Fremont Housed Program," *online at* https://www.fremont.gov/3864/Keep-Fremont-Housed-Program (last visited Apr. 4, 2022).
[8] *See* City of Pleasanton, "Rental Assistance Programs," *online at* http://www.cityofpleasantonca.gov/resident/housing/rentals/assistance.asp (last visited Apr. 4, 2022).

Case 4:22-cv-02705-KAW   Document 1   Filed 05/05/22   Page 11 of 25

law.

35.     Due to the COUNTY's Moratorium, even a well-off tenant who was financially unaffected by COVID-19 has, for the past two years, had the ability to deny payment to their landlords—even if the landlord is less well-off—with little to no consequence, and the rent relief programs have proven woefully inadequate to satisfy the needs to compensate landlords for the detrimental impacts of the Moratorium.

**E.     The Detrimental Impacts of the Moratorium on Plaintiffs.**

- **STEPHEN LIN**

36.     Plaintiff STEPHEN LIN and his wife own a condominium located at 39901 Lindsay McDermott Lane, Fremont, CA 94538, which they rent out. Their tenants stopped paying rent in July 2021 and have not paid anything since. While the City of Fremont's ERAP program paid five months of rent covering July 2021 to November 2021, the rent from December 2021 to present has not been paid. The tenants are now more than $12,000 delinquent in rent. The non-payment is causing substantial hardship for the LINS, because Mrs. LIN lost her job as a result of the pandemic and they rent the home they are living in, so they are having to pay their own rent plus the expenses of a mortgage, property taxes, and repairs and maintenance for the condominium in Fremont. They rely on the rent from the condominium to meet those expenses.

37.     Even more detrimental, however, is that the tenants are damaging the Fremont property and causing a nuisance to the neighbors. For one thing, the lease agreement permitted two small dogs. Instead, since at least mid-2021, the tenants have had three large German Shepherds and a Huskie. Those dogs bark constantly, resulting in neighbors complaining to the homeowners' association and County animal control. The tenants have ignored repeated requests to address the barking.

38.     The dogs also defecate and urinate all over the patio and garage, which the tenants address by hosing those two areas down at least three times a day. The water bill for the unit has more than doubled as a result, and it has caused moisture

RELIEF; PETITION FOR WRIT OF MANDATE                                    Page 11

to build up outside on the stucco, resulting in algae growth outside and black mold in the garage from the constant water exposure. Mr. LIN has repeatedly asked the tenants to stop hosing down the patio and garage, but they refuse, and they also refuse to grant Mr. LIN or his agents' entry to the property to abate the mold.

39.    Mr. LIN also recently received a public health notice from the CITY informing him that the home has become infested with cockroaches.

40.    The LINS' homeowners' association has complained to Mr. LIN repeatedly about the conditions at the unit, and, though it has not yet fined them, it could do so under the terms of the CCRs. Mr. LIN has attended numerous HOA meetings to apologize to his neighbors for the conditions caused by his tenants, but which the LINS have no ability to address due to the COUNTY's Moratorium. In sum, not only are the LINS' tenants failing to pay rent, thereby causing financial hardship to the LINS, the eviction Moratorium also permit them to violate other material terms of the lease and damage the LINS' property without any means of protecting it.

- **THE JAINS**

41.    Plaintiffs RAKESH and TRIPTI JAIN own a three-bedroom house located at 336 Escobar Street, Fremont, CA. The rent proceeds were intended to fund college educations for their children, one of whom graduates high school this May. Their tenant stopped paying rent immediately upon taking possession in January 2020. In fact, he's never paid a cent. His deposit check and check for the first month's rent both bounced within three days of him taking possession, and he has not paid anything since. Yet he remains protected from eviction by the COUNTY's Moratorium. While the City of Fremont's ERAP program paid the JAINS 12 months' worth of outstanding rent, the tenant remains approximately $58,000 in arrears, for an additional 16 months of unpaid rent. Furthermore, the JAINS are informed and believe, and on that basis allege, that the tenant has engaged in numerous lease violations, including (1) having four German Shepherds on the property when the lease forbids pets, (2) subletting portions of the unit without permission, and (3)

1   making modifications to the unit without permission or appropriate permits. The

2   tenant has also denied the JAINS entry to the unit.

3         42.   The JAINS are further informed and believe, and on that basis allege,

4   that the District Attorney lodged a criminal complaint against the tenant in 2020

5   based on his provision of a fraudulent W-2, credit report and a bad check to the

6   JAINS in connection with his lease application, but that case remains unresolved. *See*

7   *People v. Singh*, Case No. 20-CR-015044 (Alameda Co. Super. Court, filed Nov. 17,

8   2020). The JAINS are also informed and believe, based on conversations with staff in

9   the District Attorney's office, that the tenant had previously engaged in similar

10  activity with previous landlords and that the office was on the lookout for him.

11        43.   Faced with the inability to collect any rent for their property, the JAINS

12  also investigated the possibility of removing the house from the market under the

13  Ellis Act, Govt. Code § 7060 *et seq.*, so that they could move into the house

14  themselves. But, though the COUNTY's moratorium is not a model of clear legislative

15  drafting, it appears that it even purports to prohibit evictions under the Ellis Act

16  when that tenant claims financial hardship due to COVID-19,[9] and the JAINS have

17  been unable to evict on that basis either.

18        44.   The situation has been extremely stressful for the JAINS, causing Mrs.

19  JAIN major anxiety and emotional distress, including panic attacks, and causing her

20  to require occasional medication to treat the effects of the stress and anxiety.

21

22

23  _____

24        [9] *See* Alameda County Hous. & Cmty. Devel. Dept., "Alameda County COVID-
    19 Eviction Moratorium" (Aug. 11, 2020), *available online at*
25  https://www.acgov.org/cda/hcd/documents/EvictionMoratoriumOrdinanceSummaryFA
    Q8.11.20.pdf (last visited May 4, 2022), p. 1 ("if you provide documentation that you
26  have a COVID-related impact that made you unable to pay rent on time, the
    ordinance prohibits your eviction *and there are no exceptions*. If you do not provide
27  documentation or are being evicted for any reason besides nonpayment of rent, there
    are three exceptions to the eviction ordinance," including the Ellis Act (emphasis
28  added)).

- **ALISON MITCHELL**

45.     Plaintiff ALISON MITCHELL and her husband own a condominium located at 5855 Horton Street, #524, Emeryville, CA. They bought the property in 2003 as a place to eventually "age in place"—a place to move into when remaining in their two-story suburban home becomes infeasible—because it is on a single level in a secured building right next to the train station with free local public transport and access to most of their needs without driving. In the meantime, though, the income from the rental was intended to fund the MITCHELLs' retirement. However, their tenant stopped paying rent in March 2020 and has paid no rent since. She (the tenant) has an outstanding balance of approximately $75,000. The MITCHELLS submitted an application to the COUNTY's ERAP program in May 2021, and their property manager has submitted all the documents that the program has requested of them by way of documentation. However, the tenant has failed to respond to requests from the COUNTY's ERAP program for additional documents to support her eligibility for the payments, so no action has been taken on it.

46.     The MITCHELLS continue to bear substantial costs for the unit, however, including property taxes, homeowners' association dues, repairs and maintenance, and property management, and those costs are eating into the MITCHELLS' retirement savings. The financial effects have become so burdensome that the MITCHELLs consulted an attorney about removing the condominium from the market under the Ellis Act, but that process is itself costly, and the MITCHELLS have been unable to pursue that option. The MITCHELLS decided to try to sell the condo—at a steep discount and with an offer to assign the rights to the unpaid back rent (to the extent permitted by state law, *see* Cal. Civ. Code § 1788.66)—but they have had little interest from potential buyers and their broker has advised them that they are extremely unlikely to be able to sell the property as long as the tenant remains in possession. Moreover, the tenant will not respond to communications from Mrs. MITCHELL, her property management company, or her attorney.

- **MICHAEL HAGERTY**

47.    Plaintiff MICHAEL HAGERTY owns a condominium located at 6 Commodore Drive, #334, Emeryville, CA, which he has rented out for approximately the past 10 years. Mr. HAGERTY is retired and relies on the income from this rental property to help fund his retirement. Mr. HAGERTY's current tenant has not paid any rent for most months in approximately two years—essentially since the beginning of the pandemic—and Mr. HAGERTY has been forced to withdraw money from his Individual Retirement Account ("IRA") to pay the costs of maintaining the condominium. Mr. HAGERTY's property manager applied to the COUNTY's ERAP program approximately a year ago, but the application was denied because the tenant was deemed ineligible. The tenant owes approximately $47,350 in back rent and that number continues to grow. The tenant has also rented a room of the condominium out through Airbnb within the past two years, in violation of the lease.

- **THE ALVAREZES**

48.    Plaintiffs H. ALEX ALVAREZ and DANNIE ALVAREZ (the ALVAREZES) own a single-family home located at 2919 Liberty Drive, Pleasanton, CA. The ALVAREZES sold their primary residence in 2019 with the intention of downsizing and moving into the home in Pleasanton. They spoke with their tenant about this plan at the time, and he asked if he could stay in the property until May 2020, when his son would graduate. The ALVAREZES agreed, splitting time between Texas—where they care for Dannie's elderly parents—and California, where they have been staying in an RV.

49.    Once the COUNTY's Moratorium took effect in early 2020, the tenant stopped paying rent altogether, citing financial hardship. The ALVAREZES are informed and believe, and on that basis allege, that the tenant's financial hardship is not attributable to the COVID-19 pandemic; it is attributable to his decision to leave his six-figure salary job *prior to the pandemic* to start his own business, which has proven to be less successful than he anticipated, and to his unwillingness to look for a

1  new job. Essentially, he is using the rent money that he owes the ALVAREZES to

2  subsidize his business. Though the ALVAREZES were able to get a rent relief

3  payment for a portion of the outstanding amount, the tenant remains approximately

4  $24,000 in arrears and the number continues to grow. As a result of the financial

5  impacts, Mrs. ALVAREZ had to postpone her planned retirement for more than a

6  year.

7      50.    More importantly, though, the ALVAREZES are indefinitely barred from

8  moving back into their own home, as they had long planned, and selling the home

9  would be extraordinarily difficult—if not impossible—while a non-paying tenant

10  remains in possession. At a minimum, the ALVAREZES would have to sell at a steep

11  discount due to the Moratorium. They would also face significant property and income

12  tax penalties—potentially in the hundreds of thousands of dollars—if they were to sell

13  their current property for a replacement.

14      51.    To the extent Plaintiffs were required to exhaust any administrative

15  remedies, they all have, as alleged herein.

16                          **FIRST CLAIM FOR RELIEF**

17  **(Violation of the 5th Amendment to the U.S. Constitution (Takings Clause)**

18            **Against All Defendants (42 U.S.C. § 1983))**

19      52.    Plaintiffs hereby incorporate by reference the allegations contained in

20  Paragraphs 1 through 51 of this Complaint.

21      53.    By enacting the Moratorium, the COUNTY violated the Fifth

22  Amendment of the United States Constitution, which prohibits the taking of private

23  property for public use without just compensation. The Moratorium violates the Fifth

24  Amendment of the United States Constitution on its face and as applied to Plaintiffs.

25      54.    Defendants' Moratorium purports to prohibit Plaintiffs from evicting any

26  renter in the COUNTY, including the incorporated parts of the COUNTY, for

27  virtually any reason, with few exceptions. The Moratorium, which has no definitive

28  end date, perpetrates physical takings by illegally nullifying Plaintiffs' and other

landlords' right to occupy their properties without just compensation; the Moratorium eliminates renters' rent obligations and sanctions renters' trespassing on Plaintiffs' properties. Though the Moratorium purports to hold tenants responsible for the eventual payment of missed rent installments, as the Eight Circuit recently noted, "[w]hile landlords may bring an action against delinquent tenants for past-due rent, monetary relief obtained against a judgment-proof individual *is an illusory remedy*, as has been recognized by the Supreme Court." *Heights Apartments, LLC v. Walz*, No. 21-1278, ____ F.4th ____, 2022 U.S. App. LEXIS 9092, at *14 n.7 (8th Cir. Apr. 5, 2022) (emphasis added) (citing *Ala. Assoc. of Realtors v. Dept. of Health and Human Servs.*, 141 S. Ct. 2485, 2489 (2021)). *See also Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 376 (D. Mass. 2020) ("this right [to seek back rent as consumer debt] is largely illusory, as tenants who have not paid their rent for many months because of economic distress—or indeed for any other reason—are unlikely to pay a money judgment against them."). Preventing landlords "from evicting tenants who breach their leases intrudes on one of the most fundamental elements of property ownership—the right to exclude." *Ala. Assoc. of Realtors*, 141 S. Ct. at 2489. *See also Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982); *Cedar Point Nursery v. Hassid*, 141 S. Ct 2063 (2021) (physical taking occurs when government gives third party a substantial right of access to the owner's property and deprives the owner of the ability to exclude); *Cwynar v. City and County of San Francisco*, 90 Cal. App. 4th 637, 655 (2001) (physical taking occurs when a regulation "effectively extinguish[es] plaintiffs' right to occupy substantial portions of their property," such as when they are precluded from moving into a unit that they own).

55.     The COUNTY's Moratorium also interferes with Plaintiffs' investment-backed expectations and results in either a substantial or total deprivation of the economic value of Plaintiffs' properties. *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978). The Moratorium is devaluing properties by prohibiting Plaintiffs from recovering possession of their properties—even for their personal use—and even

1   despite renters perpetuating ongoing nuisances and *continued* nonpayment of rents.

2   Plaintiffs have suffered significant financial losses due to the Moratorium, and

3   continue to suffer these losses, notwithstanding the current government "relief"

4   programs in place, which have resulted in little to no relief. Plaintiffs' "investment-

5   backed expectations" have been violated as a matter of law. This is especially so when

6   applied in light of "the purpose of the Takings Clause, which is to prevent the

7   government from 'forcing some people alone to bear public burdens which, in all

8   fairness and justice, should be borne by the public as a whole.' [Citation.]" *Palazzolo v.*

9   *Rhode Island,* 533 U.S. 606, 617-18 (2001).

10   56.   For the foregoing reasons, the COUNTY's Moratorium constitutes a

11   takings without just compensation, and thus violates Plaintiffs' rights protected by

12   the United States Constitution.

13   57.   An actual controversy has arisen and now exists between the parties

14   relating to these legal rights and duties for which Plaintiffs desire a declaration of

15   rights, therefore making a declaratory judgment necessary. 28 U.S.C. § 2201.

16   58.   As a result of Defendants' actions, Plaintiffs, as alleged herein, have

17   suffered out of pocket expenses, loss of property value, and loss of opportunity value

18   in an amount that is yet to be ascertained to be further determined at trial. Plaintiffs

19   also entitled to recover attorneys' fees under 42 U.S.C. § 1983.

20   **SECOND CLAIM FOR RELIEF**

21   **(Violation of Article I, Section 19, of the California Constitution (Inverse**

22   **Condemnation) Against All Defendants)**

23   59.   Plaintiffs hereby incorporate by reference the allegations contained in

24   Paragraphs 1 through 58 of this Complaint.

25   60.   The COUNTY's Moratorium violates Article I, Section 19, of the

26   California Constitution on its face and as applied to Plaintiffs, for all the reasons

27   alleged herein.

28   61.   The COUNTY's Moratorium therefore constitutes a takings without just

compensation, and thus violates Plaintiffs' rights protected by the California Constitution.

62.    An actual controversy has arisen and now exists between the parties relating to these legal rights and duties for which Plaintiffs desire a declaration of rights, therefore making a declaratory judgment necessary. 28 U.S.C. § 2201.

63.    As a result of Defendants' actions, Plaintiffs, as alleged herein, have suffered out of pocket expenses, loss of property value, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.

## THIRD CLAIM FOR RELIEF

### (Violation of the Article I, § 10, of the U.S. Constitution (Impairment of Contracts) Against All Defendants (42 U.S.C. § 1983))

64.    Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 63 of this Complaint.

65.    The Contracts Clause, Art. 1, § 10, of the United States Constitution, provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." The Contracts Clause applies to local governments and prohibits them from enacting ordinances that substantially impair Plaintiffs' existing, lawful contracts, *i.e.*, lease agreements.

66.    The Ninth Circuit has ruled that Contracts Clause violations are indeed actionable under 42 U.S.C. § 1983. Specifically, the Ninth Circuit has stated, "The right of a party not to have a State, or a political subdivision thereof, impair its obligations of contract is a right secured by the first article of the United States Constitution. A deprivation of that right may therefore give rise to a cause of action under section 1983." *So. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003).

67.    In determining whether a contractual impairment is substantial, courts consider "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or

reinstating his rights." *Sveen v. Melin*, 138 S. Ct. 1815, 1822 (2018). If a court determines that a law works a substantial impairment, it then considers "whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Id.* (quoting *Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411-12 (1983)).

68.    "It is axiomatic that a landlord's bargain of receiving rent in exchange for a tenant's possession of the property is greatly diminished if the landlord's right to exclude the tenant is minimal or non-existent. The same is true if other terms of the lease cannot be enforced." *Heights Apartments, LLC*, No. 21-1278, __ F.4th __, 2022 U.S. App. LEXIS 9092, at *14.

69.    Where, as here, a law substantially impairs a contract, the public entity bears the burden of showing that the impairment is both reasonable and necessary, and the government "is not free to impose a drastic impairment when an evident and more moderate course would serve its purposes equally well." *United States Trust Co. v. New Jersey*, 431 U.S. 1, 31 (1977). Moreover, an impairment that is sustainable in the short-term, in response to a crisis, may become an unconstitutional impairment if maintained over time. *Compare Home Building & Loan Assn. v. Blaisdell*, 290 U.S. 398 (1934) (upholding temporary mortgage moratorium where mortgagors were required to pay a reasonable rent to the mortgagor to allow it to meet costs) *with W. B. Worthen Co. v. Kavanaugh*, 295 U.S. 56 (1935) (finding a similar mortgage moratorium to be an unconstitutional impairment when the duration was longer and there was no obligation by the mortgagor to pay the mortgagee a sufficient sum to allow the mortgagor to meet its costs); *Heights Apartments, LLC*, No. 21-1278, __ F.4th __, 2022 U.S. App. LEXIS 9092, at *9-10.

70.    Under these standards, the COUNTY's Moratorium violates the Contracts Clause of the United States Constitution. It fundamentally upends the contractual bargains struck between Plaintiffs and their tenants by effectively relieving the tenants of their obligation to pay rent and comply with certain other

provisions of their leases, and depriving [landlords, like Plaintiffs] of rent payments with no guarantee of eventual recovery." *Ala. Assoc. of Realtors*, 141 S. Ct. at 2489. And it permanently deprives landlords of the ability to pursue back rent through the unlawful detainer mechanism, leaving only the option of an action for consumer debt, which several courts have recognized is an "illusory remedy." *Heights Apartments, LLC*, No. 21-1278, ___ F.4th ___, 2022 U.S. App. LEXIS 9092, at *14 n.7; *Baptiste*, 490 F. Supp. 3d at 376. Under the COUNTY's Moratorium, Plaintiffs, as well as other property owners and/or landlords, are required to allow tenants to remain on the properties rent free for an unspecified duration of time, thus depriving Plaintiffs of the opportunity to collect any portion of rent from their current tenants, or otherwise rent their properties to tenants who can pay rent. "The moratorium has put the applicants, along with millions of landlords across the country, at risk of irreparable harm by depriving them of rent payments with no guarantee of eventual recovery." *Ala. Ass'n of Realtors.*, 141 S. Ct. at 2489. Such an ordinance is the quintessential "substantial" impairment, as it "undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen*, 138 S. Ct. at 1822. And even if these impacts were justified in the early going of the pandemic, the circumstances have so dramatically changed that their continued maintenance without an end in sight no longer meets the constitutional standard. "At a time when local authorities were confronted with a public health crisis that was rapidly developing, poorly understood, and in need of immediate and decisive action," greater deference may have been appropriate, but "[t]he public health crisis has since evolved, and time is available for more reasoned and less immediate decision-making by public health officials," so more stringent review is warranted. *Heights Apartments, LLC*, No. 21-1278, ___ F.4th ___, 2022 U.S. App. LEXIS 9092, at *9-10 (applying heightened level of scrutiny in light of the passage of time since the beginning of the pandemic).

      71.    In continuing to maintain the Moratorium and apply it to Plaintiffs and

other landlords, the COUNTY has acted under color of statute, ordinance, regulation and policy of the municipality. The COUNTY's conduct has deprived Plaintiffs of the rights, privileges, and immunities secured by the United States Constitution and/or laws of the United States to which Plaintiffs are and were legitimately entitled.

72.    Plaintiffs have no adequate remedy at law to prevent or redress the irreparable injuries alleged herein. Unless the COUNTY is enjoined and restrained from enforcing or threatening to enforce their Moratorium, Plaintiffs will be irreparably injured. They will be deprived of rights guaranteed under the United States Constitution, and will continue to suffer substantial loss of rents, profits, and good will, the nature and extent of which will be extremely difficult or impossible to ascertain. As the constitutional violations are ongoing, Plaintiffs are entitled to injunctive relief now.

## FOURTH CLAIM FOR RELIEF

## (Violation of the 14th Amendment to the U.S. Constitution (Due Process Clause) Against All Defendants (42 U.S.C. § 1983))

73.    Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 72 of this Complaint.

74.    The COUNTY's Moratorium violates Plaintiffs' substantive and procedural due process rights under the U.S. Constitution. The Moratorium violates Plaintiffs' substantive due process rights on its face and as applied because Plaintiffs' have protected property interests in their real properties, and Defendants' continued imposition of the blanket Moratorium is irrational and lacking in a legitimate government interest because there is no justification for such extreme measures, especially at this point. Indeed, California's COVID-19 Tenant Relief Act never imposed such draconian restrictions. Further, the Bay Area has seen significant improvement in circumstances relating to the pandemic since March of 2020, has a high rate of vaccinations, and federal and state officials have recognized that COVID-19 is either in, or moving to, an endemic stage. The COUNTY long ago abandoned the

shelter-in-place policies that were the natural justification for the Moratorium. There are few remaining restrictions on businesses, and unemployment rates are very low, as opposed to the immediate economic impacts of the pandemic in early 2020. And the COUNTY has even withdrawn its mask mandate for public spaces. There is, at this point, no plausible justification for continuing the Moratorium indefinitely. The pandemic should not be used as a cursory justification for what would otherwise be a plainly illegal law. Defendants therefore have no rational basis for the continued imposition of the Moratorium. The Moratorium violates procedural due process because it, in effect, deprive Plaintiffs of *any* procedure to recover their properties under most cases, even in circumstances where tenants have not suffered financial hardship.

75.     The aforesaid acts, as alleged herein, constitute violations of Plaintiffs' procedural and substantive due process rights. An actual controversy has arisen and now exists between the parties relating to these legal rights and duties for which Plaintiffs desire a declaration of rights, therefore making a declaratory judgment necessary. 28 U.S.C. § 2201.

76.     As a result of Defendants' actions, Plaintiffs, as alleged herein, have suffered out of pocket expenses, loss of property value, emotional distress, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial. Plaintiffs are also entitled to recover attorneys' fees under 42 U.S.C. §§ 1983 & 1988(b).

### FIFTH CLAIM FOR RELIEF

### (Violation of Article XI, § 7, of the California Constitution (State Law Preemption) Against All Defendants (Cal. CCP § 1085))

77.     Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 76 of this Complaint.

78.     Under Article XI, § 7, of the California Constitution, a county can only "make and enforce within its limits all local, police, sanitary, and other ordinances

1 and regulations *not in conflict with general laws*." (Emphasis added.) In other words,
2 counties remain subject to superior state law.

3    79.    The Ellis Act, Cal. Govt. Code § 7060 *et seq*., is a state law that
4 "preempts local action with regard to substantive controls over landlords who wish to
5 withdraw all accommodations from the residential rental housing market while
6 specifying areas in which local governments may regulate in a manner consistent
7 with the [Ellis] Act." *S.F. Apartment Ass'n v. City & Cty. of S.F.*, 20 Cal. App. 5th 510,
8 520 (2018). To the extent the COUNTY's Moratorium purports to prevent evictions
9 under that Act for those claiming to suffer financial hardship due to COVID-19, it is
10 preempted and unenforceable.

11    80.    As alleged herein, Plaintiffs have a beneficial interest in ensuring that
12 the Moratorium is struck down so that Plaintiffs statutory and constitutional rights
13 are not infringed upon. Plaintiffs do not have a plain, speedy, or adequate remedy in
14 the ordinary course of law, and therefore relief is necessary to compel Defendants to
15 correct their actions, which are unlawful and in excess of their authority.

16                                    **PRAYER**
17 WHEREFORE, Plaintiffs/Petitioners pray for relief as follows:

18    1.    Preliminary and permanent injunctions preventing enforcement of the
19          COUNTY's Moratorium.

20    2.    A declaratory judgment determining that the COUNTY's Moratorium (a)
21          constitutes a taking under the United States and California
22          Constitutions, (b) unconstitutionally impairs contracts, (c) violates
23          Plaintiffs' right to due process, and (d) violates state law.

24    3.    For special damages for out-of-pocket expenses, loss of property value,
25          and loss of opportunity costs in an amount that is yet to be ascertained.

26    4.    For general damages according to proof, in an amount that is yet to be
27          ascertained.

28

---

5. For a writ of mandamus or mandate or other appropriate relief, including an injunction, declaration, and/or order, enjoining and voiding the Moratorium for all of the reasons alleged above.

6. For a judgment that the Moratorium works an unlawful takings on its face and/or as applied, and has prevented Plaintiffs from maintaining economically viable use of their respective properties without just compensation in violation of Plaintiffs' rights under the Fifth Amendment of the United States Constitution, which prohibits the taking of private property for public use without just compensation; and upon such judgment, give Defendants the opportunity to revoke the Moratorium and mitigate its damages in Plaintiffs' inverse condemnation and Fifth Amendment takings action against Defendants.

7. For costs of suit herein, including attorneys' fees.

8. For such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: May 4, 2022

NIELSEN MERKSAMER
PARRINELLO GROSS & LEONI LLP

By: _____
Christopher E. Skinnell

*Attorneys for Plaintiffs*
CALIFORNIA APARTMENT ASSOCIATION, STEPHEN LIN, RAKESH and TRIPTI JAIN, ALISON MITCHELL, MICHAEL HAGERTY, & H. ALEX and DANNIE ALVAREZ