NIELSEN MERKSAMER
  PARRINELLO GROSS & LEONI LLP
  Christopher E. Skinnell, Esq. (S.B. No. 227093)
  Hilary J. Gibson, Esq. (S.B. No. 287862)
2350 Kerner Boulevard, Suite 250
San Rafael, California 94941
Telephone: (415) 389-6800
Facsimile: (415) 388-6874
Email: cskinnell@nmgovlaw.com
Email: hgibson@nmgovlaw.com

*Attorneys for Plaintiff/Petitioners*
CALIFORNIA APARTMENT
ASSOCIATION, STEPHEN LIN,
RAKESH and TRIPTI JAIN, ALISON
MITCHELL, MICHAEL HAGERTY, &
H. ALEX and DANNIE ALVAREZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA APARTMENT ASSOCIATION, STEPHEN LIN, RAKESH and TRIPTI JAIN, ALISON MITCHELL, MICHAEL HAGERTY, & H. ALEX and DANNIE ALVAREZ,<br><br>    *Plaintiffs and Petitioners*,<br><br>vs.<br><br>COUNTY OF ALAMEDA, BOARD OF SUPERVISORS OF THE COUNTY OF ALAMEDA, and DOES 1-25,<br><br>    *Defendants and Respondents*. | Case No. 3:22-cv-02705-LB<br><br>**SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON FACIAL CLAIMS**<br><br>**[FED. R. CIV. PROC. 56]**<br><br>DATE: September 29, 2022<br>TIME: 9:30 a.m.<br>DEPT: Courtroom B, 15th Floor<br>JUDGE: Hon. Laurel Beeler<br><br><br>(Related to Case 3:22-cv-01274-LB, *Williams v. County of Alameda, et al.*) |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

YOU ARE HEREBY NOTIFIED THAT on September 29, 2022, at 9:30 a.m., before the Honorable Laurel Beeler, in the San Francisco Courthouse, Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs CALIFORNIA APARTMENT ASSOCIATION, STEPHEN LIN, RAKESH and TRIPTI JAIN, ALISON MITCHELL, MICHAEL HAGERTY, and H. ALEX and DANNIE ALVAREZ will request the Court to take judicial notice of the following documents:

- David Haubert, Alameda County Board of Supervisors, District 1, Recommendation to Review and Discuss the Alameda County's Eviction Moratorium Ordinance on a Future Alameda County Board of Supervisors Agenda, July 19, 2022, attached hereto as **Exhibit 19.**

- Agenda item 30.1 – Board of Supervisors' Meeting, Tuesday, July 19, 2022 (excerpted), attached hereto as **Exhibit 20.**

- Video link to Agenda item 30.1 (*see* minutes 3:10-3:57): https://alamedacounty.granicus.com/MediaPlayer.php?view_id=2&clip_id=7819&meta_id=481190, attached hereto as **Exhibit 21.**

- *City of Alameda v. Superior Court of the State of California*, for the County of Alameda, Court of Appeal of the State of California, First Appellate District, Case No. A165610, PETITION FOR WRIT OF MANDATE, PROHIBITION OR OTHER APPROPRIATE RELIEF, filed July 14, 2022, attached hereto as **Exhibit 22.**

Respectfully submitted,

Dated: August 12, 2022

NIELSEN MERKSAMER
PARRINELLO GROSS & LEONI LLP

By: _____

Christopher E. Skinnell
Hilary J. Gibson
*Attorneys for Plaintiffs*

1

## Points and Authorities

2    Pursuant to Federal Rule of Evidence 201, Plaintiffs respectfully request the

3    Court take judicial notice of the publicly accessible government documents attached

4    hereto as Exhibits 19 through 22.  Under Federal Rule of Evidence 201(b): "The court

5    may judicially notice a fact that is not subject to reasonable dispute because it (1) is

6    generally known within the trial court's territorial jurisdiction; or (2) can be

7    accurately and readily determined from sources whose accuracy cannot reasonably be

8    questioned."  Further, the Court "must take judicial notice if a party requests it and

9    the court is supplied with the necessary information."  Fed. Rule Evid. 201(c)(2).

10    The Court may take judicial notice of government documents, publications, and

11    forms available on a publicly accessible government website because they are

12    documents not subject to reasonable dispute. *Krogen v. United States*, No. 1:14-cv-

13    1266-LJO-MJS, 2015 U.S. Dist. LEXIS 114805, at *10, n.4 – n.5 (E.D. Cal. Aug. 28,

14    2015) (granting judicial notice of a United States Forest Service guide and manual

15    "because it comes from a publicly accessible government website"); *see also In re*

16    *Epogen & Aranesp Off Label Mktg. & Sales Practices Litigation*, 590 F. Supp. 2d 1282,

17    1286 (C.D. Cal. 2008) (granting judicial notice of drug labels "that are publicly

18    available on the [U.S. Food and Drug Administration] website, finding that the labels

19    are documents not subject to reasonable dispute"); *Musgrave v. ICC/Marie*

20    *Callender's Gourmet Prods. Div.*, No. 14-cv-02006-JST, 2015 U.S. Dist. LEXIS 14674,

21    at *7 (N.D. Cal. Feb. 5, 2015) (granting judicial notice of various government agency

22    letters, finding "Documents available through government agency websites are often

23    considered appropriate for judicial notice as documents in the public record not

24    reasonably subject to dispute"); *Reyn's Pasta Bella, LLC. v. Visa USA, Inc.*, 442 F.3d

25    741, 746 n.6 (9th Cir. 2006) (court may take judicial notice of "matters of public

26    record").

27    Moreover, because court filings are "capable of accurate and ready

28    determination by resort to sources whose accuracy cannot reasonably be questioned,"

1   pleadings filed and orders issued in pending litigation are proper subjects of judicial

2   notice under Rule 201. *McVey v. McVey*, 26 F. Supp. 3d 980, 984 (C.D. Cal. 2014). *See*

3   *also Rodriguez v. Disner*, 688 F.3d 645, 660 n. 11 (9th Cir. 2012) (taking judicial

4   notice of briefs filed in related case); *Madden v. Cate*, 2013 U.S. Dist. LEXIS 152484,

5   *3 n.5 (C.D. Cal. Oct. 22, 2013) (taking judicial notice of the California Supreme Court

6   docket).

7       **Exhibits 19 and 20** contain judicially noticeable facts about the Alameda

8   County Board of Supervisors' (the "Board") July 19, 2022 agenda item "[t]o review and

9   discus the Alameda County's Eviction Moratorium Ordinance on a future Alameda

10  County Board of Supervisors agenda." In introducing the agenda item, Alameda

11  Supervisor David Haubert explained that:

12          we have heard from many of our landlords from every one of our
            Districts expressing their financial hardships due to this Ordinance. We
13          ended our County's Temporary Commercial Eviction Moratorium on
            September 30, 2021 and on the same date the State of California ended
14          its Eviction Moratorium. Many of the conditions that were in place at the
            time this Board approved the Eviction Moratorium Ordinance are no
15          longer in place as of today. For these reasons above along with the fact
            that, we have a right to represent all of our constituents, I feel it is the
16          right thing to do, to have a discussion to review and modify this
            Ordinance, that has had some unintended consequences on our
17          constituents.
18

19  However, on July 19, 2022, the Board voted *not* to consider modification of the

20  Alameda County Moratorium, thereby confirming the permanence of the Moratorium.

21      **Exhibit 21** is the video meeting on that agenda item, and contains judicially

22  noticeable facts about the Board's decision to leave the Moratorium in place, thereby

23  permitting all tenants to permanently occupy landlords' properties.

24      **Exhibit 22** is a writ petition filed by the City of Alameda against the Alameda

25  Superior Court, which alleges that: (1) the City of Alameda seeks to evict two

26  nonpaying tenants from City-owned residential property, who do not allege Covid-19

27  hardship, and who have not applied for COVID-19 related financial assistance; (2) the

28  Court denied the City of Alameda's request to file unlawful detainer complaint

against the tenants; and (3) that such denial is unconstitutional. The City of Alameda case is evidence of the breadth and scope of the County's moratorium and supportive of the fact that this is unconstitutional against all owners, private and government alike, under all circumstances.

Respectfully submitted,

Dated: August 12, 2022

NIELSEN MERKSAMER
    PARRINELLO GROSS & LEONI LLP

By: _____

Christopher E. Skinnell
Hilary J. Gibson

*Attorneys for Plaintiffs*

**EXHIBIT 18**

Declaration of Christopher E. Skinnell in Support of

Plaintiffs' Request for Judicial Notice

I, CHRISTOPHER E. SKINNELL, declare under penalty of perjury as follows:

1.    I am over 18 years of age and a member in good standing of the State Bar of California.  I make this declaration of my personal knowledge.  If called as a witness I could and would testify competently thereto.

2.    I am an attorney at Nielsen Merksamer Parrinello Gross & Leoni, LLP, counsel for Plaintiffs in this action.

3.    On August 12, 2022, I personally visited the official website for Alameda County's Board of Supervisors meeting information located at https://bos.acgov.org/broadcast/. While on that site I reviewed the agenda for the July 19, 2022 meeting of the Board and the materials related to Agenda Item #30.1 ("Supervisor Haubert - Place the eviction moratorium ordinance on a future agenda for review and possible modification"). Attached hereto as **Exhibits 19 and 20** are true and correct copies of Supervisor Haubert's letter to his colleagues in support of Agenda Item #30.1 and the relevant pages of the July 19, 2022 Agenda itself.

4.    Also available on the Board of Supervisors' meeting website are links to videos of the Board's meetings. Attached as **Exhibit 21** is true and correct copy of a link to the July 19, 2022 meeting.

5.    Attached as **Exhibit 22** is true and correct copy of a pleading recently filed by the City of Alameda in *City of Alameda v. Superior Court*, Case No. A165610, which challenges the application of the County's moratorium ordinance within the boundaries of the City of Alameda.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct of my own personal knowledge except for those matters stated on information and belief and, as to those matters, I believe them to be true.  If called as a witness, I could competently

1  testify thereto.

2          Executed on August 12, 2022, at San Rafael, California.

3

4                              By: _____

5                                    Christopher E. Skinnell

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 19

AGENDA _____July 19, 2022

# B O A R D   O F   S U P E R V I S O R S



**DAVID HAUBERT**

**SUPERVISOR, FIRST DISTRICT**

Honorable Board of Supervisors
Alameda County Administration Building
Oakland, CA 94612

Dear Board Members:

**Subject:**    **RECOMMEND THAT THE BOARD OF SUPERVISORS PLACE THE EVICTION MORATORIUM ORDINANCE ON A FUTURE AGENDA FOR REVIEW AND POSSIBLE MODIFICATION**

**RECOMMENDATION:**

> To review and discus the Alameda County's Eviction Moratorium Ordinance on a future Alameda County Board of Supervisors agenda

**DISCUSSION/SUMMARY:**

On June 30, 2020, the Alameda County Board of Supervisors amended its previous Eviction Moratorium Ordinance to ensure all tenants and homeowners Countywide can shelter-in-place during the pandemic. Since that date, under "Public Comment on items not on the agenda" we have heard from many of our landlords from every one of our Districts expressing their financial hardships due to this Ordinance.

We ended our County's Temporary Commercial Eviction Moratorium on September 30, 2021 and on the same date the State of California ended its Eviction Moratorium. Many of the conditions that were in place at the time this Board approved the Eviction Moratorium Ordinance are no longer in place as of today. For these reasons above along with the fact that, we have a right to represent all of our constituents, I feel it is the right thing to do, to have a discussion to review and modify this Ordinance, that has had some unintended consequences on our constituents. I respectfully request your support and hope we can have a positive discussion pertaining to the Ordinance.

David G. Haubert

David Haubert

Alameda County Board of Supervisors, District 1

# EXHIBIT 20



# BOARD OF SUPERVISORS

<u>**Regular Meeting**</u>                                                        <u>**Tuesday, July 19, 2022**</u>

| | | |
|---|---|---|
| **COUNTY ADMINISTRATION BUILDING** | **DAVID HAUBERT** | **DISTRICT 1** |
| **SUPERVISORS' CHAMBERS** | **RICHARD VALLE** | **DISTRICT 2** |
| **1221 OAK STREET** | **DAVID BROWN** | **DISTRICT 3** |
| **FIFTH FLOOR, ROOM 512** | **NATE MILEY, VICE-PRESIDENT** | **DISTRICT 4** |
| **OAKLAND, CALIFORNIA** | **KEITH CARSON, PRESIDENT** | **DISTRICT 5** |

SUSAN S. MURANISHI                                                        DONNA ZIEGLER
COUNTY ADMINISTRATOR                                              COUNTY COUNSEL

<u>***MISSION***</u>

*TO ENRICH THE LIVES OF ALAMEDA COUNTY RESIDENTS THROUGH VISIONARY POLICIES AND ACCESSIBLE, RESPONSIVE, AND EFFECTIVE SERVICES.*

<u>***VISION***</u>

*ALAMEDA COUNTY IS RECOGNIZED AS ONE OF THE BEST COUNTIES IN WHICH TO LIVE, WORK AND DO BUSINESS.*

The Board of Supervisors welcomes you to its meetings and your interest is appreciated. Due to the COVID-19 public health emergency the County of Alameda has made changes related to Board of Supervisors' meetings and will allow in-person and remote observation and participation by members of the public.

**IN-PERSON PARTICIPATION:** The meeting site is open to the public. To protect employee and public health: (1) Masks are required to enter all County facilities, and must be worn at all times; and (2) Seating and occupancy in the Board Chambers have been reduced to promote social distancing. All in-person participants must adhere to posted health and safety protocols while in the building.

**REMOTE/TELECONFERENCE PARTICIPATION:**  Members of the public may observe and participate in meetings remotely via teleconference by following the instructions in the TELECONFERENCING GUIDELINES posted on-line at: https://www.acgov.org/board/bos_calendar/documents/TeleconferencingGuidelines.pdf

To simply observe the meeting via live broadcast visit: http://acgov.org/board/broadcast.htm.

If attending in-person and you wish to speak on a matter, please fill out a speaker slip at the front of the Chambers and submit it to the Clerk as soon as possible.  For both in-person and remote attendees, when addressing the Board, please give your name for the record prior to your presentation.  If you wish to speak on a matter not on the agenda, please wait until the President calls for public input.  NOTE:  Only matters within the Board of Supervisors' jurisdiction may be addressed.  Time limitations shall be at the discretion of the President of the Board.

Pursuant to Board Policy: (1) Signs that obstruct the view of meeting attendees are prohibited during Board meetings; (2) Demonstrations that disrupt the meeting are prohibited; (3) Each Board Member may request one continuance of any item to a meeting date within two regularly scheduled meetings.    If you have questions regarding the agenda, please call the Clerk of the Board's Office at (510) 208-4949.

If you require the use of an assistive listening device, please ask the Clerk for a personal sound receiver. If you require a reasonable modification or accommodation for a disability, please contact the Clerk of the Board by 5:00 p.m. 72 hours prior to the meeting date at CBS@acgov.org or call (510) 208-4949 or (510) 834-6754 (TDD). The Board of Supervisors' meetings are wheelchair accessible. If you require language interpretation services, please contact the Clerk of the Board, by 5:00 p.m. 72 hours prior to the meeting date.

## GENERAL ADMINISTRATION

28.   *President Carson* - Approve the use of $1,554,635 of American Rescue Plan Act Supervisorial District 5 Community Needs Cash Aid Grants, to support twenty-eight local organizations listed in Attachment A, due to the negative economic impact experienced from COVID-19
Attachment 28

29.   *Supervisor Brown* - Approve the use of $1,300,000 of American Rescue Plan Act Supervisorial District 3 Community Needs Cash Aid Grants, to support twenty-three local organizations listed in Attachment A, due to the negative economic impact experienced from COVID-19
Attachment 29

30.   *Supervisor Brown* - Approve and execute a Twelfth Amendment to Procurement Contract No. 7209, with Full Court Press Communications, Inc. (Principal: Dan Cohen; Location: Oakland) to provide media consultant services to Supervisorial District 3, extending the term of 7/1/11 - 6/30/22 by six months to 12/31/22, increasing the amount from $304,000 to $329,000 ($25,000 increase)
Attachment 30

30.1.   *Supervisor Haubert* - Place the eviction moratorium ordinance on a future agenda for review and possible modification
Attachment 30.1

30.2.   *Supervisor Miley* - Approve a First Amendment to Procurement Contract No. 7209 with Full Court Press Communications, Inc. (Principal Dan Cohen; Location: Oakland) to continue providing media consultation services to District 4, extending the term of 4/6/21 - 4/6/22 by approximately 15 months to 6/30/23, increasing the not to exceed amount from $25,000 to $50,000 ($25,000 increase)
Attachment 30.2

31.   *Auditor-Controller Agency* - Second reading and adoption of an Ordinance to update section 4.04.110 (Audit of County Treasury) of the Alameda County Administrative Code to align with California Government Code Section 26920 - **Continued from 7/12/22 (Item #25)**
Attachment 31

32.   *Auditor-Controller Agency* - Approve the following recommendations:
   A.   Approve the use of $1,000,000 of American Rescue Plan Act Funds received by the County of Alameda, for distribution through the Alameda County Arts Relief Grant Program Round Two administered by the Alameda County Arts Commission; and
   B.   Authorize the Auditor-Controller to issue warrants payable to 182 Alameda County nonprofit arts and cultural organizations
   - CAO Recommends: Approve
Attachment 32

**PUBLIC INPUT (ITEMS NOT ON THE AGENDA)**

# ADJOURNMENT

**NEXT MEETINGS:**

| | |
|---|---|
| TUESDAY, JULY 26, 2022 | REGULAR CALENDAR |
| TUESDAY, AUGUST 2, 2022 | CANCELED |
| TUESDAY, AUGUST 9, 2022 | REGULAR CALENDAR AND WORK SESSION |
| THURSDAY, AUGUST 11, 2022 | PLANNING MEETING |

# EXHIBIT 21

**Video link to Agenda item 30.1 (see, minutes 3:10-3:57):**

**https://alamedacounty.granicus.com/MediaPlayer.php?view_id=2&clip_id=7819&meta_id=481190**

# EXHIBIT 22

Exempt from Filing Fees
(Govt. Code § 6103)

CASE NO. _____

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
FIRST APPELLATE DISTRICT, DIVISION ___

———————————

CITY OF ALAMEDA

*Petitioner,*

*vs.*

SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE
COUNTY OF ALAMEDA

*Respondent.*

IRMA GARCIA SINCLAIR AND SHELBY SHEEHAN,

*Real Parties in Interest.*

———————————

**PETITION FOR WRIT OF MANDATE, PROHIBITION OR OTHER
APPROPRIATE RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES
[APPENDIX OF EXHIBITS FILED SEPARATELY]**

From the Superior Court for the State of California,
County of Alameda, Case Nos. 22CV009959, 22CV009965, Hon. Victoria
S. Kolakowski

———————————

**City Attorney, City of Alameda**
Yibin Shen (State Bar No. 233545)*
yshen@alamedacityattorney.org
Elizabeth Mackenzie (State Bar No. 202010)
emackenzie@alamedacityattorney.org
2263 Santa Clara Avenue
Alameda, California 94501
Telephone: (510) 747-4750

**Farella Braun + Martel LLP**
Thomas B. Mayhew (State Bar No. 183539)*
tmayhew@fbm.com
Janice W. Reicher (State Bar No. 287591)
jreicher@fbm.com
Hilary C. Krase (State Bar No. 318762)
hkrase@fbm.com
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Petitioner CITY OF ALAMEDA

Document received by the CA 1st District Court of Appeal.

Document received by the CA 1st District Court of Appeal.

41699.14861118.15

41699.14861118.15

**CERTIFICATE OF INTERESTED ENTITIES AND PERSONS**

Pursuant to Rule 8.208(d)(3) of the California Rules of Court,

counsel for petitioner certifies that they are not aware of any person or

entity, other than Petitioner City of Alameda, that has a financial or other

interest in the outcome of the proceeding that the justices should consider in

determining whether to disqualify themselves.


Respectfully submitted,


Dated:  July 14, 2022

FARELLA BRAUN + MARTEL LLP

By: _____

Thomas B. Mayhew

Attorneys for Petitioner
CITY OF ALAMEDA

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED ENTITIES AND PERSONS .............. 3

TABLE OF CONTENTS ............................................................. 4

TABLE OF AUTHORITIES ......................................................... 6

INTRODUCTION ................................................................... 12

    A.    Nature of the Case. ................................................. 13

    B.    Issues Presented. ................................................... 16

    C.    Why Writ Relief Is Warranted. .................................. 16

PETITION ............................................................................ 18

    A.    The Parties. ......................................................... 18

    B.    Background. ......................................................... 18

    C.    Why the Trial Court Erred. ...................................... 27

    D.    Why A Writ Is Necessary. ........................................ 27

    E.    The Petition Is Timely. ........................................... 28

PRAYER .............................................................................. 28

VERIFICATION NOT REQUIRED. .............................................. 30

MEMORANDUM OF POINTS AND AUTHORITIES ......................... 31

I.     STANDARD OF REVIEW. ...................................................... 31

II.   THE COUNTY ORDINANCE USED TO BAR FILING OF
     THE COMPLAINTS IS UNCONSTITUTIONAL AS
     APPLIED TO THE INCORPORATED AREAS OF THE
     COUNTY. ..................................................................... 32

III.  THE EMERGENCY SERVICES ACT, AND THE
     CUNNINGHAM OPINION INTERPRETING IT, DO NOT
     OVERRIDE ARTICLE XI, SECTION 7 OF THE
     CALIFORNIA CONSTITUTION. .......................................... 36

IV.  THE SUPERIOR COURT ERRED BY REFUSING TO FILE
     THE COMPLAINT OR HEAR THE MERITS OF THE
     CITY'S ARGUMENT. ....................................................... 44

    A.    The Superior Court Refused To Hear The Case Based
         On The Facial Applicability Of The County
         Ordinance. ....................................................... 45

Document received by the CA 1st District Court of Appeal.

Document received by the CA 1st District Court of Appeal.

    B.    The City Has Both Statutory And Constitutional
           Rights To Commence A Case For Recovery Of Its
           Property. ....................................................................... 47

V.    WRIT RELIEF, AND AN APPEAL IN THE
      ALTERNATIVE .................................................................. 53

VI.   CONCLUSION ................................................................... 54

CERTIFICATE OF COMPLIANCE PURSUANT TO
    CALIFORNIA RULES OF COURT RULE 8.204(C)(1)................. 54

DECLARATION OF SERVICE................................................... 54

Document received by the CA 1st District Court of Appeal.

## TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

*So.Cal. Rental Housing Assn. v. Cty. of San Diego*
  (S.D. Cal. 2021) 550 F.Supp.3d 853................................ 43, 44

### STATE CASES

*Abstract Investment Co. v. Hutchinson*
  (1962) 204 Cal.App.2d 242 ...................................................... 49

*Birkenfeld v. City of Berkeley*
  (1976) 17 Cal.3d 129 .......................................................... 48, 52

*Bohbot v. Santa Monica Rent Control Bd.*
  (2005) 133 Cal.App.4th 456 .................................................... 48

*Brookside Invs., Ltd. v. City of El Monte*
  (2016) 5 Cal.App.5th 540 ........................................................ 31

*Cahill Constr. Co. v. Super. Ct.*
  (2021) 66 Cal.App.5th 777 ................................................ 13, 17

*Cal. Fed. Savings & Loans Assn. v. City of Los Angeles*
  (1995) 11 Cal.4th 342 .............................................................. 43

*Ex parte Campbell*
  (1887) 74 Cal. 20 .................................................................... 33

*People ex rel. City of Downey v. Downey Cty. Water Dist.*
  (1962) 202 Cal.App.2d 786 ................................................ 33, 38

*City of Dublin v. Cty. of Alameda*
  (1993) 14 Cal.App.4th 264 ........................................... 15, 32, 35

Document received by the CA 1st District Court of Appeal.

*City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.*
(2013) 56 Cal.4th 729 ................................................ 32

*City of San Diego v. Shapiro*
(2014) 228 Cal.App.4th 756 ........................................ 31

*City of South San Francisco v. Berry*
(1953) 120 Cal.App.2d 252 ..................................... 32, 36

*Coyne v. City and Cty. of San Francisco*
(2017) 9 Cal.App.5th 1215 .......................................... 31

*Crawley v. Alameda Cty. Waste Mgmt. Auth.*
(2015) 243 Cal.App.4th 396 ......................................... 41

*Cty. Sanitation Dist. No. 2 v. Cty. of Kern*
(2005) 127 Cal.App.4th 1544 ....................................... 32

*DeForrest v. Coffey*
(1908) 154 Cal.444 ................................................. 53

*Epstein v. Super. Ct.*
(2011) 193 Cal.App.4th 1405 ....................................... 30

*Feldman v. 1100 Park Lane Assocs.*
(2008) 160 Cal.App.4th 1467 ....................................... 47

*Feuer v. Nestdrop*
(2016) 245 Cal.App.4th 664 ........................................ 31

*Great Western Shows, Inc. v. Cty. of Los Angeles*
(2002) 27 Cal.4th 853 ........................................... 34, 35

*Hale v. Morgan*
(1978) 22 Cal.3d 388 ............................................... 50

*Hall v. Super.Ct.*
(2005) 133 Cal.App.4th 908, 914 n.9 ............................... 30

*Hammond v. Agran*
(1999) 76 Cal.App.4th 1181 ........................................ 41

*Jonathan L. v. Super. Ct.*
(2008) 165 Cal.App.4th 1074 ....................................... 51

*Kalivas v. Barry Controls Corp.*
(1996) 49 Cal.App.4th 1152 ........................................ 51

*Adoption of Kelsey S.*
(1992) 1 Cal.4th 816 ............................................... 51

*In re Knight*
(1921) 55 Cal.App. 511 ............................................. 34

*Labor & Workforce Dev. Agency v. Super. Ct.*
(2018) 19 Cal.App.5th 12 .......................................... 28

*Los Angeles Cty. Dept. of Children & Family Servs. v. Super. Ct.*
(1998) 62 Cal.App.4th 1 ............................................ 30

*Martin Potts & Assocs., Inc. v. Corsair, LLC*
(2016) 244 Cal.App.4th 432 ........................................ 31

*MHC Fin. Ltd. P'ship Two v. City of Santee*
(2005) 125 Cal.App.4th 1372 ....................................... 31

*Murrieta Valley Unified School Dist. v. Cty. of Riverside*
(1991) 228 Cal.App.3d 1212 ........................................ 30

*Pacific Landmark Hotel, Ltd. v. Marriott Hotels, Inc.*
(1993) 19 Cal.App.4th 615 ......................................... 54

*Payne v. Super. Ct.*
(1976) 17 Cal.3d 908 ............................................... 47

*Ex parte Roach*
(1894) 104 Cal. 272 ............................................ 33, 34

Document received by the CA 1st District Court of Appeal.

*In re Sanitary Board of East Fruitvale Sanitary Dist.*
(1910) 158 Cal. 453 .......................................................................... 33, 38

*Schweiger v. Super. Ct.*
(1970) 3 Cal.3d 507 .............................................................................. 49

*Wolfgram v. Wells Fargo Bank*
(1997) 53 Cal.App.4th 43 .............................................................*passim*


CALIFORNIA CONSTITUTIONAL PROVISIONS

California Constitution
Article XI § 7 ..................................................................................*passim*
Article XI § 8(a) .................................................................................. 35


STATE STATUTES

California Code of Civil Procedure
§ 411.10................................................................................................ 44
§ 425.10-425.55 .................................................................................... 51
§ 429.30................................................................................................ 51
§ 452-461 ............................................................................................. 51
§ 575.1.................................................................................................. 52
§ 588..................................................................................................... 50
§ 591..................................................................................................... 50
§ 1086................................................................................................... 27
§§ 1159 through 1179a ........................................................................ 48
§ 1165................................................................................................... 51
§ 1166................................................................................................... 51

California Government Code
§ 20...................................................................................................... 13
§ 8550.................................................................................................. 42
§ 8557(b).............................................................................................. 40
§ 8625.................................................................................................. 42
§ 8627.................................................................................................. 42
§ 8634.................................................................................................. 40
§ 8635.................................................................................................. 39
§ 8668(b)...................................................................................38,39,41
§ 56043................................................................................................ 13


LOCAL STATUTES

Alameda County Ordinance
§ 6.120................................................................20, 21, 22, 23, 35
§ 6.120.010 et seq. ............................................................................... 47
§ 6.120.030........................................................................................... 22
§ 6.120.040........................................................................................... 22
No. 2020-17 ......................................................................................... 20
No. 2020-18 ......................................................................................... 20
No. O-2020-14 ................................................................................20, 21
No. O-2020-21 ................................................................................20, 38
No. O-2020-23 ................................................................................21, 38
No. O-2020-41 ..................................................................................... 22
§ II, ¶ 11 .............................................................................................. 21

City of Alameda Ordinance
No. 3267............................................................................................... 22
No. 3272............................................................................................... 23
No. 3275..........................................................................................15, 23
No. 3268............................................................................................... 23
No. 3273............................................................................................... 23

Document received by the CA 1st District Court of Appeal.

**LOCAL RULES**

Superior Court Local Rule
1.8.1 ...................................................................... 14, 25
1.8(a) ..................................................................... 14, 25
1.8.1(d)(2) ................................................................. 14
1.8.1(d)(2)(A) .......................................................... 45, 46

**OTHER AUTHORITIES**

62 Ops.Cal.Atty.Gen. 701, 1979 WL 29299 (Cal.A.G.) ...................... passim

Governor's Exec. Order No. N-28-20 .......................................... 43

Governor's Exec. Order No. N-37-20 .......................................... 24

Ops.Cal.Atty.Gen. No. 45/231, Oct. 18, 1945 ............................... 24

**INTRODUCTION**

The City of Alameda seeks to evict two tenants who refuse to pay their rent for City-owned residential property, and refused to even apply for COVID-19 financial relief. But because of a County ordinance prohibiting evictions in both the incorporated and unincorporated areas of Alameda County, and a local Alameda County Superior Court rule providing that unlawful detainer complaints cannot be filed if an ordinance prohibits them, Respondent Superior Court denied the requests to file the complaints against the two tenants.

The County ordinance, as applied by the Superior Court, is unconstitutional, both because counties have no legislative authority within cities and because it denies the City its constitutional and statutory rights of access to the courts for recovery of its property. The City seeks writ relief directing that its complaints be filed and a declaration that the County ordinance cannot apply or extend within incorporated cities without express invitation from the city.

Writ relief is both necessary and appropriate because the Superior Court has denied the City access to the court and thus the City has no adequate means of redress other than to seek writ relief from this Court. (*Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 61 ["In a case involving a claim by a litigant that a trial court erroneously refused to allow him to file an independent suit against a receiver, but required him to

Document received by the CA 1st District Court of Appeal.

Document received by the CA 1st District Court of Appeal.

intervene in the receivership matter, the California Supreme Court held 'It must, of course, be conceded that if upon the showing made upon the application for leave to sue, no discretion was left to respondent [Judge Coffey] but to grant the petition, then petitioner is entitled to the issuance of this writ of mandate to compel respondent to act as the law required him to do,' i.e., grant leave to sue. . . . The same would apply to a vexatious litigant who has demonstrated 'the litigation has merit and has not been filed for the purposes of harassment or delay' . . . ." Citations omitted, alteration in original].) Moreover, writ relief is appropriate as the issue presented is one of first impression. (*Cahill Constr. Co. v. Super. Ct.* (2021) 66 Cal.App.5th 777, 784–85.)

### A.   Nature of the Case.

The City of Alameda, an incorporated charter city[1] located within the County of Alameda, owns residential real property as a result of the decommissioning and transfer of the former Alameda Naval Air Station. Shelby Sheehan and Irma Garcia Sinclair each live in City-owned properties and have each refused to pay rent for over 19 months. (**Exh. 3**

[*Sheehan* Complaint], ¶ 14 and **Exh. 11** [*Sinclair* Complaint], ¶ 16.[2].) The City had attempted to assist Sheehan and Sinclair to obtain rental relief funds and applied on their behalf for the Alameda County COVID-19 Emergency Rental Assistance Program, but both Sheehan and Sinclair failed to file their corresponding applications in order to receive rental assistance. (**Exh. 3**, ¶¶ 24-25, **Exh. 11**, ¶¶ 26-27.) Furthermore, neither Defendant has ever asserted that her failure to pay rent was the result of a COVID-19-related financial hardship. The City has provided Sheehan and Sinclair with repeated notices to pay rent or vacate the premises, to no avail. (**Exh. 3**, ¶ 17, **Exh. 11**, ¶ 19.)

Accordingly, on April 12, 2022, the City attempted to initiate unlawful detainer actions against each of the defendants. Based on an Alameda County Superior Court Local Rule 1.8(a), which was superseded by Local Rule 1.8.1 shortly thereafter,[3] the City filed two separate ex parte applications to file complaints and issue summonses. (**Exhs. 6 and 14** [Ex parte Applications].)

---

[1]   "Cities," by definition, are incorporated. (See Cal. Gov. Code § 20 ["'City' includes 'city and county' and 'incorporated town,' but does not include 'unincorporated town' or 'village.'"]; see also *Id.* § 56043 ["'Incorporation' means the creation or establishment of a city. Any area proposed for incorporation as a city shall have at least 500 registered voters residing within the affected territory at the time the proposal is initiated."].)

---

[2]   References to Exhs. 1-22 are attached hereto as separately bound exhibits. Exhs. A-P are attached to the Motion for Judicial Notice, filed concurrently herewith.

[3]   Alameda County Superior Court Local Rule 1.8.1 subdivision (d)(2) outlines the process for filing unlawful detainer complaints and states that the Court must review the complaint and accompanying documents and, if satisfied, issue a summons so that the plaintiff may serve a copy of the summons and complaint. "The action may not be served or otherwise proceed until the Court issues a summons on a proposed complaint." (*Id.*)

Document received by the CA 1st District Court of Appeal.

Document received by the CA 1st District Court of Appeal.

In its applications, the City complied with the local rule requirement that it allege that there was no local ordinance prohibiting the eviction. (**Exh. 3**, ¶¶ 30-34 and **Exh. 11**, ¶¶ 32-36.) In attorney declarations accompanying the required ex parte requests to file the complaints, the City explained why neither the Alameda County Temporary Eviction Moratorium ("County Ordinance") nor the City of Alameda Ordinance 3275 ("City Ordinance No. 3275") barred the City's unlawful detainer actions. (**Exhs. 7 and 15** [Reicher Declarations].) With respect to the County Ordinance, the City explained that the County lacks authority to regulate within City boundaries, despite the public health emergency, as a matter of California constitutional law. (See, e.g., *City of Dublin v. Cty. of Alameda* (1993) 14 Cal.App.4th 264, 274-75 ["[T]he California Constitution specifies that the police power bestowed upon a county may be exercised 'within its limits,' i.e., only in the unincorporated area of the county."].)

The Superior Court, without providing the City an opportunity to be heard[4], and without asking the defendants for their positions[5], denied the

City's applications for orders permitting the filing of the unlawful detainer complaints on the procedural ground that the text of the County Ordinance prohibited the filing of the actions. (**Exhs. 1 and 2** [Denials of Applications for Orders Permitting the Filing of Unlawful Detainer Complaints, dated May 16, 2022].) The Superior Court stated that it would not evaluate whether the County ordinance was invalid on an ex parte application in an unlawful detainer proceeding, and refused to allow the complaints to be filed so that the matter could be briefed, argued, or heard at all. (**Exh. 1** at p. 9 and **Exh. 2** at 14.)

**B.**   **Issues Presented.**

The Petition presents the following issues:

Can a county regulate within the boundaries of a city (i.e., an incorporated area), based on declaration of a public health emergency, including by imposing regulations that conflict with the city's own legislative response to the emergency?

Can the Superior Court refuse to permit the filing of an unlawful detainer complaint based on a County ordinance prohibiting the filing of the complaint, and thus refuse to decide whether the ordinance is invalid or inapplicable?

**C.**   **Why Writ Relief Is Warranted.**

A writ is necessary, as it is the only means of providing Petitioner with an adequate remedy. (*Wolfgram v. Wells Fargo Bank* (1997) 53

---

[4]   Given that the Superior Court did not allow the City an opportunity to be heard, there was no oral argument in or transcript from the Superior Court proceeding. *See* Mayhew Decl. ISO Petition for Writ of Mandate, ¶ 2.

[5]   No papers were filed by the real parties in interest (Sheehan or Sinclair) as the Superior Court barred the filing of the complaints and issuance of the summonses on Sheehan and Sinclair. *See* Mayhew Decl. ISO Petition for Writ of Mandate, ¶ 3.

Document received by the CA 1st District Court of Appeal.

Document received by the CA 1st District Court of Appeal.

Cal.App.4th 43, 61. The Superior Court denied the City's application to file two unlawful detainer complaints and issue summonses, thus denying the City access to the court. Accordingly, the City is left with no means of adequate redress except to seek writ relief from this Court.

Writ relief is also appropriate because the Superior Court's order presents an important issue of first impression: Does the county have the power to regulate within incorporated areas based on a declared emergency, contrary to the regulation of the same subject by a charter city, and to further prevent filing of a lawsuit where the invalidity of the county ordinance would be at issue? (*Cahill Constr. Co. v. Super. Ct.* (2021) 66 Cal.App.5th 777, 784–85 ["Writ review is appropriate because the petition presents questions of first impression 'of general importance to the trial courts and to the profession' that are amenable to the issuance of 'general guidelines ... for future cases.'" Citations omitted].)

41699\4861118.15

17

Document received by the CA 1st District Court of Appeal.

## PETITION

By this verified petition, Petitioner City of Alameda alleges:

**A.**   **The Parties.**

1. Petitioner City of Alameda ("City") is, and at all times relevant was, a charter city and municipal corporation duly organized under the Charter of the City of Alameda, California and the laws of the State of California. The City filed two ex parte applications in the Superior Court of the State of California for the County of Alameda ("Superior Court"), entitled *City of Alameda v. Shelby Sheehan*, Case No. 22CV009959 and *City of Alameda v. Irma Garcia Sinclair*, Case No. 22CV009965. (**Exhs. 6 and 14** [Ex Parte Applications].)

2. Respondent Superior Court of the State of California for the County of Alameda is the court that exercised jurisdiction over the actions. (**Exhs. 1 and 2** [Denials].)

3. Shelby Sheehan and Irma Garcia Sinclair are the tenants and individuals against whom the City sought to file unlawful detainer actions and are the real parties in interest. (**Exhs. 3 and 11** [Complaints], ¶ 3.)

**B.**   **Background.**

The Tenants Have Refused to Pay Rent to the City of Alameda for Over 19 Months Despite Receiving Numerous Notices

41699\4861118.15

18

Document received by the CA 1st District Court of Appeal.

4. The City is the owner of the premises located at 2801 Newport Road, in the City of Alameda, County of Alameda, California, 94501 where Shelby Sheehan resides. **(Exh. 3, ¶ 2.)**

5. Sheehan has not paid rent to the City for over 19 months, beginning in December 2020. **(Exh. 3, ¶ 14.)**

6. The City is the owner of the premises located at 390 West Essex, in the City of Alameda, County of Alameda, California, 94501 where Irma Garcia Sinclair resides. **(Exh. 11, ¶ 2.)**

7. Sinclair has not paid rent to the City for over 19 months, beginning in December 2020. **(Exh. 11, ¶ 16.)**

8. The City has repeatedly and properly served eviction notices on Sheehan and Sinclair informing them that their failure to pay rent would result in the forfeiture of the Rental Agreement and that the City would institute legal proceedings to recover possession of the Sheehan and Sinclair Premises, respectively. **(Exh. 3, ¶ 17 and Exh. 11, ¶ 19.)**

The County of Alameda Eviction Moratorium

9. In response to the COVID-19 pandemic, on March 10, 2020, the County of Alameda declared a local public health emergency. **(Exh. A to Motion for Judicial Notice ("MJN"). [Alameda County Board of Supervisors Resolution No. R-2020-91].)** On March 16, 2020, it issued a shelter-in-place order, which has been renewed and

modified several times. **(Exh. B to MJN. [Alameda County Order of the County Health Officer to Shelter in Place].)**

10. On March 13, 2020, the County of Alameda adopted "An Ordinance Adding Chapter 6.120 to the Alameda County Ordinance Code Adopting a Temporary Moratorium on Evictions Resulting from Loss of Income, Increased Medical Expenses or Child Care Needs Related to COVID-9 in the Unincorporated Area of the County of Alameda." **(Exh. C to MJN. [County Ordinance No. 2020-17].)**

11. On March 24, 2020, the County further adopted "An Urgency Ordinance Adopting a Temporary Moratorium on Evictions Resulting from Loss of Income, Increased Medical Expenses or Child Care Needs Related to COVID-19 in the Unincorporated Area of the County of Alameda." **(Exh. D to MJN. [County Ordinance No. O-2020-14].)**

12. On March 31, 2020, the County Board of Supervisors adopted Ordinance No. O-2020-18 which amended County Ordinance No. O-2020-14 and expanded the County's Emergency Declaration and Shelter-in-Place Order to "both the unincorporated area of the County and within each incorporated city in the County[.]" 35

13. **(Exh. E to MJN, ¶ 24. [County Ordinance No. 2020-18].)**

14. On April 7, 2020, the County of Alameda adopted Ordinance No. O-2020-21, which amended Chapter 6.120 to expand its reach into

Document received by the CA 1st District Court of Appeal.

Document received by the CA 1st District Court of Appeal.

incorporated areas of the county. (**Exh. F** to MJN. [County Ordinance No. 2020-21].) Chapter 6.120 became entitled "Temporary Eviction Moratorium for the Incorporated and Unincorporated Areas of the County Due to COVID-19." (*Id.* at p. MJN 049, § II.) By its terms, it purports to "apply to cities within the County of Alameda and to the unincorporated area of the County." (*Id.* at MJN 050.)

15. On April 21, 2020, the County of Alameda adopted a regulation by urgency ordinance (County Ordinance No. O-2020-23) that amended the March 24, 2020 moratorium (County Ordinance No. O-2020-14). (**Exh. G** to MJN. (County Ordinance No. O-2020-23).) In Section II, paragraph 11 of the County Ordinance, it provides that the ordinance applies to "cities within the County of Alameda and to the unincorporated area of the County" alike. (*Id.* at § II, ¶ 11.A.) "To the extent . . . [any] city ordinance is not stronger, the County ordinance…shall apply despite contrary provisions or silence on the subject in the city ordinance." (*Id.* at § II, ¶ 11.C.) The only way in which a city can avoid the County's purported reach is by taking affirmative steps to: (1) "duly affirm or declare in writing its intent to opt out"; and (2) make a "finding that the city ordinance is stronger." (*Id.* at § II, ¶ 11.B.)

16. Alameda County Municipal Code Chapter 6.120 is the current County Ordinance setting forth the operative County eviction moratorium. (**Exhs. 7 and 15** [Reicher Decls.], at Exh. A. [Municipal Code Ch. 6.120].) The County adopted Ordinance No. O-2020-32 on June 23, 2020, which amended the County Ordinance (Chapter 6.120). (**Exh. H** to MJN. [County Ordinance No. O-2020-32].)

17. On August 4, 2020, the County further adopted Ordinance No. O-2020-41, "An Ordinance Amending Sections 6.120.030 and 6.120.040 of the Alameda County Ordinance Code to Extend the Temporary Moratorium on Residential Evictions in the County of Alameda to Expire Sixty Days After the Expiration of the Local Health Emergency But Not Sooner Than Sixty Days After December 31, 2020." (**Exh. I** to MJN. [County Ordinance No. O-2020-41].)

The Concurrent City of Alameda Eviction Moratorium

18. On March 17, 2020, the City of Alameda adopted "An Urgency Uncodified Ordinance (A) Declaring The Existence of A Local Emergency In Response To The COVID-19 Pandemic, And (B) Directing City Staff To Respond Expeditiously To Such Local Emergency." (**Exh. J** to MJN. [City of Alameda Ordinance No. 3267].) The City extended the ordinance several times, and it

Document received by the CA 1st District Court of Appeal.

remains in place to this day. (**Exh. K** to MJN. [City of Alameda Ordinance No. 3272].)

19. On March 17, 2020, the City also adopted an Urgency Ordinance imposing a 60-day moratorium on evictions from all residential units, by providing tenants with a defense for failure to pay rent as a result of the financial impacts of the COVID-19 pandemic, and preventing utility shut-offs. The City extended its eviction moratorium several times and it remains in place to this day. (**Exhs. L and M** to MJN. [City of Alameda Rent Moratoria, Ordinance Nos. 3268 and 3273].)

20. City of Alameda Ordinance 3275 is the operative ordinance which created a limited "substantive eviction defense to residential and commercial unlawful detainers instituted . . . for non-payment of rent resulting from the COVID-19 pandemic." (**Exhs. 7 and 15** [Reicher Decls.], at Exh. B [City Ordinance No. 3275] at pp. 093, 177.)

21. Both the County and the City each adopted their respective ordinances pursuant to the Emergency Services Act ("ESA") of 1970. (**Exhs. 7 and 15** [Reicher Decls.], at Exhs. A [County Ordinance Chpt. 6.120] and B [City Ordinance No. 3275].) The ESA was adopted to provide the Governor with great powers during times of emergency and to ensure coordination between and among the various governmental authorities to respond to said emergency.

(See Opinion No. 79-710, 62 Ops.Cal.Atty.Gen. 701, 1979 WL 29299 (Cal.A.G.).) The ESA gives both cities and counties the right to: (1) declare a local emergency, and (2) regulate within their respective spheres to address such an emergency.[6]

The Expired State of California Eviction Moratorium

22. On March 27, 2020 the State of California enacted a statewide eviction moratorium. (**Exh. N** to MJN. (Governor's Exec. Order No. N-37-20.)

23. The statewide eviction moratorium expired on April 1, 2022, except for those tenants who had already filed rent relief applications and for whom the moratorium was extended to June 30, 2022. As Sheehan and Sinclair did not file rent relief applications, the City therefore could proceed with its unlawful detainer cases against them without violating state law. (**Exh. 3** ¶ 25, **Exh. 11** ¶ 27.)

---

[6]   The California Disaster Act of 1945 ("1945 Act"), the predecessor to the ESA, was intended to coordinate the response of cities, state agencies, and the federal government during times of emergency. (See Ops.Cal.Atty.Gen. No. 45/231, Oct. 18, 1945.) Then-Governor Earl Warren signed the act into law, providing governors with the power to declare a state of emergency as well as granting them authority over state agencies, polices powers of the State, and authority to issue and enforce orders. The enactment of the ESA established the Governor's Office of Emergency Services while still maintaining emergency authorities granted to the Governor pursuant to the 1945 Act.

Document received by the CA 1st District Court of Appeal.

Document received by the CA 1st District Court of Appeal.

The City Requests to File The Complaints In Compliance With
Alameda County Superior Court Local Rule, But The Superior Court
Denies The Requests

24. On April 10, 2020, Alameda County Superior Court adopted a pre-

filing review process for unlawful detainer cases as an emergency

local rule, which has since been revised and ultimately made

permanent in Local Rule 1.8.1. (**Exh. O** to MJN. [Local Rule 1.8a].)

The local rule (and its predecessor, the emergency local rule) require

an allegation that the action is not prohibited by a local ordinance.

(*Id.*)

25. On April 12, 2022, the City lodged with the Superior Court two ex

parte applications to permit the filing of the Sheehan and Sinclair

Complaints and issuance of the Summonses to Sheehan and Sinclair,

respectively. (**Exhs. 6 and 14.**) For each of the Sheehan and

Sinclair proceedings, the City filed an Ex Parte Application for

Order Permitting the Filing of Unlawful Detainer Complaint (**Exhs.**

**6 and 14**), Complaint for Unlawful Detainer (**Exhs. 3 and 11**);

Declaration of Janice W. Reicher (**Exhs. 7 and 15**), Proposed Orders

(**Exhs. 9 and 16**); Civil Case Cover Sheet (**Exhs. 5 and 12**);

Contact Information for all Parties and Counsel (**Exhs. 4 and 17**);

and Mandatory Cover Sheet and Supplemental Allegations (**Exhs. 8**

**and 13**). The record also contains Notices of Unlawful Detainer

(Eviction) for both Sheehan and Sinclair. (**Exhs. 10, 18-19**).

26. The complaints in the *Sinclair* and *Sheehan* matters each alleged that

the action was not prohibited by any local ordinance, and both the

complaint and an accompanying attorney declaration explained the

City's position that the County ordinance did not apply to the leased

premises because the premises were "within the incorporated City of

Alameda and therefore outside the jurisdiction of the County of

Alameda." (**Exhs. 3 and 11** [Complaints] at ¶ 34.) The complaint,

and the accompanying attorney declaration, cited and quoted the

relevant constitutional provision and cases interpreting it.

27. On May 16, 2022, the Superior Court denied the applications for

orders permitting the filing of unlawful detainer complaints on

"procedural" grounds. (**Exhs. 1 and 2.**) The Court declined to

decide whether the county ordinance was valid as applied to the

incorporated area of the City of Alameda, did not set a hearing, and

did not request that defendants respond. (**Exh. 1** at p. 9 and **Exh. 2**

at 14.) Critically, it did not permit the complaints to be filed, which

would have allowed for the judicial determination of whether the

County Ordinance applies: "This order does not reach the merits of

the important jurisdictional questions raised by the City. It is a

procedural ruling that the County Moratorium and the Local Rules

of the Court bar the filing of these complaints and issuance of these

summonses." (**Exh. 1** at p. 9 and **Exh. 2** at 14.)

Document received by the CA 1st District Court of Appeal.

Document received by the CA 1st District Court of Appeal.

### C.    Why the Trial Court Erred.

28. The Superior Court ordered that the complaints could not be filed
pursuant to the County of Alameda Moratorium.  The order is
erroneous because: (1) the County of Alameda Moratorium is
constitutionally invalid because it exercises legislative police power
within an incorporated charter city without express invitation; and
(2) the County is constitutionally prohibited from denying the City
access to the courts via ordinance or otherwise.

### D.    Why A Writ Is Necessary.

29. The City has no plain, speedy, or adequate remedy at law other than
this Petition. (See Code Civ. Proc. § 1086.)  The City will be barred
from being heard by the courts altogether, and this deprivation of its
constitutional right to court access cannot be adequately remedied
absent a writ. (*Wolfgram v. Wells Fargo Bank* (1997) 53
Cal.App.4th 43, 61.)

30. This case presents a significant legal issue of first impression – i.e.,
whether a county can regulate evictions within incorporated areas
based on a public health emergency, contrary to the regulation of the
same subject by a charter city, and refuse to permit the filing of an
unlawful detainer complaint because of a county ordinance when the
court refuses to determine whether the ordinance creating the
defense is invalid or inapplicable.  Prompt resolution of this issue is

important to preserving the constitutional rights of the City, as well
as all those of charter and incorporated cities across the State of
California, and to clarify the appropriate scope of county and city
jurisdiction.  Further, the specific county ordinance here, as applied
by the Superior Court to bar the filing of a complaint, violates the
statutory and constitutional rights of access to the courts and due
process.

### E.    The Petition Is Timely.

31. The trial court entered its orders denying the City's ex parte
applications on May 16, 2022.  (**Exhs. 6 and 14.**)  The City filed this
Petition fewer than sixty days later, after first receiving approval to
proceed with the writ from the City Council at the first City Council
meeting following the Superior Court's order.  (See *Labor &
Workforce Dev. Agency v. Super. Ct.* (2018) 19 Cal.App.5th 12, 24
["Generally, a writ petition should be filed within the 60-day period
that applies to appeals." Internal quotation marks and citation
omitted].)  The Petition is therefore timely.

### PRAYER

WHEREFORE, Petitioner City of Alameda prays that this Court:

1.      Issue a writ of mandate or other appropriate relief directing
respondent court (a) to vacate its order of May 12, 2022, (b) accept and file
Petitioner's Complaints, and (c) issue the summonses; and

Document received by the CA 1st District Court of Appeal.

2.   Grant the City such other relief as just and proper.

Dated: July 14, 2022

FARELLA BRAUN + MARTEL LLP

By: _____
Thomas B. Mayhew

Attorneys for Petitioner
CITY OF ALAMEDA

**VERIFICATION NOT REQUIRED**

Because the City is a public entity, it is exempt from the requirement of verification, including as to writ proceedings.  (See *Epstein v. Super. Ct.* (2011) 193 Cal.App.4th 1405, 1409; *Los Angeles Cty. Dept. of Children & Family Servs. v. Super. Ct.* (1998) 62 Cal.App.4th 1, 9 n.7; *Murrieta Valley Unified School Dist. v. Cty. of Riverside* (1991) 228 Cal.App.3d 1212, 1221-1223; *see also Hall v. Super.Ct.)* (2005) 133 Cal.App.4th 908, 914 n.9 [collecting cases] [rejecting request to strike public entity's unverified return].)  If the Court wishes to require a verification, however, one will be provided.

Document received by the CA 1st District Court of Appeal.

Document received by the CA 1st District Court of Appeal.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  STANDARD OF REVIEW.

Purely legal questions, including the interpretation of constitutional provisions and local ordinances, are subject to de novo review.  (*Brookside Invs., Ltd. v. City of El Monte* (2016) 5 Cal.App.5th 540, 548 n.4 citing, e.g., *City of San Diego v. Shapiro* (2014) 228 Cal.App.4th 756, 771 [reviewing de novo the interpretation of a constitutional provision]; *Feuer v. Nestdrop* (2016) 245 Cal.App.4th 664, 672 [reviewing de novo the interpretation of a local ordinance].)

The Superior Court's application of a County Ordinance to an incorporated city raises pure issues of constitutional and statutory preemption, which is subject to de novo review.  (*Coyne v. City and Cty. of San Francisco* (2017) 9 Cal.App.5th 1215, 1224.)  Likewise, the Superior Court's decision barring the filing of the unlawful detainer actions does not involve any exercise of discretion, but rather a determination of whether the requirements outlined by the local rules were satisfied.  The evidence is undisputed and this is a question of law, which is similarly subject to de novo review.  (See, e.g., *Martin Potts & Assocs., Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 437 ["Whether section 473, subdivision (b)'s requirements have been satisfied in any given case is a question we review for substantial evidence where the evidence is disputed and de novo where it is undisputed." Citations omitted].); *MHC Fin. Ltd. P'ship Two v. City of Santee* (2005) 125 Cal.App.4th 1372, 1388–89, as modified on denial of reh'g, Feb. 16, 2005 [question of law regarding whether party satisfied statutory requirements for entitlement to fees reviewed de novo].)

### II.  THE COUNTY ORDINANCE USED TO BAR FILING OF THE COMPLAINTS IS UNCONSTITUTIONAL AS APPLIED TO THE INCORPORATED AREAS OF THE COUNTY.

The California Constitution, Article XI section 7, provides that "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."  For cities, "within its limits" means the land within the city limits. See *City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 737 [interpreting Article XI, section 7 "within its limits" to mean "within a local jurisdiction's borders".])  But for counties, "within its limits" means only the unincorporated areas of the county.  (*Cty. Sanitation Dist. No. 2 v. Cty. of Kern* (2005) 127 Cal.App.4th 1544, 1612 [citing Cal. Const. art. XI § 7 and stating:  "The incorporated areas of Kern County are necessarily outside the jurisdiction and authority of County; County's authority extends only to the unincorporated areas within its borders."]; *City of Dublin, supra*, 14 Cal.App.4th at pp. 274-75 [striking as unconstitutional a county measure as applied to the incorporated areas of the county; "[T]he California Constitution specifies that the police power bestowed upon a county may be exercised 'within its limits,' i.e., only in the unincorporated area of the county."]; *City of South*

Document received by the CA 1st District Court of Appeal.
Document received by the CA 1st District Court of Appeal.

*San Francisco v. Berry* (1953) 120 Cal.App.2d 252, 253-54 [when land located in unincorporated area of county was annexed to city, it was no longer subject to county ordinance because it "ceased to be 'within its limits.'" citing cases]. There are good reasons for this: "Two distinct governmental bodies claiming to exercise the same authority, powers and franchises simultaneously over the same territory would 'produce intolerable confusion, if not constant conflict.'" (*People ex rel. City of Downey v. Downey Cty. Water Dist.* (1962) 202 Cal.App.2d 786, 792, quoting *In re Sanitary Board of East Fruitvale Sanitary Dist.* (1910) 158 Cal. 453, 459.)

The constitutional division of authority – that counties exercise no legislative control over the cities within their boundaries – dates back to the California Supreme Court's decision in *Ex parte Roach* (1894) 104 Cal. 272, 276-77.[7] Roach had been arrested for selling liquor at his saloon after 10 o'clock in violation of a county ordinance, but he petitioned for habeas corpus, showing that his saloon was within the incorporated limits of the city of Hanford. (104 Cal. at p. 273-74.) The California Supreme Court

ordered him released: "We are clearly of the opinion that the ordinance of the board of supervisors of Kings county is inoperative within the city of Hanford." (*Id.* at p. 278.) The Court described California Constitution Article XI, section 7 (then numbered Article XI, section 11) as follows:

> It is not to be supposed that it was the intention of the people, through their constitution, to authorize a county to exercise the same power within the territory of the city as the city itself could exercise, or to confer upon the county the right to interfere with or impair the effect of similar legislation by the city itself. . . . Full effect can be given to the section by holding that each has been given the exclusive right of legislation within its own particular boundaries. By the organization of a city within the boundaries of a county the territory thus organized is withdrawn from the legislative control of the county upon the designated subjects, and is placed under the legislative control of its own council; and the principle of local government which pervades the entire instrument is convincive [sic] of the intention to withdraw the city from the control of the county, and to deprive the county of any power to annul or supersede the regulations of the city upon the subjects which have been confided to its control.

(*Ex parte Roach, supra,* 104 Cal. at p.277, quoted by *Great Western Shows, Inc. v. Cty. of Los Angeles* (2002) 27 Cal.4th 853, 870-71; see also *In re Knight* (1921) 55 Cal.App. 511, 517 ["[W]hen a municipal corporation is organized within the limits of a county, then so much of the territory of such county as is comprehended within the municipal limits of such corporation is, so far as local government is concerned, *withdrawn from the county,* and any ordinances passed by the latter can have no binding or any force upon the municipality as to any matters or subjects as to which the latter is vested with the power to enact prohibitory or regulatory local

---

[7]     The Constitution had been adopted a decade earlier, in 1879. (See *Ex parte Campbell* (1887) 74 Cal. 20, 23 [describing the adoption of Article XI, section 7, then numbered Article XI, section 11].) *Ex parte Campbell* stated, albeit in dicta, that a county could not pass a regulation that would "operate to divest the authorities of the city of the right to legislate on the same subject, and enforce such regulations within the city limits." (*Id.* at p. 25.)

laws." Quoted with approval in *Great Western Shows*, *supra*, 27 Cal.4th at p. 871.]) Or, as the California Supreme Court more recently put it in discussing these cases: "[C]ities and counties generally speaking do not exercise concurrent jurisdiction over regulatory matters." (*Great Western Shows*, *supra*, 27 Cal. 4th at p. 871.)

The Legislature can provide for counties to perform municipal functions, but only upon request. (Cal. Const. Art. XI § 8(a) ["The Legislature may provide that counties perform municipal functions at the request of cities within them."].) This provision does not apply here. The City did not request that the County pass the ordinance. Indeed, the City had its own ordinance governing the same issue already in place. While the County provides for an "opt out" if the City announces an intent to opt out and passes a "stronger" protection, the City's failure to do so does not constitute a "request" that the County apply its ordinance within city limits. The word "request" cannot fairly be read to include silence in the face of an uninvited regulation by the county within city limits.

When the County passed its first eviction moratorium, applicable only to the unincorporated areas of the County on March 24, 2020, it properly exercised the power created by Article XI, section 7 of the California Constitution. But when it passed the County Ordinance (Chapter 6.120, as amended), attempting to apply the ordinance within incorporated areas as well, the County no longer regulated "within its limits." (*City of*

*Dublin, supra,* 14 Cal.App.4th at pp. 274-75 [defining "within its limits" as "only in the unincorporated area of the county"]; *Berry, supra,* 120 Cal.App.2d at pp. 253-54 [county ordinance did not apply to land located in newly annexed area of city, because it ceased to be "within its limits" with respect to the county].) The County Ordinance that the Superior Court applied to prevent the filing of the City's complaint was thus unconstitutional and invalid. By denying the ex parte request based on the unconstitutional County Ordinance, Respondent Superior Court erred. Respondent should be ordered to file the two complaints and issue the summons in each matter.

## III. THE EMERGENCY SERVICES ACT, AND THE CUNNINGHAM OPINION INTERPRETING IT, DO NOT OVERRIDE ARTICLE XI, SECTION 7 OF THE CALIFORNIA CONSTITUTION.

In extending its ordinance from unincorporated areas to incorporated ones as well, the County chose to test an untested theory, never cited or discussed by the California Courts of Appeal or Supreme Court. In 1979, Alex Cunningham, the director of the State Office of Emergency Services, asked the Office of the Attorney General for an opinion on whether cities within a county are bound by rules and regulations adopted by the county during a county proclaimed emergency. The answer, reported at Opinion

Document received by the CA 1st District Court of Appeal.

Document received by the CA 1st District Court of Appeal.

No. 79-710, 62 Ops.Cal.Atty.Gen. 701, 1979 WL 29299 (Cal.A.G.), is known as the "Cunningham Opinion."[8]

In the Cunningham Opinion, the Attorney General's office opined that a county may declare the existence of a local emergency which includes incorporated territory, such that cities need not independently declare an emergency. But significantly, it then commented that a county could enact regulations applicable within the city, and even override a conflicting regulation by the city itself. The opinion acknowledged, but then disregarded, Article XI, section 7 and its allocation of authority within incorporated areas, simply asserting that emergencies justified a different allocation.[9]

In passing the County Ordinance and related ordinances, and applying its eviction moratorium to the incorporated areas of the County,

_____

[8]    In July 2020, the City requested via letter that the Attorney General withdraw the Cunningham Opinion but was informed that the Attorney General would not revisit the matter because the issue was raised in other litigation. Accordingly, the City's only sufficient remedy is to seek redress through the courts.

[9]    The Cunningham Opinion is not only incorrect, as articulated herein, but it is also inapplicable given the City's own declaration of a state of emergency. The precise question that the Opinion addressed was whether cities within a county were bound by rules and regulations adopted by the county "if the cities do not declare the existence of a local emergency independently." 62 Ops.Cal.Atty.Gen. 701, 1979 WL 29299 (Cal.A.G.) at *1. (By contrast here, the City did in fact declare a local emergency. Nonetheless, the City addresses the Cunningham Opinion in the event that the Court considers its reasoning despite the opinion's inapplicability and non-binding nature.

the County directly invoked the Cunningham Opinion. (See Ordinance No. O-2020-21, ¶ 22; Ordinance No. O-2020-23, ¶ 24.) This case presents the important question of whether the Cunningham Opinion is correct.

The Cunningham Opinion, and the County's invocation of it to create an "emergency" exception to Article XI, section 7, are contrary to an unambiguous provision of the California Emergency Services Act itself: "Nothing in this chapter shall be construed to diminish or remove any authority of any city, county, or city and county granted by Section 7 of Article XI of the California Constitution." (Gov. Code § 8668 subd. (b).) But the Cunningham Opinion would do just that: it purports to allow the County to override the City's eviction moratorium if the two are "conflicting."

The intention of the Cunningham Opinion is in many ways the same intention as Article XI, section 7: to resolve confusion of authority. Again: "Two distinct governmental bodies claiming to exercise the same authority, powers and franchises simultaneously over the same territory would 'produce intolerable confusion, if not constant conflict.'" (*People ex rel. City of Downey*, *supra*, 202 Cal.App.2d at p. 792, quoting *In re Sanitary Bd. of East Fruitvale Sanitary Dist.*, *supra*, 158 Cal. at p. 459.) But given the consistent interpretation of the California Constitution as allocating police power to cities for incorporated areas, and counties only for the unincorporated areas, and the Legislature's express intention to preserve

Document received by the CA 1st District Court of Appeal.

Document received by the CA 1st District Court of Appeal.

city authority as expressed in the Emergency Services Act Section 8668 subdivision (b), the Cunningham Opinion was incorrect to suggest that the solution is to give counties regulatory supremacy over cities in an emergency.

This case does not present the issue of whether a county emergency ordinance could apply absent action by the city government because the city government has been incapacitated. That situation could present a different and perhaps stronger case that the county's authority to declare a state of emergency might extend within city boundaries to help avoid, for example, a lack of response by an incapacitated local government. (See Gov. Code § 8635 [providing for continued functioning of political subdivisions].) But given that Article XI, section 7 expressly protects the city's police power from diminution by application of the Emergency Services Act, a conflicting county regulation should not apply within a city, especially one that is not incapacitated.

Furthermore, the Emergency Services Act does not more broadly support the view that the County is given regulatory supremacy within incorporated areas. The Emergency Services Act delegates power to counties and cities alike, within their respective spheres. The County does not have jurisdictional reach into an incorporated city simply because of the state of a local emergency. The Emergency Services Act was not intended to elevate the regulatory authority of counties over cities. Nor was it

intended to delegate the Governor's authority to wield the State's police power. Indeed, the Emergency Services Act gives *each* of the State's political subdivisions power to adopt emergency regulations.

> During a local emergency the governing body of a *political subdivision*, or officials designated thereby, may promulgate orders and regulations necessary to provide for the protection of life and property, including orders or regulations imposing a curfew within designated boundaries where necessary to preserve the public order and safety. Such orders and regulations and amendments and rescissions thereof shall be in writing and shall be given widespread publicity and notice.

(Gov. Code § 8634, emphasis added.) The Emergency Services Act defines "political subdivision" to include both cities and counties. (Gov. Code § 8557 subd. (b) ["'Political subdivision' includes any city, city and county, county, district, or other local governmental agency or public agency authorized by law."].) Local emergency, in turn, is defined by the Legislature in terms of conditions "within the territorial limits of a county...or city." (See Cunningham Opinion, 1979 WL 29299 (Cal.A.G.) at *4.) The term "territorial limits" refers to both cities and counties. A natural corollary is that both cities and counties have their own "territorial limits" and thus a city does not lie within a county's territorial limits. The potential for conflicting authority need not be resolved by giving the county supremacy as the Cunningham Opinion suggested; it can be resolved by reading the term as having the same meaning as "within its limits" in Article XI, section 7, which the Legislature itself expressly considered in

Document received by the CA 1st District Court of Appeal.

Document received by the CA 1st District Court of Appeal.

drafting.  (See Gov. Code § 8668 subd. (b)).  Moreover, because the Emergency Services Act does not define "territorial limits," the term assumes its plain meaning aided often by dictionary definitions. (*Hammond v. Agran* (1999) 76 Cal.App.4th 1181, 1189; see also *Crawley v. Alameda Cty. Waste Mgmt. Auth.* (2015) 243 Cal.App.4th 396, 410.) Merriam-Webster defines "territorial" as "of or relating to a territory." "Territory," in turn, is defined as "a geographic area belonging to or under the jurisdiction of a governmental authority."  (merriam-webster.com/dictionary.)  Accordingly, as defined, the City, as an incorporated city, is not within the County's "governmental authority." The Cunningham Opinion's statement that "[c]ities, of course, lie within the territorial limits of counties" (1979 WL 29299 (Cal.A.G.) at *4.) ignores the history of how county "limits" are interpreted, and that the Legislature chose to reinforce, rather than override, the standard allocation of authority among local governments.

The Cunningham Opinion, again citing no legal authority, posited that there would be "conflicting" regulations if a city and county both had the power to declare a local emergency and regulate within their borders to address them.  This concern of "conflicting regulations" is contrary to purpose of the Emergency Services Act:

> It is further declared to be the purpose of this chapter and the policy of this state that all emergency services functions of this state be *coordinated* as far as possible with the

comparable functions of its political subdivisions, of the federal government including its various departments and agencies, of other states, and of private agencies of every type, to the end that the *most effective use* may be made of all manpower, resources, and facilities for dealing with any emergency that may occur.

(Gov. Code § 8550, emphasis added.)  In fact, as plainly stated in the Emergency Services Act itself, the State envisioned *coordination* between itself and *each* governmental entity, including the State's political subdivisions to ensure "effective use" of "manpower, resources, and facilities" that could be enlisted during a local emergency.  If the Legislature's purpose was to mandate "uniformity" of regulations such that a county's regulations would have supremacy over those of cities within its boundaries, it would have stated so.

The Cunningham Opinion also states that if a county could not regulate an incorporated city that it would require the governor to intervene. (See 1979 WL 29299 (Cal.A.G.) at *5.)  This position ignores that the statutory scheme precisely envisions and provides for intervention by the governor when necessary.  (See Cal. Gov. Code §8625 [Governor may declare statewide emergency] and § 8627 [Governor may exercise "all police power vested in the state"].)  Accordingly, the Governor's intercession is not a proper basis for contending that the Legislature intended to confer regulatory supremacy to all county emergency regulations.  Indeed, in the current health emergency, the Governor issued

Document received by the CA 1st District Court of Appeal.
Document received by the CA 1st District Court of Appeal.

executive orders that granted equal powers to counties and cities to regulate within their constitutionally authorized jurisdictions. (See, e.g., Governor's Exec. Order No. N-28-20 Mar. 16, 2020 [**Exh. P** to MJN].) The State also declared its own state of emergency, and passed its own eviction moratorium, which has now expired. The County cannot here cloak itself with the authority of the Governor in trying to legislate within the City.

The Cunningham Opinion, moreover, is not binding on this Court; the Court need not be constrained by the Opinion or its flawed reasoning. (See *Cal. Fed. Savings & Loans Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 352 [finding plaintiffs' reliance on an opinion by the Attorney General unpersuasive because the Attorney General did not address the impact of a Government Code section relied on by plaintiffs and because "the opinion was rendered long before, and therefore without the benefit of, the above cited decisions of the Court of Appeal directly [o]n point."].)

The only decision the City has located citing the Cunningham Opinion is a federal trial court decision. (*So. Cal. Rental Housing Assn. v. Cty. of San Diego* (S.D. Cal. 2021) 550 F.Supp.3d 853.) That case uncritically relied on the Cunningham decision in denying the plaintiff's motion for preliminary injunction challenging the eviction moratorium enacted by the county. (*Id.* at pp. 868-69.) The plaintiff sought to enjoin the enforcement of the county ordinance in whole or at a minimum outside unincorporated areas of the county on the grounds that it was

unconstitutional because it violated the Contracts Clause and the Takings Clause of the United States Constitution and violated the California Constitution. (*Id.* at pp. 860-61, 864.) With regard to the latter, the plaintiff argued that the ordinance "impermissibly extend[ed] its reach beyond unincorporated areas of the County[.]" (*Id.* at pp. 867-69.) The court took the Cunningham Opinion at face value without analyzing its direct conflict with Article IX, section 7 of the Constitution. It provides no further reasoning or support to the views expressed in the Cunningham Opinion itself.

IV.     **THE SUPERIOR COURT ERRED BY REFUSING TO FILE THE COMPLAINT OR HEAR THE MERITS OF THE CITY'S ARGUMENT.**

The filing of a complaint does not resolve the case, but merely commences it. (Code Civ. Proc. § 411.10.) Here, however, Respondent Superior Court applied a local rule that a complaint must "allege[] that the action is not prohibited by a local ordinance" as an adjudicatory proceeding where a facially applicable – but substantively unconstitutional – county ordinance was used to prevent any hearing on the merits of a dispute. This is not how the court system is supposed to function. In order to protect the City's constitutional and statutory right to access the courts for recovery of its real property through the expedited unlawful detainer proceeding applicable to landlord-tenant disputes like this one, the Court of Appeal should determine whether the County Ordinance applies to incorporated

Document received by the CA 1st District Court of Appeal.

Document received by the CA 1st District Court of Appeal.

cities, and grant the requested writ ordering the Superior Court to file the complaints and issue summonses.

### A. The Superior Court Refused To Hear The Case Based On The Facial Applicability Of The County Ordinance.

Alameda County Superior Court Local Rule 1.8.1 subsection (d)(2)(A) creates a pre-filing review procedure for unlawful detainers:

> The Court will accept new unlawful detainer complaints for filing only where the complaint alleges that the action is not prohibited by a local ordinance. Any such complaint must be accompanied by the following:
>
> (i) A declaration under oath stating specific facts showing the health and safety related necessity or other exception;
>
> (ii) A proposed order permitting the filing on the basis of such necessity or other exception; and
>
> (iii) All available contact information for all parties and counsel, including valid email addresses.
>
> All filings will be accepted as stated in subsection (c).
>
> Upon receipt, the Court will review the complaint, declaration, and proposed order on an ex parte basis. The Court may in its discretion hold a hearing or request that defendant respond before issuing a summons on a proposed complaint.
>
> If the Court, in its discretion, finds that the action is not prohibited by a local ordinance, the Court will issue a summons, and plaintiff may then serve a copy of the summons and complaint. The action may not be served or otherwise proceed until the Court issues a summons on a proposed complaint.
>
> Failure to comply with this subdivision may be the basis for an order imposing monetary or other sanctions as provided by law.

To address this requirement, the City's complaints against Sheehan and Sinclair each pleaded that the action was not prohibited by a valid local ordinance, because (1) the affirmative defense provided in the City ordinance did not bar the filing of a complaint, though it would allow the tenants to plead an inability to pay due to Covid, and (2) the County ordinance did not apply within the boundaries of the City. (**Exhs. 3 and 11 [Complaints].**)

While the complaints thus alleged that the action was not prohibited by a *valid* local ordinance, Respondent Superior Court concluded that the facial applicability of the County Ordinance barred the complaints. The Superior Court stated that because the County Ordinance was not "vague or silent," but instead had expressly stated that it would apply to "incorporated areas of the County," Local Rule 1.8.1(d)(2)(A) would not allow the filing of the complaints because they were prohibited by a local ordinance. (**Exh. 1** at p. 8, **Exh. 2** at p. 13.)

The Superior Court recognized that there was substantial issue as to whether the County ordinance applied: "This order does not reach the merits of the important jurisdictional questions raised by the City. It is a procedural ruling that the County Moratorium and the Local Rules of Court bar the filing of these complaints and issuance of these summonses." (*Id.*) The Court ordered that the City could not file its complaints "while the

Document received by the CA 1st District Court of Appeal.

Document received by the CA 1st District Court of Appeal.

'Moratorium on Evictions During Local Health Emergency' (County of Alameda Ordinance Code 6.120.010 et seq.) remains in effect." (*Id.*)

By refusing to file the complaints and let the actions commence so that the cases could be heard further, the Superior Court denied the City important statutory and constitutional rights, which only the grant of a writ by this Court can adequately remedy.

### B. The City Has Both Statutory And Constitutional Rights To Commence A Case For Recovery Of Its Property.

The Superior Court's core error was refusing to allow the complaints to be filed at all, despite the recognition that the City had potentially meritorious arguments that the County Ordinance is invalid as applied within City of Alameda boundaries.  Litigants with even colorable positions have a right of access to the courts, and courts cannot decline to decide cases within their jurisdiction.

There is a constitutional right of access to the courts in civil cases. (*Payne v. Super. Ct.* (1976) 17 Cal.3d 908, 911; cf. *Feldman v. 1100 Park Lane Assocs.* (2008) 160 Cal.App.4th 1467 [prosecution of an unlawful detainer action is protected exercise of "a party's constitutional right of petition", citation omitted].  As the California Supreme Court has stated, "[f]ew liberties in America have been more zealously guarded than the right to protect one's property in a court of law." (*Payne, supra,* 17 Cal. 3d at 911.)  The City here seeks to recover its property from someone who has

not paid rent for more than 19 months.  It has a constitutional right to have its case heard.  "When a . . . litigant knocks on the courthouse door with a colorable claim, he may enter." (*Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 60.)

There is a statutory right to be heard here on the merits as well.  In sections 1159 through 1179a of the California Code of Civil Procedure, the Legislature "provide[s] landlords with a summary procedure for exercising their rights of repossession against tenants," "intended to be a relatively simple and speedy remedy that obviates any need for self-help by landlords." (*Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 151.) The Legislature's procedural system for adjudicating unlawful detainer cases precludes local governments from erecting additional "procedural barriers between the landlord and the judicial proceeding," even where the local government may have a right to substantively regulate tenancies by creating a substantive defense to eviction. (*Id.* at pp. 149-51; *Bohbot v. Santa Monica Rent Control Bd.* (2005) 133 Cal.App.4th 456, 471-72 [invalidating local ordinance prohibiting termination of tenancy within four years of dismissal of earlier unlawful detainer proceeding].)  To the extent that the facial applicability of the County Ordinance is used as a procedural bar on initiating an unlawful detainer matter, it is invalid "in the face of state statutes that fully occupy the field of landlord's possessory remedies." (*Birkenfeld, supra,* 17 Cal.3d at p. 152.)

Document received by the CA 1st District Court of Appeal.

The Superior Court's statement that "[A]n unlawful detainer proceeding . . . is not the appropriate forum for resolving whether the County Moratorium is *ultra vires*" (**Exhs. 1 and 2**, at pp. 8, 13) was incorrect as a matter of law. Constitutional issues may be raised in unlawful detainer matters, where they are relevant to the issue of eviction. (See, e.g., *Abstract Investment Co. v. Hutchinson* (1962) 204 Cal.App.2d 242, 247 [Fourteenth Amendment issues properly raised in unlawful detainer proceeding and required taking evidence of whether eviction was racially motivated: "[I]n the case at bar the court has the power to look beyond the allegations of the complaint in an unlawful detainer proceeding and to inquire into the constitutional issue placed before it by the second and third affirmative defenses of the action."]; *see also Schweiger v. Super. Ct.* (1970) 3 Cal.3d 507, 514 [quoting *Abstract Investment* with approval: "Certainly the interest in preserving the summary nature of an action cannot outweigh the interest of doing substantial justice. To hold the preservation of the summary proceeding of paramount importance would be analogous to the 'tail wagging the dog.'"].) Here, the validity of the County Ordinance is relevant to deciding the unlawful detainer proceeding because the County purports to have created a bar to evictions within all unincorporated and incorporated areas within the County. An unlawful detainer proceeding is an appropriate forum for determining whether the

purported bar valid, should the tenant choose to invoke the ordinance as a defense.

Issues of law "arise upon the pleadings when . . . a conclusion of law is maintained by one party and is controverted by the other." (Code Civ. Proc. § 588.) An issue of law arises upon demurrer or motion to strike, and must be tried by the court. (*Id.* § 591.) Here the proper procedure was to wait until the defendants appeared and contested the allegation that the County Ordinance was inapplicable. If the defendant did not argue that the County Ordinance barred the lawsuit, then there was no reason for the court to decide it. If the defendant did so argue, then it would be the court's duty to decide it, even in an unlawful detainer matter. But nothing in the Code of Civil Procedure permits the court to decline the filing of the complaint on the ground that the County Ordinance appeared to apply by its terms, but without adjudicating whether it actually applied. The Superior Court should have filed the complaints and then decided the legal issues only as properly raised during the proceeding.

The Superior Court's concern that the County was not a party to the suit to defend its ordinance (see **Exh. 1** at p. 9, **Exh. 2** at p. 14) is easily addressed. The constitutionality of applying a law may be challenged in litigation between private parties, without joinder of the legislative body that passed the law. (See, e.g., *Hale v. Morgan* (1978) 22 Cal.3d 388, 394 [in case between landlord and tenant, considering constitutional challenges

Document received by the CA 1st District Court of Appeal.

Document received by the CA 1st District Court of Appeal.

to statute assessing penalty against landlord who willfully deprives tenant of utility service]; *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 849 [invalidating California statute as unconstitutionally applied, in parental rights proceeding].) If the Superior Court believed that briefing from the County would aid it in deciding the issue, it could have inquired whether the County wished to intervene or file an amicus brief. (*See Jonathan L. v. Super. Ct.* (2008) 165 Cal.App.4th 1074, 1083 [inviting a number of governmental and private parties to submit amicus curiae briefs concerning constitutional issues raised in child dependency proceeding].) Absent a requirement that the County be joined in all eviction matters where its moratorium is at issue – and here, there is no such rule – the Superior Court was not free to decline to hear the case on the grounds that the County was not a party.

This Court need not decide whether a local rule providing for pre-filing review, or requiring certain specific allegations, in unlawful detainer matters is always invalid. (Cf. *Kalivas v. Barry Controls Corp.* (1996) 49 Cal.App.4th 1152, 1158 [local court rule is invalid if inconsistent with statute enacted by the legislature]; Code Civ. Proc. § 1166 [specifying requirements for complaint in unlawful detainer matters]; Code Civ. Proc. § 1165 [provisions of Part II apply to unlawful detainer matters]; Code Civ. Proc. §§ 425.10-425.55, 429.30, 452-461 [portions of Code of Civil Procedure, Part II, providing requirements for complaints, including

requirement of particular allegations or prefiling review for complaints concerning certain defined subjects].) Courts are permitted by Code of Civil Procedure section 575.1 to develop procedural innovations to assist with the efficient disposition of the work of the courts. A local rule requirement that a landlord "allege" the inapplicability of a commonly applicable defense, combined with a pre-filing review process that examines the complaint for the required allegation, does not necessarily "nullify the intended summary nature of the remedy" (*Birkenfeld, supra,* 17 Cal. 3d at p. 151) if it merely provides for an expedited procedure for weeding out cases of no merit. But where the Superior Court goes beyond this – where it refuses to let the case be heard because, despite the presence of the required allegation supported by cited authority, and where there are grounds to contest whether or not the defense applies or is valid – the combination of the county's legislative overreach and the court's pre-filing review process have indeed nullified the intended summary nature of the remedy here, and violated the City's constitutional rights. The City was improperly denied its statutory and constitutional rights of access to the courts when the Superior Court adjudicated half of the issue –the facial applicability of the County Ordinance – but then refused to evaluate its constitutional validity.[10] The procedural review should have stopped when

_____

[10]   Simply looking for the required allegation and then leaving any substantive evaluation of the merits of the allegation for later would also

Document received by the CA 1st District Court of Appeal.

Document received by the CA 1st District Court of Appeal.

the court found that the City had alleged the inapplicability of the County Ordinance.

## V.   WRIT RELIEF, AND AN APPEAL IN THE ALTERNATIVE

This Court has the authority to issue writ relief in a case like this one.  Indeed, the California Supreme Court has held, in circumstances where a trial court erroneously barred the filing of a complaint, that writ relief was appropriate:  "[P]etitioner is entitled to the issuance of [a] writ of mandate to compel respondent [trial court] to act as the law required him to do. [(grant leave to sue)]."  (*DeForrest v. Coffey* (1908) 154 Cal.444, 448.)  The court in *Wolfgram* applied this reasoning to a "vexatious litigant" who had brought meritorious claims but was denied leave to proceed with his suit.  (*Wolfgram, supra,* 53 Cal.App.4th at p. 61.)

Here, too, a writ of mandate is the appropriate vehicle for redress.  The Superior Court refused to allow the City to file unlawful detainer complaints after the City complied with the court's filing requirements and made the appropriate showing that the ex parte applications should be granted.

In the alternative, the City requests that the Court construe this writ as an appeal, and a request for an expedited appeal, and treat this writ as the

---

avoid any concerns about the ex parte nature of the proceeding.  In attempting to file the complaints, the City was not seeking an ex parte ruling that the County Ordinance was inapplicable.  It was seeking only to commence the proceedings by the filing of the complaint.

City's opening brief.  (See *Pacific Landmark Hotel, Ltd. v. Marriott Hotels, Inc.* (1993) 19 Cal.App.4th 615, 623 [petitioners filed a writ of mandamus, or in the alternative, an order expediting the appeal; the court denied the petition and ordered the appeal expedited].)  While there is no opposing party because the case was not filed or served, given the unique procedural posture, the City filed notices of appeal to ensure that this Court will have jurisdiction to grant relief.  (See **Exhs. 21, 22.**)

## VI.   CONCLUSION

This case raises significant legal issues, involving both the proper extent of county jurisdiction within a city, and the right to proceed with a meritorious unlawful detainer matter.  The Superior Court has shut the courthouse door to the City of Alameda in violation of the City's statutory and constitutional rights.  The City is entitled to have its case heard, and requests writ review to receive the hearing on the merits that was denied when the Superior Court refused to allow the case to be commenced.

For the foregoing reasons, the City requests that the Court grant the writ and order the Superior Court to file the complaints and issue the summonses.

[SIGNATURE BLOCK ON NEXT PAGE]

Dated:  July 14, 2022

FARELLA BRAUN + MARTEL LLP

By: _____
      Thomas B. Mayhew

Attorneys for Petitioner
CITY OF ALAMEDA

**CERTIFICATE OF COMPLIANCE PURSUANT TO CALIFORNIA**

**RULES OF COURT RULE 8.204(c)(1)**

Pursuant to California Rules of Court rule 8.204(c)(1) and rule

8.486(a)(6), counsel certifies that the foregoing petition and memorandum

contain a total of 9,800 words, as counted by the word count function in

Microsoft Word, and the foregoing brief is proportionally spaced and has a

typeface of 13 points.

Dated:  July 14, 2022        FARELLA BRAUN + MARTEL LLP

By: _____
      Thomas B. Mayhew

Attorneys for Petitioner
CITY OF ALAMEDA

Document received by the CA 1st District Court of Appeal.

Document received by the CA 1st District Court of Appeal.

41699\4861118.15

41699\4861118.15

## DECLARATION OF SERVICE
### CITY OF ALAMEDA v. SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE COUNTY OF ALAMEDA

### STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is 235 Montgomery Street, 17th Floor, San Francisco, CA 94104.

On July 14, 2022, I served true copies of the following document(s) described as

**PETITION FOR WRIT OF MANDATE, PROHIBITION OR OTHER APPROPRIATE RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**

**APPENDIX OF EXHIBITS TO PETITION FOR WRIT OF MANDATE, PROHIBITION OR OTHER APPROPRIATE RELIEF**

**DECLARATION OF THOMAS B. MAYHEW IN SUPPORT OF PETITION FOR WRIT OF MANDATE, PROHIBITION OR OTHER APPROPRIATE RELIEF**

on the interested parties in this action as follows:

SHELBY SHEEHAN
2801 Newport Road
Alameda, CA  94501
sheehan.shelby@gmail.com

IRMA GARCIA SINCLAIR
390 W. Essex Drive
Alameda, CA 94501
enlightenedcurandera@yahoo.com

**BY ELECTRONIC SERVICE**:  I electronically filed the document(s) with the Clerk of the Court by using the TrueFiling system.  Participants in the case who are registered TrueFiling users will be served by the TrueFiling system.  Participants in the case who are not registered TrueFiling users will be served by mail or by other means permitted by the court rules.

**BY FEDEX**:  I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed in the Service List.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized by FedEx to receive documents.

Further, on July 14, 2022, I served true copies of the following document(s) described as

**PETITION FOR WRIT OF MANDATE, PROHIBITION OR OTHER APPROPRIATE RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**

**APPENDIX OF EXHIBITS TO PETITION FOR WRIT OF MANDATE, PROHIBITION OR OTHER APPROPRIATE RELIEF**

Document received by the CA 1st District Court of Appeal.

**DECLARATION OF THOMAS B. MAYHEW IN SUPPORT OF
PETITION FOR WRIT OF MANDATE, PROHIBITION OR
OTHER APPROPRIATE RELIEF**

by placing the document listed above on the interested parties as follows:

> ALAMEDA COUNTY SUPERIOR COURT
> 24405 Amador Street
> Hayward, CA  94544

**BY FEDEX:**  I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed in the Service List.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized by FedEx to receive documents.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 14, 2022, at San Francisco, California.

_____
Gina Renteria

Document received by the CA 1st District Court of Appeal.