NIELSEN MERKSAMER
  PARRINELLO GROSS & LEONI LLP
  Christopher E. Skinnell, Esq. (S.B. No. 227093)
  Hilary J. Gibson, Esq. (S.B. No. 287862)
2350 Kerner Boulevard, Suite 250
San Rafael, California 94901
Telephone: (415) 389-6800
Facsimile: (415) 388-6874
Email: cskinnell@nmgovlaw.com
Email: hgibson@nmgovlaw.com

*Attorneys for Plaintiff / Petitioners*
CALIFORNIA APARTMENT
ASSOCIATION, STEPHEN LIN,
RAKESH and TRIPTI JAIN, ALISON
MITCHELL, MICHAEL HAGERTY, &
H. ALEX and DANNIE ALVAREZ

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA APARTMENT ASSOCIATION, STEPHEN LIN, RAKESH and TRIPTI JAIN, ALISON MITCHELL, MICHAEL HAGERTY, & H. ALEX and DANNIE ALVAREZ, <br><br> *Plaintiffs and Petitioners*, <br><br> vs. <br><br> COUNTY OF ALAMEDA, BOARD OF SUPERVISORS OF THE COUNTY OF ALAMEDA, and DOES 1-25, <br><br> *Defendants and Respondents*. | Case No. 3:22-cv-02705-LB <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT ON FACIAL CLAIMS** <br><br> **[FED. R. CIV. PROC. 56]** <br><br> DATE: September 29, 2022 <br> TIME: 9:30 a.m. <br> DEPT: Courtroom B, 15th Floor <br> JUDGE: Hon. Laurel Beeler <br><br> (Related to Case 3:22-cv-01274-LB, *Williams v. County of Alameda, et al.*) |

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................. 7

II.  THE COUNTY'S ATTEMPT TO AVOID ELLIS ACT PREEMPTION IS BASED ON AN UNTENABLE READING OF THE ORDINANCE, WHICH DIRECTLY CONFLICTS WITH THE COUNTY'S OWN EXPLICIT ADMINISTRATIVE INTERPRETATION ........................................ 8

III.  THE MORATORIUM FACIALLY VIOLATES THE CONSTITUTION ............ 9

    A.  The County Misunderstands the Nature of Plaintiffs' Facial Claims and Thus Misstates the Applicable Standard .............................. 9

    B.  The Supposed Availability of Other Inferior Remedies Does Not Bar Plaintiffs' Constitutional Claims ....................................... 12

    C.  The Moratorium Effects a Physical Taking of Property ........................ 14

        1.  *Yee v. City of Escondido* is a fundamentally different case .......... 14

        2.  *Yee* does not hold that an initial invitation bars a takings forever after, despite changed circumstances .............................. 15

        3.  It is the district court cases that the County relies upon, rather than the Eighth Circuit's decision in *Walz*, that are distinguishable .............................................................. 17

    D.  The County's Eviction Moratorium Unconstitutionally Impairs Contractual Lease Obligations ................................................ 18

        1.  *Of course*, Alameda County's Moratorium ordinance substantially—in fact, severely—impairs lease agreements ................................................................... 18

        2.  The continued maintenance of the moratorium is not tailored appropriately to a legitimate purpose ............................ 19

        3.  The Ninth Circuit's *Apartment Association* does not support the continued maintenance of the Moratorium............... 21

IV.  CONCLUSION ................................................................. 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Ass'n of Realtors v. HHS,*
    141 S. Ct. 2485 (2021) .................................................................................... 17, 20

*Ala. Ass'n of Realtors v. United States HHS,*
    557 F. Supp. 3d 1 (D.D.C. 2021) ................................................................... 20

*Allied Structural Steel Co. v. Spannaus,*
    438 U.S. 234 (1978) ..................................................................................... 18, 20

*Am. Fed'n of State, Cty. & Mun. Emps. Council 79 v. Scott,*
    717 F.3d 851 (11th Cir. 2013) ...................................................................... 10

*Apartment Ass'n of L.A. Cty., Inc. v. City of L.A.,*
    500 F. Supp. 3d 1088 (C.D. Cal. 2020) ...................................................... 19

*Apartment Ass'n of L.A. Cty., Inc. v. City of L.A.,*
    10 F.4th 905 (9th Cir. 2021) ....................................................................... 19, 21

*Auracle Homes, LLC v. Lamont,*
    478 F. Supp. 3d 199 (D. Conn. 2020) ......................................................... 17

*Baptiste v. Kennealy,*
    490 F. Supp. 3d 353 (D. Mass. 2020) ......................................................... 17, 19

*Bucklew v. Precythe,*
    139 S. Ct. 1112 (2019) ................................................................................. 10

*Cal. Bldg. Indus. Ass'n v. City of San Jose,*
    61 Cal. 4th 435 (2015) ................................................................................ 20

*Cedar Point Nursery v. Hassid,*
    141 S. Ct. 2063 (2021) ..................................................................... 11, 15, 16, 17

*Cwynar v. City & Cty. of S.F.,*
    90 Cal. App. 4th 637 (2001) ................................................................. 13, 14, 16

*Doe v. Reed,*
    561 U.S. 186 (2010) ..................................................................................... 10, 11

*Drouet v. Superior Court,*
    31 Cal. 4th 583 (2003) ................................................................................ 13

*El Papel LLC v. Durkan,*
   2021 U.S. Dist. LEXIS 181390 (W.D. Wash. Sep. 15, 2021) ...................................17

*Elmsford Apartment Assocs., LLC v. Cuomo,*
   469 F. Supp. 3d 148 (S.D.N.Y. 2020)..........................................................................17

*Family PAC v. McKenna,*
   685 F.3d 800 (9th Cir. 2012) ......................................................................................10

*Farhoud v. Brown,*
   2022 U.S. Dist. LEXIS 20033 (D. Or. Feb. 3, 2022)..........................................18, 19

*FCC v. Florida Power Corp.,*
   480 U.S. 245 (1987) ....................................................................................................16

*Gallo v. Dist. of Columbia,*
   2022 U.S. Dist. LEXIS 109644 (D.D.C. June 21, 2022)...........................................17

*Guggenheim v. City of Goleta,*
   638 F.3d 1111 (9th Cir. 2010) (en banc)....................................................................11

*Harmelin v. Michigan,*
   501 U.S. 957 (1991)......................................................................................................9

*Heights Apartments, LLC v Walz,*
   30 F.4th 720 (8th Cir. 2022), *reh'g en banc denied at*
   39 F.4th 479 (8th Cir. 2022) ......................................................................12, 17, 19

*Hodel v. Va. Surface Mining & Reclamation Ass'n,*
   452 U.S. 264 (1981) ....................................................................................................11

*Home Bldg. & Loan Ass'n v. Blaisdell,*
   290 U.S. 398 (1934) ....................................................................................................21

*Jevons v. Inslee,*
   561 F. Supp. 3d 1082 (E.D. Wash. 2021)...................................................................17

*Keystone Bituminous Coal Ass'n v. DeBenedictis,*
   480 U.S. 470 (1987) ....................................................................................................11

*Laurel Park Cmty., LLC v. City of Tumwater,*
   698 F.3d 1180 (9th Cir. 2012) ....................................................................................11

*Levald, Inc. v. City of Palm Desert,*
   998 F.2d 680 (9th Cir. 1993) ......................................................................................11

*Loretto v. Teleprompter Manhattan CATV Corp.,*
    458 U.S. 419 (1982) .................................................................. 13, 14, 17

*Melendez v. City of N.Y.,*
    16 F.4th 992 (2d Cir. 2021) ............................................................... 13

*Murr v. Wisc.,*
    137 S. Ct. 1933 (2017) ....................................................................... 18

*Pierson v. Holly Sugar Corp.,*
    107 Cal. App. 2d 298 (1951) .............................................................. 16

*Roseberry v. Edward F. Niehaus & Co.,*
    166 Cal. 481 (1913) ........................................................................... 16

*S. Cal. Rental Hous. Ass'n v. Cty. of San Diego,*
    550 F. Supp. 3d 853 (S.D. Cal. 2021) ............................................... 17

*Smith v. Phx. Ins. Co.,*
    91 Cal. 323 (1891) ............................................................................. 15

*U.S. v. N.M. Supreme Court,*
    839 F.3d 888 (10th Cir. 2016) ........................................................... 10

*United States Trust Co. v. New Jersey,*
    431 U.S. 1 (1977) ............................................................................... 19

*United Steel Paper & Forestry Rubber Mfg. Allied Indus. &
    Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of the V.I.,*
    842 F.3d 201 (3d Cir. 2016) .............................................................. 19

*Valnes v. Santa Monica Rent Control Bd.,*
    221 Cal. App. 3d 1116 (1990) ........................................................... 13

*W. B. Worthen Co. v. Kavanaugh,*
    295 U.S. 56 (1935) ............................................................................. 19

*W. B. Worthen v. Thomas,*
    292 U.S. 426 (1934) ........................................................................... 19

*W. Union Tel. Co. v. Hansen & Rowland Corp.,*
    166 F.2d 258 (9th Cir. 1948) ............................................................. 15

*Winchester Mgmt. Corp. v. Staten,*
    361 A.2d 187 (D.C. 1976) .................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Yee v. City of Escondido,*
   503 U.S. 519 (1992) ............................................................................ 14, 15, 16, 17

*Ysleta del Sur Pueblo v. Texas,*
   142 S. Ct. 1929 (2022) ........................................................................................ 9


**Statutes**

Alameda County's Eviction Moratorium Ordinance ....................................... *passim*

    Alameda County Code § 6.120.030 .................................................................. 8, 9

    Alameda County Code § 6.120.040 .................................................................. 8, 9

    Alameda County Code § 6.120.090(B) .............................................................. 13

    Alameda County Code § 6.120.090(D) .............................................................. 13

Cal. Civ. Code § 1788.66 ...................................................................................... 12

Cal. Govt. Code § 7060.1(c) .................................................................................. 13

Cal. Govt. Code § 7060.2 ...................................................................................... 13

Ellis Act, Cal. Govt. Code § 7060 *et seq.* .............................................................. 7

Oakland Muni. Code § 8.22.450 ........................................................................... 13


**Other Authorities**

12 Witkin, Summ. of Cal. Law (11th ed. 2017), *Real Prop.*, § 532 ......................... 16

# I.     **INTRODUCTION**.

For the past two-and-a-half years and counting, the County's Moratorium has relieved tenants any risk of eviction for failing to pay rent, regardless of whether the tenant could afford to make the rent payments; unlike state law, it has not required even partial payment of rent during that period; and it has prohibited landlords from evicting tenants who breach material terms of their lease, commit nuisance, waste or fraud, or who violate the law. Nor can landlords stop the bleeding by regaining these rental units for their own use. Landlords, by contrast, continue to bear all of the burdens—financial or otherwise—of maintaining these rental units. The Moratorium is one of the few left standing at this point—for example, California's (more-tailored) moratorium expired months ago—and Alameda County's is by far the most draconian.

There is also no end in sight, though the circumstances of the COVID-19 pandemic have dramatically improved since the early days when it was enacted. The Moratorium is designed to last until the day—still in the future and unspecified—that the County Board of Supervisors deigns to declare an end to the local state of emergency. In late-July, after this motion was filed, a majority of the Board refused to even permit *a discussion* of potential changes to the Moratorium, despite one Supervisor's request to address it—not to vote, just discuss. (*See* ECF No. 28, Exs. 19-21.) Thus, it is clear this Court is Plaintiffs' only hope for relief.

Continuing to maintain the Moratorium under the present circumstances amounts to a taking of Plaintiffs' property; operates as an unconstitutional impairment of contracts; and—to the extent it prevents landlords from removing units from the rental market—it violates Ellis Act, Cal. Govt. Code § 7060 *et seq*. The County's various contentions to the contrary cannot sustain the ongoing, unprecedented harm to landlords' fundamental property rights in Alameda County. Relief from this Court is therefore necessary and proper.

## II. THE COUNTY'S ATTEMPT TO AVOID ELLIS ACT PREEMPTION IS BASED ON AN UNTENABLE READING OF THE ORDINANCE, WHICH DIRECTLY CONFLICTS WITH THE COUNTY'S OWN EXPLICIT ADMINISTRATIVE INTERPRETATION.

With respect to CAA's claim that the County's Moratorium is preempted insofar as it bars evictions under the Ellis Act, the County, appropriately, makes no effort whatsoever to claim that it is entitled to override that preemptive state law. Instead, the County simply denies that the Moratorium conflicts with the Ellis Act at all, because Alameda County Code of Ordinances ("ACCO") § 6.120.030 (ECF No. 24, pp. 174-175) contains an exemption for Ellis Act evictions, that, the County suggests, applies in all circumstances. If only that were the case. Unfortunately, that reading is inconsistent with basic rules of statutory construction and guidelines published online by the County itself, which CAA cited and which the County conveniently ignores.

As both parties have discussed, the Moratorium consists of two pieces: what the County styles the "general moratorium" in ACCO § 6.120.030 and a separate section that applies to evictions "resulting from a substantial loss of income, substantial out-of-pocket medical expenses, or extraordinary child care needs, any of which are caused by COVID-19." ACCO § 6.120.040 (ECF No. 24, pp. 175-176). The former contains an exception for Ellis Act evictions and the latter does not.

The County suggests that "[t]hat express exemption [in the former] apparently misled CAA into believing that the more limited Moratorium in County Code section 6.120.040 does not allow Ellis Act evictions because it includes no comparable express exemption." (Oppo. at 44:13-15.) But that is the only reading that makes any sense.

The "general" moratorium in ACCO § 6.120.030 already bars "*all evictions* from residential units in the unincorporated and incorporated areas of the county, subject to the [three] exceptions [listed]." (Emphasis added.) "All evictions" would include those for nonpayment of rent.[1] Thus, the only plausible purpose of ACCO § 6.120.040

---

[1] If the word "all" was not sufficient to show that ACCO § 6.120.030, in fact, applies to all evictions, the section itself goes farther in making clear that it applies to non-payment

also addressing those evictions is to provide a subset of evictions to which the exceptions *do not* apply. Implicitly reading the exceptions from ACCO § 6.120.030 into ACCO § 6.120.040 would violate established canons of construction, such as that when a legislative body uses different language in two parts of the same enactment, it is presumed to intend a different meaning, *Harmelin v. Michigan*, 501 U.S. 957, 978 n.9 (1991), and that a construction that renders part of the measure superfluous is to be avoided, *Ysleta del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939 (2022).

Also, Plaintiffs' reading tracks *exactly* with what the County has been telling landlords for the past two years. In an online FAQ document about the Moratorium, the County explicitly states: "if you provide documentation that you have a COVID-related impact that made you unable to pay rent on time, the ordinance prohibits your eviction and *there are no exceptions*. If you do not provide documentation or are being evicted for any reason besides nonpayment of rent, there are three exceptions to the eviction ordinance" including the Ellis Act. (ECF No. 24, p. 19.)

## III.   THE MORATORIUM FACIALLY VIOLATES THE CONSTITUTION.

### A.   The County Misunderstands the Nature of Plaintiffs' Facial Claims and Thus Misstates the Applicable Standard.

Cherry-picking statements from various cases regarding facial challenges, the County takes a hard line regarding what the Court may appropriately consider in connection with this motion. Citing *United States v. Salerno*, 481 U.S. 739 (1987), the County contends, "Plaintiffs must show that 'no set of circumstances exists under which the [Moratorium] would be valid.'" (Oppo. at 28:25-26.) And the County further contends that the Court may only consider such facts as existed at the time the Moratorium ordinance was passed and may not "speculate" that the ordinance would last more than a single day, because the open-ended timeframe for the Moratorium's

---

of rent claims, as subd. (E) states that "Notwithstanding any lease provision to the contrary, no late fees, fines or interest may be imposed for rent that became due during the effective period for this section." Such a provision would have no application if the section did not apply to claims for non-payment of rent.

1  termination meant that, as of the date of enactment, it could theoretically have lasted

2  a single day only. (Oppo. at 30:1-3.) Respectfully, this simply misstates the law.

3       For one thing, in *Doe v. Reed*, 561 U.S. 186 (2010), the Supreme Court

4  recognized that a claim may have "characteristics of both" facial and as-applied

5  claims. *Id.* at 194 (addressing a facial challenge to the State of Washington's public

6  records disclosure law "as applied" to referendum petitions).[2] As to such claims—

7  which the Eleventh Circuit has characterized as "quasi-facial in nature," *see Am.*

8  *Fed'n of State, Cty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir.

9  2013)—"[t]he label is not what matters." *Reed*, 561 U.S. at 194. The courts review "the

10 plaintiffs' claim and the relief that would follow," and "*if they would reach beyond the*

11 *particular circumstances of th[o]se plaintiffs*," the rules applicable to facial challenges

12 apply, but *only "to the extent" of the plaintiff's challenge. Id*. See also *Family PAC v.*

13 *McKenna*, 685 F.3d 800, 808 n.5 (9th Cir. 2012) (applying *Reed* to a suit challenging

14 campaign finance regulations "on their face, but only as applied to ballot measure

15 committees"); *U.S. v. N.M. Supreme Court*, 839 F.3d 888, 914 (10th Cir. 2016) (facial

16 standards applied "only to the universe of applications contemplated by plaintiffs'

17 claim, not to all conceivable applications contemplated by the challenged provision.").

18       Here, at least for purposes of this motion, the Plaintiffs—most especially the

19 California Apartment Association, which acts on behalf of its members throughout the

20 County—seek relief that goes beyond their own individual circumstances; they seek a

21 ruling that the entire Moratorium ordinance violates the Takings and/or Contracts

22 Clauses[3] as they continue to be applied to landlords *throughout the County* in

23 circumstances where (1) the measure continues to bar virtually all evictions in the

24

25

26  _____

[2] *See also Bucklew v. Precythe*, 139 S. Ct. 1112, 1128 (2019) ("The line between facial and as-applied challenges can sometimes prove 'amorphous.'").

27  [3] The County does not suggest that the Plaintiffs' various facial preemption claims must fail because they only target certain applications of the Moratorium—for example, that they are preempted "as applied" to Ellis Act evictions—thereby implicitly acknowledging the viability of the "dual" approach to facial claims discussed above.

28

County, (2) 2½ years after the public emergency was declared, (3) where vaccinations are widely available, "shelter-in-place" is no longer the order of the day, schools and other business have long-since been allowed to operate virtually without restriction, and when the State of California's more tailored tenant protection laws have been fully phased out, (4) and where there is no end in sight—and, indeed, the County Board has refused to even consider alterations, *see* ECF No. 28, Exs. 19-21. This motion must evaluate the "constitutional validity of the subset of applications targeted by the plaintiffs' substantive claim." *Reed*, 561 U.S. at 915.

Citing *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680 (9th Cir. 1993), and *Guggenheim v. City of Goleta*, 638 F.3d 1111 (9th Cir. 2010) (en banc), the County contends that this type of claim simply cannot be considered as a "facial" claim, because "the only time that matters is the time the ordinance was adopted." (Oppo. at 28, quoting *Guggenheim*, 638 F.3d at 1119.) Leaving aside the fact that these cases predated *Reed*'s clarification of the relationship between facial and as-applied challenges, the County also takes these statements wholly out of context. They were made in the narrow context of addressing when the facial claims had accrued for purposes of the statute of limitations. *Levald*, 998 F.2d at 687-88; *Guggenheim*, 638 F.3d at 1118-19. Here, no statute of limitations objection has been raised.[4]

Consequently, there is no merit to the County's position that the indefinite duration of the Moratorium means that Plaintiffs' facial challenge is unduly hypothetical because the Court would be required to accept that the Moratorium might last more than a single day (which, of course, it has). The structure of the

---

[4] It is also a crucial distinction that *Levald* and *Guggenheim* (as well as *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495 (1987), and *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 297 (1981), also cited by the County) discussed the "mere enactment" language in the context of a *regulatory* takings claim, whereas the claims raised by Plaintiffs in this motion are *physical* takings claims. It is doubtful whether a facial claim can *ever* be brought for a regulatory takings claim, given the ad hoc substantive standards that apply. *See Laurel Park Cmty., LLC v. City of Tumwater*, 698 F.3d 1180, 1188 (9th Cir. 2012). But physical takings claims are "categorical." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021).

Moratorium is, in essence, such that it will remain in effect until such time as the Board of Supervisors decides to repeal it—just like any other law. If one could always defend against a facial challenge on the ground that it is "speculative" that the legislative body won't repeal the measure a day later, such a claim would fail 100% of the time. Merely to state the proposition is to refute it.

## B.   The Supposed Availability of Other Inferior Remedies Does Not Bar Plaintiffs' Constitutional Claims.

Throughout its briefing, the County contends that constitutional problems with the Moratorium are avoided by the fact that landlords retain other remedies, such as enforcing nonpayment of rent as consumer debt after a year, seeking to recover damages under the common law for breaches of lease covenants and waste, and availing themselves of the right to go out of business under the Ellis Act. (Oppo. at 33:15–34:2.) Those remedies are insufficient to protect landlords' interests.

As for the back-rent and damages remedies, retaining the option of seeking to extract blood from a stone—seeking monetary damages from a potentially judgement-proof tenant—is an "illusory remedy, as has been recognized by the Supreme Court." *Heights Apartments, LLC v Walz,* 30 F.4th 720, 729 n.7 (8th Cir. 2022) ("*Walz*"), *reh'g en banc denied at* 39 F.4th 479 (8th Cir. 2022) (citing *Ala. Ass'n of Realtors v. HHS,* 141 S. Ct. 2485, 2489 (2021)). That is especially the case insofar as California state law also prohibits the sale or assignment of COVID-19 rental debt, meaning that landlords cannot sell their claims to collections agencies. Cal. Civ. Code § 1788.66.

These remedies also do not address the Moratorium's restrictions on landlords' ability to recover the property for their own use. The County responds that landlords may pursue an Ellis Act eviction, but, as discussed above, that contention is based on a strained reading of the Moratorium ordinance insofar as it relates to a financially affected tenant. Moreover, even accepting the County's strained reading, a great many property-owners (for example, the Mitchells) still could not exercise that

option,[5] and those who could can only exercise it if they withdraw *every unit* in the building from the market, not just some, *see Drouet v. Superior Court*, 31 Cal. 4th 583, 590 (2003); in many instances they must pay significant relocation fees to the displaced tenants, *see e.g.,* Cal. Govt. Code § 7060.1(c), and Oakland Muni. Code § 8.22.450 (requiring payments of $6,500 or more per unit); and if they try to re-rent any of those units within the subsequent ten years, they must offer them back to the prior tenants—with no exception for tenants who failed to pay their rent during the Moratorium—in some instances, at the previous rent. *See* Cal. Govt. Code § 7060.2. In *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), the Supreme Court squarely rejected the argument that the New York law at issue in that case was not a taking because a landlord could avoid the requirement by ceasing to be a landlord. It held instead that "a landlord's ability to rent his property may not be conditioned on his forfeiting the right to compensation for a physical occupation." *Id.* at 439 n.17. *See also Cwynar v. City & Cty. of S.F.*, 90 Cal. App. 4th 637, 655 (2001) (applying this rule in the context of the Ellis Act specifically).

Finally, it is not the case that the Moratorium merely "delays" the eviction remedy. Under the terms of the ordinance itself, a landlord can *never* evict a tenant for failure to pay rent that came due during the Moratorium period, even if he or she continues not to pay; that remedy is permanently lost. ACCO § 6.120.090(B) & (D) (RJN, Ex. 14). If the tenant refuses to pay back rent after the emergency ends but resumes payment again for subsequent months after the Moratorium eventually lifts, he or she can remain tens or hundreds of thousands of dollars in arrears and continue to occupy the unit. *See also Melendez v. City of N.Y.*, 16 F.4th 992, 995 (2d Cir. 2021) (law making permanently unenforceable personal liability guaranties on certain leases, for rent obligations arising during pandemic period, violated contracts clause).

---

[5] *Valnes v. Santa Monica Rent Control Bd.*, 221 Cal. App. 3d 1116 (1990) (Act not applicable to condominium in a multi-unit building); Mitchell Decl. (ECF No. 25-3), ¶ 7.

**C.      The Moratorium Effects a Physical Taking of Property.**

The County does not (and could not) deny that the Moratorium prohibits landlords from excluding delinquent tenants from their properties; that it precludes most landlords from recovering the property for their own use; and that it even detrimentally impacts the right to dispose of the property—all the traditional hallmarks of a physical taking. *See Loretto*, 458 U.S. at 434-35 (identifying three critical property rights that a physical taking impairs: "'the rights to possess, use, and dispose of'" property). Instead, aside from its misguided reliance on the standards for facial challenges, the County's defense against the takings claims boils down to one simple premise: because landlords initially "invited" the tenants into their units the tenants are not "strangers," so under *Yee v. City of Escondido*, 503 U.S. 519 (1992), the requisite compulsion for a physical takings case is absent, and only a regulatory takings claim can be brought. But this premise is flawed in multiple respects.

**1.      *Yee v. City of Escondido* is a fundamentally different case.**

On its most basic level, the County's position ignores the fact that the Moratorium is qualitatively different from the "purely economic rent control law" at issue in *Yee*. *Cwynar*, 90 Cal. App. 4th at 657. *Yee* addressed a normal landlord-tenant relationship: in which tenants were expected to pay rent or face eviction; where the landlord could evict for violations of the law or park rules; and where the landlord retained the right to cease renting altogether, none of which is true under the Moratorium. *See Yee*, 503 U.S. at 527-28.[6]

In that context, *Yee* held that the rent control ordinance before it "merely regulate[d] petitioners' *use* of their land by regulating the relationship between

---

[6] Again, Plaintiffs emphasize the narrowness of the claim in *Yee*. The mobile home park owners did "not claim that the ordinary rent control statutes regulating housing throughout the country violate the Takings Clause," 503 U.S. at 526, and they also did not challenge the state law restrictions on terminating the lease, *see id.* at 531 n.*. As the Court understood the argument, the owners only contended that the rent control system undermined their ability to influence the tenant's choice of whom to sell to, by depriving the park owners of the power to threaten a rent increase for a disfavored purchaser. *Id.*

---

landlord and tenant." 503 U.S. at 528. But, as the County itself acknowledges in a different part of its brief, "The landlord's use of leased property is [that] *she exchanges possession for rent*." (Oppo. at 10-11; emphasis added.) The Moratorium ordinance doesn't regulate that use, or the relationship between the landlord and tenant; it fundamentally destroys them. (Oppo. at 43:8-9 ["The Moratorium does not require just-cause for eviction; it temporarily *prohibits* eviction."]; italics in original.) The essence "of the contractual relationship between tenant and landlord properly is seen as the payment of rent in exchange for the providing and maintaining of a livable dwelling." *Winchester Mgmt. Corp. v. Staten*, 361 A.2d 187, 190 (D.C. 1976).[7] The Moratorium effectively converts that bilateral arrangement into a unilateral one in which the landlord owes all the duties and the tenant owes none. This is no different from any other physical taking, in which the government simply takes "a servitude or an easement" on behalf of a third party. *Cedar Point Nursery*, 141 S. Ct. at 2073. *Yee* simply *did not hold* that the government could relieve tenants of the need to pay rent altogether, for an indefinite period of time, while still retaining possession, and that such continuous adverse possession would not be a physical taking.

## 2. *Yee* does not hold that an initial invitation bars a takings forever after, despite changed circumstances.

The County's basic position is that once a tenant is invited to occupy a rental premises, no subsequent change in circumstances can alter or undermine the "voluntariness" of the landlord's relationship to the tenant for purposes of a physical takings analysis. "But the *Yee* court *did not* hold or intimate that government coercion

---

[7] *See also Winchester Mgmt.*, 362 A.2d at 190 n.7 (citing decisions from numerous other states' courts for the proposition that "[o]ther courts agree that these two reciprocal commitments comprise the essence of the landlord-tenant contractual relationship."); *Smith v. Phx. Ins. Co.*, 91 Cal. 323, 334 (1891) (a tenant's "right to remain in possession would depend on his payment of rent and performance of other covenants of the lease, and would be determined by failure so to pay and perform."); *W. Union Tel. Co. v. Hansen & Rowland Corp.*, 166 F.2d 258, 262 (9th Cir. 1948) (a tenant who retains possession when no longer entitled to under the lease is a "trespasser").

is relevant only if it corresponds to the initial physical occupation of the premises." *Cwynar*, 90 Cal. App. 4th at 658 (italics in original). In fact, the *Yee* Court acknowledged that even though a landlord initially chose to rent the property, a statute that, for example, compelled the landlord to refrain in perpetuity from terminating a tenancy might constitute a physical taking. 503 U.S. at 528.[8] *See also* *FCC v. Florida Power Corp.*, 480 U.S. 245, 251-53 (1987) (rejecting takings challenge to statute regulating amount a utility could charge a cable company to rent space on utility pole but acknowledging potential constitutional problem if regulation was interpreted as compelling utility to enter into, renew, or refrain from terminating rental agreements). This is simply inconsistent with the idea that the initial invitation forever after precludes a physical taking.

Indeed, such a holding would be contrary to basic common law principles, under which a person who enters another's property as an invitee may nevertheless be converted to a mere trespasser if the invitee "unnecessarily remains upon the premises of another," *Roseberry v. Edward F. Niehaus & Co.*, 166 Cal. 481, 484 (1913), or exceeded "the circumstances and conditions of his invitation," *Pierson v. Holly Sugar Corp.*, 107 Cal. App. 2d 298, 302-03 (1951). Consistent with those rules, California law has long held that a tenant who retains possession when no longer entitled to under the lease is a "trespasser." *See* 12 Witkin, SUMM. OF CAL. LAW (11th ed. 2017), *Real Prop.*, § 532 (citing cases). In other words, an "invitation" has always been recognized to be contingent upon the terms of the invitation—in this case, contingent upon the payment of a lawful rent and compliance with the covenants in the lease—and that the invitation could be extinguished by subsequent events such as, in the case of a leasehold, the nonpayment of a lawful rent. *Id*.

---

[8] Though *Yee* talked about being obliged to rent the unit "in perpetuity," the Court has recently clarified that compensation is due regardless of whether the invasion is permanent or temporary. *See Cedar Point Nursery*, 141 S. Ct. at 2074 ("The duration of an appropriation—just like the size of an appropriation [citation]—bears only on the amount of compensation.").

Consistent with the foregoing, the Supreme Court recently held that "preventing [property owners] from evicting tenants who breach their leases intrudes on one of the most fundamental elements of property ownership—the right to exclude." *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021). Tellingly, the Court cited *Loretto*, 458 U.S. at 435—a *physical* takings case—in support of this proposition, rather than *Yee*, which held that a normal rent control law may give rise to a regulatory takings claim but does not invade the right to exclude and therefore does not give rise to a physical takings claim. 503 U.S. at 527-28. The Court thus indicated—as the Eighth Circuit (the only Court of Appeals to consider the issue to date) squarely held in *Walz*, *see* 30 F.4th at 733—that preventing eviction for nonpayment altogether is qualitatively different from normal rent control.

3.  **It is the district court cases that the County relies upon, rather than the Eighth Circuit's decision in *Walz*, that are distinguishable.**

The County simply ignores *Alabama Association of Realtors* altogether, and it attempts to dismiss *Walz* as an "outlier" decision, contradicted by a "mountain" of opposing authority from a handful of district courts. But the size of that "mountain" is much reduced by the fact that many of the district court cases cited predated *Cedar Point Nursery* and *Alabama Association of Realtors*. *See Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199, 220-21 (D. Conn. 2020), *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 388 (D. Mass. 2020); *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 162-63 (S.D.N.Y. 2020).

As for the remaining cases, each and every one of them addressed a moratorium that had a fixed end date and had already expired or was about to do so. *See Gallo v. Dist. of Columbia*, 2022 U.S. Dist. LEXIS 109644, at *15-16 (D.D.C. June 21, 2022) (distinguishing *Walz* on this very basis; already expired); *S. Cal. Rental Hous. Ass'n v. Cty. of San Diego*, 550 F. Supp. 3d 853, 861 (S.D. Cal. 2021) (approximately two weeks remaining until expiration); *El Papel LLC v. Durkan*, 2021 U.S. Dist. LEXIS 181390, at *19 (W.D. Wash. Sep. 15, 2021) (same); *Jevons v. Inslee*,

1  561 F. Supp. 3d 1082, 1090 (E.D. Wash. 2021) (10 days); *Farhoud v. Brown*, 2022 U.S.

2  Dist. LEXIS 20033, at *15 (D. Or. Feb. 3, 2022) (expiration three weeks away).

3      Here, by contrast, Alameda County has identified no end date for its

4  Moratorium, and its Board of Supervisors recently refused to *even discuss the*

5  *possibility* of making modifications. *See* ECF No. 28, Exs. 19-21. The indefinite nature

6  of Minnesota's moratorium was a significant factor underlying *Walz*'s holding.

7      Ultimately, the Moratorium violates "the purpose of the Takings Clause, which

8  is to prevent the government from 'forcing some people alone to bear public burdens

9  which, in all fairness and justice, should be borne by the public as a whole.'" *Murr v.*

10  *Wisc.*, 137 S. Ct. 1933, 1943 (2017) (citations omitted).

11  **D.   The County's Eviction Moratorium Unconstitutionally Impairs**
    **Contractual Lease Obligations.**

12      **1.   *Of course*, Alameda County's Moratorium ordinance**
13          **substantially—in fact, severely—impairs lease agreements.**

14      The "threshold issue" a court must address in applying the Contracts Clause is

15  whether the challenged law "operated as a substantial impairment of a contractual

16  relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978). "The

17  severity of the impairment measures the height of the hurdle the state legislation

18  must clear. Minimal alteration of contractual obligations may end the inquiry at its

19  first stage. Severe impairment, on the other hand, will push the inquiry to a careful

20  examination of the nature and purpose of the state legislation." *Id.* at 245.

21      That the County would contend that its Moratorium imposes anything less

22  than a "substantial" impairment of lease agreements defies belief. From a landlord's

23  perspective, it is impossible to imagine a more severe impairment of the terms of the

24  agreement than one that permits the tenant to retain possession of the premises

25  indefinitely, without having to pay rent or comply with material lease terms or legal

26  requirements, yet still requires the landlord to maintain the property, pay the

27  mortgage, buy insurance, etc. The landlord gets all of the bitter and none of the sweet.

28      That the rental housing industry has historically been subject to substantial

regulation makes the impairment no less severe. Past regulation is relevant to "a party's reasonable expectations," but, many courts have recognized that eviction moratoria like the County's go *so* far beyond anything that came before them that no landlord could have reasonably anticipated the sorts of alterations at issue here, and they have found substantial impairments. *See, e.g., Apartment Ass'n of L.A. Cty., Inc. v. City of L.A.*, 500 F. Supp. 3d 1088, 1096 (C.D. Cal. 2020); *Walz*, 30 F.4th at 729; *Baptiste*, 490 F. Supp. 3d at 384; *Farhoud*, 2022 U.S. Dist. LEXIS 20033, at *20.

Nor is there any merit to the County's effort to downplay the significance of the inability to regain possession of the property by eviction because the landlord can purportedly seek to collect back rent as consumer debt or seek damages for breaches or waste, or because the landlord can regain possession by using the Ellis Act to take the property off the market, for the reasons discussed above.

### 2. The continued maintenance of the moratorium is not tailored appropriately to a legitimate purpose.

Even where an important public purpose is identified, the government "is not free to impose a drastic impairment when an evident and more moderate course would serve its purposes equally well." *United States Trust Co. v. New Jersey*, 431 U.S. 1, 31 (1977). Thus, though a legislative body's determination of a public purpose and the means of achieving are owed deference, "that deference is not absolute, nor can a Legislature's decision to impair a contract stand if it was unreasonable." *United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of the V.I.*, 842 F.3d 201, 215 (3d Cir. 2016).

Accordingly, Supreme Court case law confirms that even under "the modern approach to the Contracts Clause post-*Blaisdell*," *Apartment Ass'n of L.A. Cty., Inc. v. City of L.A.*, 10 F.4th 905, 912 (9th Cir. 2021), "judicial deference, even in an emergency or a crisis like the COVID-19 pandemic, 'does not mean wholesale judicial abdication.'" *Walz*, 30 F.4th at 730. *See also W. B. Worthen Co. v. Kavanaugh*, 295 U.S. 56 (1935) (post-*Blaisdell,* striking down Arkansas' foreclosure moratorium); *W.*

1  *B. Worthen v. Thomas*, 292 U.S. 426 (1934) (statute exempting insurance proceeds

2  from the claims of creditors violated the contract clause); *Allied Structural Steel Co.,*

3  *438 U.S. at 234* (invalidating a Minnesota statute that required an employer who

4  closed its office in the state to pay a "pension funding charge").

5  With those principles in mind, the County has proffered three public purposes

6  that it claims support the continued maintenance of the Moratorium: "[1] to reduce

7  the transmission of COVID-19, [2] to promote housing stability during the COVID-19

8  pandemic and [3] to prevent avoidable homelessness." (Oppo. at 15:19-20.)

9  Whatever force the first of these held in the early months of the pandemic,

10 when businesses were closed and shelter-in-place was the norm, there is no obvious or

11 rational relationship between the eviction moratorium and preventing the spread of

12 COVID-19 now, when vaccines are widely available; businesses, schools, and even

13 large-scale public venues are fully re-opened; and one can visit virtually all of those

14 businesses, schools, or venues—or even fly on an airplane—without even needing to

15 wear a mask. *See Ala. Ass'n of Realtors v. United States HHS*, 557 F. Supp. 3d 1, 9 n.3

16 *(D.D.C. 2021)* (more than a year ago, in a challenge to CDC's eviction moratorium,

17 concluding that the balance of equities no longer bent in the government's favor since

18 pandemic conditions had improved, while the harm to landlords continued to

19 increase); *Ala. Ass'n of Realtors*, 141 S. Ct. at 2488 (agreeing with the district court).

20 As to the second and third—the goals of promoting housing stability and

21 avoiding homelessness—standing alone, these are rationales that have no obvious

22 end-point. The economy has largely rebounded from the initial COVID-19 downturn,

23 as the County itself admits (*see* ECF No. 18 [Answer], p. 10, ¶ 74), but now inflation is

24 on the rise, and, of course, the cost of living in the Bay Area was high long before the

25 pandemic.[9] Are Plaintiffs and other landlords to be barred from evicting tenants

26 permanently, to provide housing stability? That would be a truly radical proposition.

27

28

[9] *See Cal. Bldg. Indus. Ass'n v. City of San Jose*, 61 Cal. 4th 435, 441 (2015).

1   And if not, the continued maintenance of the Moratorium is actually
2   counterproductive. Accepting the County's (dubious) claim that months and months of
3   back-rent must eventually be repaid, a large judgment for back rent will surely be
4   detrimental to a tenant's ability to pay current rent once the Moratorium expires, and
5   the larger the amount the bigger the problem.

6       Again, policies that may have been justified in the early months of the
7   pandemic have long since become unjustified, given the radically improved
8   circumstances and the overwhelming harm that the Moratorium continues to impose
9   on Plaintiffs' and other landlords in Alameda County. *See* *Home Bldg. & Loan Ass'n v.*
10  *Blaisdell*, 290 U.S. 398, 442 (1934) ("It is always open to judicial inquiry whether the
11  exigency still exists upon which the continued operation of the law depends.").

12          **3.    The Ninth Circuit's *Apartment Association* does not**
13          **support the continued maintenance of the Moratorium.**

14      Predictably, the County argues that the Ninth Circuit's decision in *AAGLA*, 10
15  F.4th at 905, compels this Court to uphold Alameda County's moratorium too. Not so.
16  "Every case must be determined upon its own circumstances," *id.* at 916 (quoting
17  *Blaisdell*, 290 U.S. at 430), and *AAGLA* is readily distinguishable.

18      Plaintiffs have already noted many of the ways in which the *AAGLA* case
19  differs from this one, both factually and procedurally. (*See* ECF No. 23 at 31-32.) That
20  case was decided in a very different context, when the pandemic was still brand new,
21  and Los Angeles' moratorium, for all its flaws, was at least more tailored in many
22  respects than Alameda County's. Perhaps the most significant difference, however, is
23  that "AAGLA d[id] not seriously argue that the City's chosen mechanisms are not
24  reasonably related to the legitimate public purpose of ensuring health and security
25  during the pandemic." *AAGLA*, 10 F.4th at 914. That is not the case here.

26      For all these reasons the decision in *AAGLA* does not control the result here.

27  **IV.    CONCLUSION.**

28      For the foregoing reasons, summary judgment in Plaintiffs' favor is warranted.

1

2 Dated: September 13, 2022

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

NIELSEN MERKSAMER
 PARRINELLO GROSS & LEONI LLP

By: _____
   Christopher E. Skinnell

*Attorneys for Plaintiffs*
CALIFORNIA APARTMENT
ASSOCIATION, STEPHEN LIN,
RAKESH and TRIPTI JAIN, ALISON
MITCHELL, MICHAEL HAGERTY, &
H. ALEX and DANNIE ALVAREZ