1   MATTHEW D. ZINN (State Bar No. 214587)
    EDWARD T. SCHEXNAYDER (State Bar No. 284494)
2   MINDY K. JIAN (State Bar No. 336139)
    SHUTE, MIHALY & WEINBERGER LLP
3   396 Hayes Street
    San Francisco, California 94102
4   Telephone:   (415) 552-7272
    Facsimile:   (415) 552-5816
5   Zinn@smwlaw.com
    Schexnayder@smwlaw.com
6   Mjian@smwlaw.com

7   Attorneys for Defendants and Respondents
    Alameda County and Alameda County Board
8   of Supervisors

9                   UNITED STATES DISTRICT COURT

10      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

11

12  CALIFORNIA APARTMENT                    Case No. 3:22-cv-02705-LB
    ASSOCIATION, STEPHEN LIN,               (Related Case No. 3:22-cv-01274-LB)
13  RAKESH and TRIPTI JAIN, ALISON
    MITCHELL, MICHAEL HAGERTY, &            **COUNTY DEFENDANTS' REPLY IN**
14  H. ALEX and DANNIE ALVAREZ,             **SUPPORT OF MOTION TO**
                                            **DISMISS FIRST AMENDED**
15              Plaintiffs and Petitioners, **COMPLAINT FOR DAMAGES**

16          v.                              Date:        August 21, 2025
                                            Time:        9:30 a.m.
17  COUNTY OF ALAMEDA, BOARD OF             Courtroom:   Courtroom B, 15th Floor
    SUPERVISORS OF THE COUNTY OF
18  ALAMEDA, and DOES 1-25,                 The Hon. Laurel Beeler

19              Defendants and Respondents. Trial Date:        none set

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2 TABLE OF AUTHORITIES ................................................................................. 3

3 INTRODUCTION ............................................................................................... 5

4 ARGUMENT ...................................................................................................... 5

5     I.    The County is asking Plaintiffs to adequately allege, not prove, their

6         claim. .................................................................................................... 5

7     II.   Plaintiffs' contentions flout this Court's direction in the MTD Order
        about pleading the economic impact factor. ......................................... 9

8         A.    Plaintiffs' opposition simply ignores that the FAC fails to allege

9              *any* effect on property value for one property. ...................... 10

10         B.    The Court correctly held that a plaintiff cannot state a takings
             claim based on allegations of less-than-50-percent diminution. .......... 10

11         C.    Lost rent allegations cannot substitute for a severe impact to

12              property value. ...................................................................... 11

13     III.  Plaintiffs' failure to adequately allege economic impact is sufficient
        cause for dismissal. Regardless, the remaining *Penn Central* factors

14         also fail to support their claims. ......................................................... 13

15     IV.  The Court should not grant leave to amend. ...................................... 18

16 CONCLUSION .................................................................................................. 18

17

18

19

20

21

22

23

24

25

26

27

28

COUNTY DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC
Case No. 3:22-cv-02705-LB

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*1210 Cacique Street, LLC v. City of Santa Barbara,*
  No. CV 23-8152 PA (RAOX), 2024 WL 2037143 (C.D. Cal. Apr. 26, 2024) ................ 6

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................... 6, 7, 8

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................. 6, 7

*Block v. Hirsh,*
  256 U.S. 135 (1921) ................................................................................. 15

*Bordelon v. Baldwin County,*
  No. CA 20-0057-C, 2022 WL 16543269 (S.D. Ala. Oct. 28, 2022) ...................... 12, 13

*Bridge Aina Le'a, LLC v. Land Use Commission,*
  950 F.3d 610 (9th Cir. 2020) ............................................................... 12, 16

*CCA Assocs. v. United States,*
  667 F.3d 1239 (Fed. Cir. 2011) ............................................................ 10

*Colony Cove Props., LLC v. City of Carson,*
  888 F.3d 445 (9th Cir. 2018) ......................................................... passim

*Culinary Studios, Inc. v. Newsom,*
  517 F. Supp. 3d 1042 (E.D. Cal. 2021) ................................................ 6

*David Hill Development, LLC v. City of Forest Grove,*
  No. 3:08-cv-266-AC, 2012 WL 5381555 (D. Or. Oct. 30, 2012).................... 13

*Elmsford Apt. Assocs., LLC v. Cuomo,*
  469 F. Supp. 3d 148 (S.D.N.Y. 2020)................................................. 15, 16

*Evans Creek, LLC v. City of Reno,*
  No. 21-16620, 2022 WL 14955145 (9th Cir. Oct. 26, 2022) .............................. 7, 9, 11

*GHP Mgmt. Corp. v. City of Los Angeles,*
  No. 23-55013, 2024 WL 2795190 (9th Cir. May 31, 2024)................................ passim

*GHP Mgmt. Corp. v. City of Los Angeles,*
  No. CV2106311DDPJEMX, 2022 WL 17069822 (C.D. Cal. Nov. 17, 2022)......... 11, 16

*Home Bldg. & Loan Ass'n v. Blaisdell,*
  290 U.S. 398 (1934)............................................................................... 15

*Honchariw v. County of Stanislaus,*
  No. 1:21-CV-00801-SKO, 2022 WL 16748699 (E.D. Cal., Nov. 7, 2022)................ 6

*Hotop v. City of San Jose,*
  982 F.3d 710 (9th Cir. 2020) .............................................................. 7

COUNTY DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC
Case No. 3:22-cv-02705-LB

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
  480 U.S. 470 (1987) ........................................................................... 7

*Lingle v. Chevron U.S.A. Inc.*,
  544 U.S. 528 (2005) ................................................................ 8, 11, 18

*Metroflex Oceanside LLC v. Newsom*,
  532 F. Supp. 3d 976 (S.D. Cal. 2021) .............................................. 6

*MHC Finan. Ltd. P'ship v. City of San Rafael*,
  714 F.3d 1118 (9th Cir. 2013) ..................................................... 9, 11

*Pakdel v. City & County of San Francisco*,
  636 F. Supp. 3d 1065 (N.D. Cal. 2022) ........................................... 6

*Penn Central Transportation Co. v. City of New York*,
  428 U.S. 104 (1978) .................................................................. passim

*PVM Redwood Co. v. United States*,
  686 F.2d 1327 (9th Cir. 1982) ......................................................... 7

*Rancho de Calistoga v. City of Calistoga*,
  800 F.3d 1083 (9th Cir. 2015) .................................................... 7, 11

*Russellville Legends, LLC v. United States*,
  172 Fed. Cl. 455 (Fed. Cl. 2024) ..................................................... 7

*S. Cal. Rental Hous. Ass'n. v. County of San Diego*,
  550 F. Supp. 3d 853 (S.D. Cal. 2021) ....................................... 15, 16

*Soo Park v. Thompson*,
  851 F.3d 910 (9th Cir. 2017) ........................................................ 8, 9

*Walker v. Portland Pub. Sch. Dist. No. 1J*,
  No. 3:21-CV-01349-IM, 2022 WL 3335529 (D. Or. Aug. 12, 2022) ........................... 9

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ........................................................... 9

**CALIFORNIA STATUTES**

Cal. Health & Saf. Code §§ 17910 et seq. ......................................... 15

Cal. Health & Saf. Code §§ 26147-48 .............................................. 16

**ALAMEDA COUNTY CODE**

§ 6.120.030 .......................................................... 13, 14, 17

§ 6.120.040 ........................................................................ 14

§ 6.120.090 ............................................................... 13, 17

COUNTY DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC
Case No. 3:22-cv-02705-LB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

Claims under *Penn Central Transportation Co. v. City of New York*, 428 U.S. 104 (1978), have no special immunity from dismissal, contrary to Plaintiffs' argument. Indeed, this Court has already dismissed their *Penn Central* claims once. That the analysis is ad hoc does not mean that anything goes at the pleading stage. As this Court has recognized, under Ninth Circuit precedent, a plaintiff must allege economic impact by reference to before and after property values, which must show at least a 50 percent diminution.

Where they bothered to allege property values, Plaintiffs' own allegations reveal that the Moratorium did not have a sufficiently severe impact on their property values. And Plaintiffs continue to rely on allegations of economic harm other than diminution of value, despite this Court's clear direction that property value is the proper metric.

Though the lack of a severe impact to property value is dispositive, Plaintiffs spend much of their opposition arguing that the reasonable expectations and character of governmental action factors weigh in favor of finding a taking. But these arguments are as meritless as they are unnecessary. The long history of similar housing regulations put Plaintiffs on notice that the County would likely take action to mitigate housing concerns in response to a local emergency. And the Moratorium does not resemble the kind of physical invasion that requires compensation.

The County is not asking the Court to find facts; it is asking that Plaintiffs allege the bare minimum to show that the effect of the Moratorium was akin to physical occupation or appropriation of their properties. They obviously cannot do so.

## ARGUMENT

### I.    The County is asking Plaintiffs to adequately allege, not prove, their claim.

Plaintiffs dispute the applicable pleading standard and assert that the County is improperly requiring more detail than necessary at the pleading stage. *See* Dkt. 107 (Plaintiffs' Opposition to County of Alameda's Motion to Dismiss the First Amended Complaint) ("Opp.") at 22-23. Although Plaintiffs correctly acknowledge that a claim must be plausible to survive dismissal, *see id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

5

556 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), they overlook binding case law—and this Court's September 3, 2024 Order on Motions to Dismiss ("MTD Order")—applying that standard in the *Penn Central* context.

To begin, Plaintiffs' suggestion that *Penn Central* claims enjoy special immunity from dismissal is simply wrong. *See* Opp. at 9. This very Court has already dismissed Plaintiffs' claim because their allegations of economic impact were insufficient—notwithstanding the "ad hoc nature" of the *Penn Central* analysis. Dkt. 96 (MTD Order) at 7-8. Indeed, "courts often examine [the *Penn Central*] factors at the motion to dismiss stage to [en]sure plaintiffs have satisfied their burden to establish the plausibility of their claims." *Pakdel v. City & County of San Francisco*, 636 F. Supp. 3d 1065, 1074-75 (N.D. Cal. 2022); *see also, e.g., Metroflex Oceanside LLC v. Newsom*, 532 F. Supp. 3d 976, 981-82 (S.D. Cal. 2021) (dismissing regulatory takings claims without leave to amend due to conclusory allegation that restrictions deprived plaintiffs "of all effective economically beneficial uses of their businesses"); *Culinary Studios, Inc. v. Newsom*, 517 F. Supp. 3d 1042, 1065-66 (E.D. Cal. 2021) (dismissing regulatory takings claim when allegations did not support *Penn Central* considerations); *1210 Cacique Street, LLC v. City of Santa Barbara*, No. CV 23-8152 PA (RAOX), 2024 WL 2037143, at *4 (C.D. Cal. Apr. 26, 2024) (dismissing regulatory takings claim without leave to amend where the "[first amended complaint] fail[ed] to allege sufficient facts to establish the basis for th[e] alleged [92.5 percent] diminution in value"); *Honchariw v. County of Stanislaus*, No. 1:21-CV-00801-SKO, 2022 WL 16748699, at *7 (E.D. Cal., Nov. 7, 2022) (dismissing *Penn Central* claim where "Plaintiff makes virtually no attempt to specify how much the value of his property has been reduced"). Like any other claim, a *Penn Central* claim lacking adequate factual allegations cannot proceed.

Furthermore, courts regularly dismiss *Penn Central* claims that fail to sufficiently allege a severe impact to property value, even where plaintiffs have alleged other forms of harm. For example, in *GHP Mgmt. Corp. v. City of Los Angeles*, No. 23-55013, 2024 WL 2795190 (9th Cir. May 31, 2024) ("*GHP*"), the court affirmed dismissal of a similar *Penn Central* claim because landlords "failed to allege the diminution in property values they

COUNTY DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC
Case No. 3:22-cv-02705-LB

suffered as a result of the [COVID] eviction moratorium, and alleged only the amount of rent lost." *GHP*, 2024 WL 2795190, at *2, *cert. den.,* 145 S.Ct. 2615 (2025). Similarly, in *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083 (9th Cir. 2015), the court affirmed dismissal of a landlord's challenge to a rent control ordinance. In doing so, the court found that a 28.53 percent diminution in market value and lost income were an "inevitable consequence" of the challenged ordinance, "but not an unconstitutional one." 800 F.3d at 1090-91; *see also Evans Creek, LLC v. City of Reno*, No. 21-16620, 2022 WL 14955145, at *1 (9th Cir. Oct. 26, 2022) (affirming dismissal for failure to allege "any information about the value of the property" before or after the challenged action); *Hotop v. City of San Jose*, 982 F.3d 710, 716 (9th Cir. 2020) (affirming dismissal where only alleged economic impact was landlords' inability to increase rent); *PVM Redwood Co. v. United States*, 686 F.2d 1327, 1328-29 (9th Cir. 1982) (affirming dismissal where plaintiffs alleged only an increase of production costs); *Russellville Legends, LLC v. United States*, 172 Fed. Cl. 455, 470 (Fed. Cl. 2024) (dismissing *Penn Central* claim, in part, because 55 percent decrease in property value was "on the low end of the spectrum").

To survive dismissal, a plaintiff must allege sufficient facts to state a plausible claim on which relief can be granted. *Twombly*, 550 U.S. at 569-70. Plausibility requires that a plaintiff allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *Iqbal*, 556 U.S. at 678 (same). In the *Penn Central* context, "*Colony Cove* establishes a floor that logically affects the plausibility of the claim at the pleading stage." MTD Order at 8. This "floor" requires that Plaintiffs allege at least "the total value of the affected property before and after the government action." *Id.* at 7-8 (quoting *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018)); *see also Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987) ("Because our test for regulatory taking requires us to compare the value that has been taken from the property with the value that remains in the property."). And, as explained in the Motion and below, the difference in before and after values must reveal a *severe* impact to Plaintiffs' property

1  values, such that the challenged regulation is "so onerous that its effect is tantamount to a

2  direct appropriation or ouster." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005).

3      Plaintiffs contend that they have met their burden because they have alleged before-

4  and-after values, "and that is all that is required." Opp. at 22-23. But, as the Motion argues,

5  these allegations do not sufficiently state a *Penn Central* claim *even if true*. The First

6  Amended Complaint for Damages (Dkt. 101 ("FAC")) fails to plead *any* diminution in

7  property value for one of the properties. Dkt. 194 (County Defendants' Motion to Dismiss

8  Second Amended and Supplemental Complaint ("Mot.") at 12-13; *infra* Section II.A. And,

9  for the remaining properties, the allegations fail to show a diminution in value sufficiently

10  severe to amount to a taking under Ninth Circuit case law. Mot. at 13-14; *infra* Sections

11  II.B-C. Thus, none of the FAC's allegations state a claim under *Penn Central*.

12      Additionally, as argued in the Motion, the FAC's allegations are insufficient because

13  they are conclusory and unsupported. Mot. at 13-14. The County is not, as Plaintiffs

14  contend, disputing any factual assertions. *See* Opp. at 22-23. Rather, the County argues that

15  these allegations plead only facts that are "merely consistent with" a takings claim without

16  establishing that such a claim is plausible. *See Iqbal*, 556 U.S. at 678. For example, the FAC

17  opines on the price for which Plaintiffs may have been able to sell their properties, without

18  directly alleging the actual post-Moratorium property value. *See, e.g.,* Dkt. 101 (FAC) ¶¶ 55

19  ("they likely would have been able to sell it for as much as $800,000"), 91 ("they likely would

20  have been able to sell it for $1,700,000 or more"). Thus, though the FAC concludes that

21  Plaintiffs could have sold their properties for $800,000 or $1.7 million, these conclusions are

22  unsupported by any *facts* (e.g. that the properties were actually worth those amounts at a

23  certain point in time).

24      The lack of direct allegations is particularly revealing here where all of the relevant

25  evidence (i.e. information about the value of Plaintiffs' *own properties*) is within plaintiffs'

26  possession. *Cf. Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (plaintiff may be

27  given more latitude in pleading "where the facts are peculiarly within the possession and

28  control of the defendant"); *Walker v. Portland Pub. Sch. Dist. No. 1J*, No. 3:21-CV-01349-

8

IM, 2022 WL 3335529, at *10 n.14 (D. Or. Aug. 12, 2022) (refusing to apply *Soo Park* where facts would be in plaintiff's possession). Given the centrality of economic impact to a *Penn Central* claim, Plaintiffs should have developed the necessary facts before they filed the claim. Plaintiffs' failure to sufficiently allege facts showing a severe impact to their property values is thus not a result of insufficient discovery, but an indication that the facts do not support their claim.[1] *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (when a plaintiff fails to cure deficiencies in a complaint it is "a strong indication that the plaintiffs have no additional facts to plead").

**II.    Plaintiffs' contentions flout this Court's direction in the MTD Order about pleading the economic impact factor.**

The law clearly requires that, at the pleadings stage, the FAC must sufficiently allege that Plaintiffs suffered a severe reduction in their property values. *See* MTD Order at 6-8; *MHC Finan. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013); *Evans Creek*, 2022 WL 14955145, at *1. The Court dismissed Plaintiffs' prior attempt to bring a *Penn Central* claim because the Complaint for Damages, Injunctive, and Declaratory Relief and Petition for Writ of Mandate's (Dkt. 1 ("Complaint")) allegations of lost rent and property damage failed to satisfy this standard. *See* MTD Order at 7-8 (citing *Colony Cove*). Therefore, in granting Plaintiffs leave to amend their *Penn Central* claim, the Court ordered them to "be more specific as to *before-and-after values*." *Id.* at 8 (emphasis added).

Plaintiffs ignored the Court's clear direction and instead filed a FAC that doubles down on the kinds of allegations this Court has already rejected while still failing to sufficiently allege that any Plaintiff has suffered a severe economic impact on her property's value. For one of the properties, the FAC does not even allege pre- or post-Moratorium property values. And where the FAC does allege decreases in property value, Plaintiffs do not meet their burden of alleging sufficiently severe diminutions in property value.

---

[1] Indeed, elsewhere, the FAC suggests that property values have actually increased. *See* FAC ¶ 108 ("They were ultimately able to sell the property after the Moratorium ended for $1,300,000, *which may have exceeded* what they could have received in October 2021") (emphasis added).

Plaintiffs' opposition fails to adequately respond to any of these issues.

### A.    Plaintiffs' opposition simply ignores that the FAC fails to allege *any* effect on property value for one property.

Plaintiffs assert that the FAC alleges "specific 'before-and-after values'" for the properties. Opp. at 23. The FAC shows otherwise. As explained in the Motion, the FAC fails to allege *any* diminution in property value for one of the properties. Mot. at 12-13. Plaintiffs' opposition elsewhere concedes this point, confirming that only "[f]our of the five Plaintiffs lost equity [sic] substantial equity in their properties." Opp at 15. Far from a diminution in property value, the FAC alleges that the property's value increased because it sold after the end of the Moratorium for a price "which may have exceeded what [the owners] could have received" in 2021. *See* FAC ¶ 108. The FAC thereby flouts the Court's clear direction to allege "before-and-after values" for each property. *See* MTD Order at 8; *see also See GHP*, 2024 WL 2795190, at *2 (affirming dismissal of *Penn Central* claim because landlords failed to "allege the diminution in property values they suffered as a result of the eviction moratorium, and alleged only the amount of rent lost"). Accordingly, the Court should dismiss without leave to amend Plaintiffs' *Penn Central* claim as to this property.

### B.    The Court correctly held that a plaintiff cannot state a takings claim based on allegations of less-than-50-percent diminution.

In dismissing Plaintiffs' prior attempt to allege a *Penn Central* claim, this Court observed that "[t]he Ninth Circuit has approvingly cited a Federal Circuit case that noted that there has been 'no case in which a court has found a taking where diminution in value was less than [fifty] percent.'" MTD Order at 7-8 (citing *Colony Cove*, 888 F.3d at 451, and *CCA Assocs. v. United States*, 667 F.3d 1239, 1246 (Fed. Cir. 2011) (alteration in original)). It further recognized that "*Colony Cove* establishes a floor that logically affects the plausibility of the claim at the pleading stage." *Id.* at 8. Resisting both the Court's Order and the applicable law, Plaintiffs attempt to relitigate this issue without providing any authority to justify their misguided attempt.

The Court's prior order accurately recounted the Ninth Circuit's holding in *Colony Cove*. And that holding is consistent with the principle that only "government regulation of

COUNTY DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC
Case No. 3:22-cv-02705-LB

private property [that] is so onerous that its effect is tantamount to a direct appropriation or ouster" can effect regulatory takings. MTD Order at 6-7 (citing *Rancho de Calistoga*, 800 F.3d at 1088-89); *see Lingle*, 544 U.S. at 537. Of course, courts have declined to find a taking even where regulation impaired property value by much more than 50 percent. *See Colony Cove*, 888 F.3d at 451 ("we have observed that diminution in property value because of governmental regulation ranging from 75% to 92.5% does not constitute a taking" (citing *MHC Finan. Ltd. P'ship*, 714 F.3d at 1127-28).

Plaintiffs argue that the Ninth Circuit has not adopted a "litmus test" which requires dismissal of claims alleging less than 50 percent diminution in property value. Opp. at 20. But they fail to cite any cases where a court has allowed a *Penn Central* claim to proceed based on an diminution in property value of less than 50 percent. *See id.* Thus, they offer no reason to disturb this Court's prior well-reasoned order dismissing Plaintiffs' *Penn Central* claims by relying on the "floor" established by *Colony Cove*. MTD Order at 8 (citing *GHP Mgmt. Corp. v. City of Los Angeles*, No. CV2106311DDPJEMX, 2022 WL 17069822, at *4 (C.D. Cal. Nov. 17, 2022)). Other courts have likewise relied on the holding in *Colony Cove* to dismiss insufficiently plead *Penn Central* claims at the pleading stage. *See*, *e.g.*, *GHP*, 2024 WL 2795190, at *2 (affirming dismissal of *Penn Central* claim for insufficiently alleging economic impact, citing *Colony Cove*); *Evans Creek, LLC*, 2022 WL 14955145 (same).

## C.    Lost rent allegations cannot substitute for a severe impact to property value.

Plaintiffs also argue that the Motion improperly "focuses only on the allegations related to the losses in *equity value* caused by the Moratorium." Opp. at 20. They contend that just compensation damages in a temporary regulatory takings case should account for "the return on the portion of the fair market value that is lost as a result of the regulatory restriction." *Id.* Additionally, they assert that the Motion "wrongly disregards the other economic impacts . . . such as substantial repair costs, legal fees, lost interest, lost rental increases, negative tax implications, and opportunity costs in the form of other lost investments." Opp. at 21. But in the MTD Order, this Court specifically rejected Plaintiffs'

prior attempts to rely on business costs and lost income. And the calculation of just compensation is a separate question from whether the challenged action has effected a taking in the first place.

While "other economic impacts," such as lost income, can inform the *valuation* of a property, it is not a replacement for alleging property values before and after the challenged regulation. As the Court previously held, Plaintiffs must tie decreases in profit to property value. *See* MTD Order at 8 ("income streams can contribute to a method for determining the post-deprivation value of property . . . the severity of the loss can be determined only by comparing the post-deprivation value to pre-deprivation value.") (quoting *Colony Cove*, 888 F.3d at 451). The case cited by Plaintiffs, *Bridge Aina Le'a, LLC v. Land Use Commission*, 950 F.3d 610, 634 (9th Cir. 2020), does not help them. In the footnote they cite, the court discusses the measure of "just compensation *damages*" for a temporary taking, not the standard for evaluating whether a *Penn Central* taking has occurred. *Id.* at 632 n.12 (emphasis added); *see* Opp. at 20. Nothing in *Bridge Aina* suggests that the court was retreating from its conclusion in *Colony Cove* that economic impact is measured by diminished property value. Plaintiffs cannot seek compensation for lost income or other business costs on top of any supposed diminution in property value. Such impacts can be relevant to a *Penn Central* claim only insofar as it *results in* reduced property value. *See Colony Cove*, 888 F.3d at 451.

Nor do the Alabama or Oregon district court cases cited by Plaintiffs warrant a different conclusion. As an initial matter, neither case could alter the analysis prescribed by the *Ninth Circuit* in *Colony Cove*. Further, while the court in *Bordelon v. Baldwin County*, No. CA 20-0057-C, 2022 WL 16543269 (S.D. Ala. Oct. 28, 2022), awarded lost rental income and increased construction costs as just compensation, those economic damages were not the basis of finding a taking. In that case, plaintiff developers purchased a vacant lot with the intention of developing a duplex on it. *Id.* at *2-3. The court held the defendant had effected a taking because it unreasonably revoked a permit approval, effectively stopping construction and preventing any use of the lot. *Id.* at *3, *25-26. The court held

12

that revocation of the approval "amounted to a physical invasion of Plaintiffs' property," effectively denying plaintiffs 100 percent of the projected income. *Id.* at \*24-25. Similarly, in *David Hill Development, LLC v. City of Forest Grove*, No. 3:08-cv-266-AC, 2012 WL 5381555 (D. Or. Oct. 30, 2012) ("*David Hill*"), the court found that the city's issuance of a stop work order on a residential subdivision constituted a taking. *Id.* at \*1, \*15-17. The court then separately upheld a jury award of just compensation that included consideration of opportunity costs. *Id.* at \*33-34. In any event, the case antedates *Colony Cove.*

Unlike the developers in *Bordelon* and *David Hill*, Plaintiffs here still had use of their properties for the duration of the Moratorium. They could still rent out their units, which thus continued to accrue rent, and enforce other lease terms during the Moratorium. Dkt. 43 (Order Denying Summary Judgment) ("MSJ Order") at 17; Alameda County Code of Ordinances ("County Code") §§ 6.120.030(D), 6.120.090(A). By contrast, the developers in *Bordelon* and *David Hill* were denied all ability to profit from their properties because the stop work orders prevented them from developing the property at all by delaying construction. *Bordelon*, 2022 WL 16543269 at \*3; *David Hill*, 2012 WL 5381555, at \*1. These cases do not stand for the proposition that Plaintiffs can rely on their allegations of lost rental income and increased costs.

## III. Plaintiffs' failure to adequately allege economic impact is sufficient cause for dismissal. Regardless, the remaining *Penn Central* factors also fail to support their claims.

Because Plaintiffs have failed to adequately plead economic impact, neither reasonable investment-backed expectations nor the character of the Moratorium could justify denying the Motion. Mot. at 14. Plaintiffs dispute this, arguing that the economic impact is merely one of many factors and that their claim can survive even if that factor does not weigh in their favor. Opp. at 22. But this Court, like many others, has already rejected this argument. It held that Plaintiffs must allege a sufficiently severe impact to property value because, "despite the ad hoc nature of the analysis, *Colony Cove* establishes a floor that logically affects the plausibility of the claim at the pleading stage." MTD Order at 8; *see supra*, Section I.

COUNTY DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC
Case No. 3:22-cv-02705-LB

Nevertheless, both the reasonable investment-backed expectations and character of the governmental action factors also weigh in favor of dismissal. First, Plaintiffs mischaracterize the Moratorium as an extraordinary and unprecedented action. But there is a history of similar laws regulating the landlord-tenant relationship and Plaintiffs never had a reasonable expectation to be free from this kind of regulation. Second, as the Court has already found, the Moratorium is not akin to a physical intrusion. Plaintiffs again misrepresent the nature of the Moratorium, overstating its impact on Plaintiffs' use of their properties.

Plaintiffs first argue they had a reasonable expectation to "be able to evict tenants who are damaging the property or materially violating the lease," and that the Moratorium frustrated these expectations. Opp. at 23. They assert that the Moratorium "deprived [them] of rent altogether" and take issue with the duration of the Moratorium. *Id.* at 24. However, the actual terms of the Moratorium were more limited than Plaintiffs suggest. And although the pandemic itself may have been unprecedented, the Moratorium was not.

To begin, the Moratorium was limited, with express exceptions for Ellis Act evictions, court and government orders, and "imminent threats to health and safety."[2] MSJ Order at 17-18, 26 (citing County Code § 6.120.030(F)); County Code § 6.120.040(A), (D); FAC ¶ 22. Nor did it eliminate a renter's obligation to pay rent, foreclose landlords' ability to enforce lease terms through a breach of contract action, or permanently alter unlawful detainer law. MSJ Order at 17-18. Thus, the Moratorium did not "deprive [landlords] of rent altogether" or wholly prevent Plaintiffs from pursuing action against tenants for property damage or

---

[2] Plaintiffs take issue with the County's discussion of the Moratorium's Ellis Act exception. They continue to argue that the Moratorium contains only a partial exception for Ellis Act evictions, and that such exception did not apply where the tenant could not pay rent due to a COVID-related impact. *See* Opp. at 11, 26-27. This argument flies in the face of the Moratorium, and this Court has specifically rejected it. *See* County Code § 6.120.030(F); MSJ Order at 36-37 ("the County's ordinance does not conflict with the Ellis Act.").

1  lease violations.[3] At most, the Moratorium temporarily limited landlords' ability to pursue

2  one judicial remedy against tenants.

3        Additionally, the Moratorium was hardly unprecedented in the history of landlord-

4  tenant regulation, particularly in the context of a widespread crisis. The Court previously

5  held, relying on Supreme Court precedent, that "the County's moratorium does not interfere

6  with the landlords' reasonable expectations because there is a long history of regulations

7  governing the landlord-tenant relationship and of Supreme Court cases upholding eviction

8  moratoria." MSJ Order at 25 (citing *Block v. Hirsh*, 256 U.S. 135, 154 (1921), and *Home*

9  *Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 420 (1934) ("*Blaisdell*")).[4] Although the

10  COVID-19 emergency may have been unexpected, that public agencies would try to mitigate

11  economic harm and stabilize housing during an unforeseen emergency was not. *See S. Cal.*

12  *Rental Hous. Ass'n. v. County of San Diego*, 550 F. Supp. 3d 853, 862 (S.D. Cal. 2021). For

13  example, in *Blaisdell*, to ameliorate financial hardship resulting from the Great Depression,

14  Minnesota enacted a moratorium on foreclosures for late mortgage payments that gave

15  mortgagors more time to make payments. *Blaisdell*, 290 U.S. at 416-19, 445. Local agencies

16  have since continued to exercise their regulatory authority to similarly stabilize housing

17  during emergency events and address housing-related public health concerns. *See* Mot. at

18  14-16; *Elmsford Apt. Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 169 (S.D.N.Y. 2020); *S.*

19  *Cal. Rental Hous. Ass'n.*, 550 F. Supp. 3d at 862; Cal. Health & Saf. Code §§ 17910 et seq.,

20

---

21

22  [3] Indeed, many of the damages alleged in the FAC are not attributable to the Moratorium,

23  but rather allegedly resulted from independent tenant or court conduct. *See* Mot. at 13 n.4. As Plaintiffs' own briefing states, the FAC alleges impacts resulting from "damage done by the *tenant*." Opp. at 15-18 (emphasis added). And the FAC's allegations about the ineffectiveness of the exception for Ellis Act evictions is directly attributed to the superior

24  court, not the Moratorium. *See* FAC ¶¶ 87 (". . . but the Superior Court took no action on

25  the [unlawful detainer] complaint until November 2022), 104 (". . . but they were not able to get any action on it until December of [2022].").

26  [4] Plaintiffs argue that these conclusions in the MSJ Order are irrelevant here because they

27  were made in the context of a facial challenge. Opp. at 25-26. But the Court incorporated those conclusions in its MTD Order, holding that they apply just as strongly to Plaintiffs'

28  as-applied claims. MTD Order at 11.

26147-48. Within this "regulatory environment" (*see* Opp. at 23-24 (citing *Bridge Aina Le'a, LLC*, 950 F.3d at 634), Plaintiffs have no reasonable expectation to be free of additional rental housing regulation enacted in response to a global public health emergency.

Plaintiffs assert that some courts have found other COVID-19 eviction moratoria unprecedented. *See* Opp. at 24 (citing *GHP*, 2022 WL 17069822; *GHP*, 2024 WL 2795190). But the court in *GHP* conflated the moratorium and the underlying COVID-19 pandemic in its analysis. *See GHP*, 2022 WL 17069822, at *5. The court did not specifically addresses whether it was reasonable to expect that the local governments would respond to a global pandemic by attempting to stabilize housing and mitigate economic harm. Furthermore, the court in *GHP dismissed* plaintiffs' *Penn Central* claim despite finding this second factor weighing in favor of a taking. *See GHP*, 2022 WL 17069822, at *5-6.

Finally, Plaintiffs overemphasize the Moratorium's duration. They attempt to distinguish the cases cited in the Motion by asserting that "those decisions came early in the pandemic." Opp. at 25. But neither case's holding relied on the duration of the respective moratorium. In *Elmsford Apartment Associates*, the court found that where the party "operates in a heavily regulated industry . . . past regulation puts industry participants on notice" of future government intervention." 469 F. Supp. 3d at 169. And in *Southern California Rental Housing Association*, the court found that because "the Ordinance at issue followed the issuance of many similar regulations, . . . it was foreseeable to the extent the industry intersects with the health and safety of citizens." 550 F. Supp. 3d at 862. Both of these decisions are directly applicable to the instant action regardless of how long the Moratorium ultimately lasted.

Plaintiffs argue that the "extraordinary duration" of the Moratorium should be analyzed as an entirely separate factor weighing in favor of a *Penn Central* taking. Opp. at 29-32. But the impact of the Moratorium's duration—like all its aspects—should be reflected in its impact on the *value* of the regulated properties. Considering duration in addition to economic impact is double-counting. Moreover, Plaintiffs' argument takes issue with the duration of the underlying health emergency, not the terms of the Moratorium. The County

16

tied the duration of the Moratorium to the local health emergency that it sought to address. County Code § 6.120.030(A); Opp. at 12 (citing the same). Once the County Health Officer independently declared the end of the COVID-19 local emergency, the Moratorium—by its own terms—expired 60 days later. MSJ Order at 16, 38; County Code § 6.120.030(D). Plaintiffs do not argue that tying the Moratorium's duration to that of the underlying local emergency in this way was unreasonable. *See* Opp. at 29-32.

Next, Plaintiffs argue that the character of the Moratorium weighs against dismissal. Opp. at 27-29. They admit that the Court already found that the Moratorium did not effect a physical taking and fell instead within the field of landlord-tenant regulation. *See* Opp. at 27-28; MSJ Order at 13-21; MTD Order at 6. However, Plaintiffs assert that the Moratorium nonetheless "certainly functioned 'like' [a physical taking]" because it "effectively deprived [Plaintiffs] of all of the elements of property ownership." Opp. at 28. Specifically, Plaintiffs assert that the Moratorium "damaged" owners' "right to possess the occupied space," the "power to exclude the occupier form possession and use," and the "power to control the use of the property and obtain a profit from it." *Id.* (internal quotation marks and citations omitted). But, as discussed above, this overstates the Moratorium's impact. The Moratorium expressly allowed owners to evict tenants in order to reoccupy their property and did not absolve tenants of their responsibilities under their leases, including payment of rent. *See supra* Section III; County Code §§ 6.120.030(F), 6.120.090(A). It instead limited a remedy available to landlords.

Plaintiffs also contend that the character of the governmental action factor weighs in favor of a taking because the Moratorium forces landlords to bear public burdens. Opp. at 29. But this argument is self-contradictory. They assert that the existence of the federal, state, and local rent relief programs demonstrates that forcing landlords to alone bear the pandemic's financial burdens was unreasonable. *See id.* However, the existence of these programs also shows that landlords were not expected to solely bear those burdens because they could seek relief through those programs. And again, Plaintiffs' framing is misleading. The Moratorium narrowly and temporarily affected *one* remedy (eviction) normally

17

1  available to landlords to enforce against certain breaches of lease. It attempted to balance
2  between landlord and tenant interests by providing some protections to tenants to increase
3  housing stability but nonetheless retaining tenant obligations under their leases. The
4  Moratorium did not reallocate all financial burdens of the pandemic to landlords. It "merely
5  affect[ed] property interests through some public program adjusting the benefits and
6  burdens of economic life" by limiting some kinds of eviction and allowing tenants more time
7  to pay rent during a pandemic. *See Lingle*, 544 U.S. at 539; *see also Colony Cove*, 888 F.3d
8  at 454 (applying same to rent control programs). Thus, this factor also weighs against
9  finding a taking.

10  **IV.    The Court should not grant leave to amend.**

11       As explained in the Motion, the Court should deny leave to amend because Plaintiffs
12  still fail to state a *Penn Central* claim after multiple opportunities to do so. Mot. at 17-18.
13  Plaintiffs request that the Court grant leave to amend if it dismisses their claim, but do not
14  explain how they could amend the FAC to survive dismissal. *See* Opp. at 32. The Court
15  should therefore grant the County's Motion without leave to amend.

16                                **CONCLUSION**

17       For the reasons above and in its Motion, the County asks that the Court dismiss the
18  FAC without leave to amend.

19  DATED:  August 4, 2025                    SHUTE, MIHALY & WEINBERGER LLP

20

21

22                                    By:       /s/Matthew D. Zinn
                                          MATTHEW D. ZINN
23                                        MINDY K. JIAN

24                                        Attorneys for Defendants and Respondents
25                                        Alameda County and Alameda County Board
                                          of Supervisors
26

27

28

COUNTY DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC
Case No. 3:22-cv-02705-LB